UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LACRISHA WISE, MICHAEL            :
MASSACONI, ROGER MARTIN and      :
PETER CORBIN, on behalf of       :
themselves and on behalf of      :
others who are similarly situated, :
                                 : DOCKET NO.  04-CV-30091-MAP
            Plaintiffs,          :
v.                               :
                                 :
PATRIOT RESORTS CORP.,           :
THE BERKLEY GROUP, INC.,         :
MARC J. LANDAU, J.P. OTTINO, III :
REBECCA A FOSTER. and JAMES E.   :
LAMBERT,                         :
            Defendants.          :

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AUTHORIZATION TO SEND NOTICE AND FOR CLASS CERTIFICATION**

## I.  BACKGROUND

Plaintiffs Lacrisha Wise, Michael Massaconi, Roger Martin and Peter Corbin

commenced this action by filing their complaint in this Court on May 11, 2004.  On July

26, 2004, and again on November 30, 2004, the four Plaintiffs amended their Complaint.

The Complaint before this Court, the Second Amended Complaint ("Complaint"), asserted

against two corporations and four individuals, asserts a myriad of state and federal

statutory causes of action, ranging from race and color discrimination to untimely payment

of wages.  Specifically, in Counts I - IV Plaintiff Wise individually asserts race and color

discrimination and retaliation under state law, (Mass. Gen. Laws ch. 151B), and federal

law, (42 U.S.C. § 2000e), respectively.  Mr. Martin and Mr. Massaconi, in Counts V and VI

respectively, allege individual state law retaliation claims under the Massachusetts Weekly Payment of Wages Act, (Mass. Gen. Laws ch. 149, § 148A).

The purported "class" or "collective" counts are found in the last three counts of the Complaint and stem from the Defendants' alleged misclassification of Plaintiffs as exempt, rather than nonexempt, employees.  Specifically, Count VII alleges failure to pay minimum wage and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 209 U.S.C. § 206(a) and 207(a)(1).  The final two counts, Counts VIII and IX, allege state law violations.  In Count VIII, Plaintiffs allege a "class claim for relief," for Defendants' purported violation of Mass. Gen. Laws ch. 149, § 148 by "failing to pay Plaintiffs wages and commissions" in a timely manner.  The last count, Count IX, alleges that the Defendants violated Mass. Gen. Laws ch. 151, §§ 1 and 1A by not paying the four Plaintiffs and the alleged "class" minimum wage and overtime compensation.  The Plaintiffs currently seek to have the Court recognize multiple state law classes and one federal class.  They also request permission to send notice to putative plaintiffs.  For the reasons set forth herein, those requests should be denied.

The four named Plaintiffs worked for Defendant Patriot Resorts Corporation ("Patriot").  Patriot owns and sells timeshare interests at Vacation Village in the Berkshires which is located in Hancock, Massachusetts ("Vacation Village").[1]  The four Plaintiffs are former timeshare Salespeople who were headquartered out of Patriot's Lanesboro, Massachusetts offices, and in addition to having been a timeshare Sales Representative, Plaintiff Massaconi also held the position of Sales Manager during his

---

[1] Defendant, The Berkely Group, Inc. ("Berkley"), a foreign corporation and Patriot's parent corporation, is located in Florida.  The individual Defendants held various officer-level positions at Patriot and/or Berkley or both.  (*See* Defendants' Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint.)

employment with Patriot.  (Compl. ¶ 45; Faith Lippert Affidavit, attached hereto as Exhibit

1("Lippert Aff.") ¶5).  The Plaintiffs' dates of employment were as follows:

- Roger Martin, Sales Representative from August 6, 2001 to May 13, 2003, and again, from November 7, 2003 to September 21, 2004;

- Michael Massaconi, Sales Representative from August 6, 2001 to July 19. 2002; Sales Manager from July 20, 2002 to October 29, 2004 , and Sales Representative again from October 30, 2004 to March 5, 2005;

- Peter Corbin, Sales Representative from November 24,  2001 to May 10, 2004; and

- Lacrisha Wise, Sales Representative from February 8, 2002 to June 7, 2003.

(Lippert Aff. at ¶6).

There are various categories of Sales Representatives employed with Patriot

Resorts in Lanesboro.  The Plaintiffs were Sales Representatives who attempted to sell

timeshare interests at Vacation Village by taking potential customers, whom they met at

Patriot's Lanesboro site, on a tour of the local area and to a model condominium, which is

located in Hancock, Massachusetts.  (Plaintiff's Memorandum in Support of Motion for

Authorization to Send Notice and for Class Certification ("Pls. Memo.") at 3).  This

process, which is aimed at persuading the prospective buyer(s) to purchase a timeshare

interest at Vacation Village in Hancock, Massachusetts normally takes a minimum of 1 ½

hours per tour and, in some cases, could take up to 4 or more hours.[2]  (Martin at 81, 83).

Thereafter, the Sales Representative brings the potential customer(s) back to the

Lanesboro property.  Once the customer gets to a "certain point where they want [the

timeshare interest]," a Sales Manager explains the cost and usage of the timeshare.

(Massaconi at 20-21; Wise at 185-200; Martin at 91-94).  If a customer who went on a

---

[2]The relevant portions of the Plaintiffs' deposition transcripts are attached hereto as follows:  Massaconi – Ex. 2; Martin – Ex. 3; Wise – Ex. 4; and Corbin – Ex. 5.

tour with a Sales Representative decides to purchase, the customer then works with a

"Verification Officer," whose job duties include, *inter alia*, notarizing documents, explaining

the purchase, helping owners with any questions, working with the owner should the

owner fall behind in making payments, closing contracts, and general customer service

duties.  (Lippert Aff. ¶7; Massaconi at 170).  The purchaser then proceeds to the Exit

Department.  If a customer elects not to purchase after going on tour with a Sales

Representative, the customer then goes to the Exit Department, where a Sales

Representative in that department, *inter alia,* would attempt to sell the customer a

timeshare with less usage rights, and which, in turn, would be less costly.  The Exit

Department Sales Representatives' job duties were completely different than those of the

Sales Representatives who toured the locale and condominium with the potential

customer, which the Exit Department Sales Representatives did not do.  (Lippert Aff. ¶8).

        During the majority of the Plaintiffs' employment with Patriot, there were two Line

Directors, Gordon Leete and Paul Stensland, who oversaw their lines, which were groups

of Sales Managers and the Sales Representatives who toured potential customers.

(Massaconi at 29-30).  As demonstrated by Plaintiffs' deposition testimony, there were

significant differences relevant to this lawsuit in the manner in which Mr. Stensland and

Mr. Leete enforced policies and oversaw their Lines.  Ninety percent of the time, people

who worked in the same group were not abiding by the same guidelines, resulting in

chaos.  (Massaconi at 31).  Mr. Leete more rigorously enforced policies than did Mr.

Stensland.  (Massaconi at 31).  For example, Mr. Stensland did not enforce Patriot's

tardiness and attendance policies, and Mr. Leete did.  (Massaconi at 28, 31, 34-35).  Mr.

Stensland allowed those under his supervision to leave the grounds during the workday,

and Mr. Leete did not allow it without permission.  (Massaconi at 28, 30).  Additionally, Mr.

Stensland "spiffed"[3] and paid bonuses to those on his Line, and Mr. Leete did not.

(Massaconi at 28-29; Wise at 128, 217-18).  Mr. Leete and Mr. Stensland argued loudly

about policies.  (Massaconi at 39-40).  Unlike Mr. Leete's Line, Mr. Stensland's Line

"could do anything they want[ed]."  (Massaconi at 69).  The Plaintiffs were not all on the

same Line.  (Martin at 80; Massaconi at 11-12, 54-55; Corbin at 28-29; Wise at 182).

Each of the four named Plaintiffs' employment with Patriot was governed by an

employment contract ("the Contracts").[4]  The Contracts, *inter alia*, set forth the time period

when commissions would be paid on timeshare interests they sold, which varied greatly

depending on many factors.  Specifically, Paragraph 2C provides as follows:

> "Date Commissions Payable:  Earned Commissions shall be due and payable by
> the Company within twenty-one (21) days of the date earned, except that the
> Company will advance to Employee, within twenty-one (21) days of the Closing
> and subject to charge-back pursuant to Section 2.E. hereof, anticipated
> commissions on Financed Sales."

The Contracts further defined, at Paragraph 2A(vi), when commissions were "earned,"

which differed depending on whether the sales was cash or financed:

> "Earned Commissions – A commission will be deemed earned upon the Closing of
> a sale, except that the commissions on Financed Sales shall not be deemed
> earned until the purchaser has made three (3) timely and consecutive monthly
> payments in accordance with the terms of the purchase money note and
> mortgage."

---

[3] Spiffing or paying a "Special Incentive Fund," is paying extra compensation to Sales Representatives to
provide them with extra motivation to complete a certain task.  As an example of "spiffing," Mr. Massaconi
testified that Mr. Stensland might have paid the first person who made a sale on a particular day an extra
$50 dollars.  (Massaconi at 28-29).
[4] Copies of the Contracts are attached to each Plaintiff's Affidavit submitted in support of their Motion.
The Contracts provide that Massachusetts law applies to the Contracts' interpretation and construction.
(The Contracts at ¶ 11).

If the Sales Representative received a Preauthorized Checking ("PAC") check from the purchaser, this three payment provision did not apply and the sale was treated as a "cash" sale.  (Lippert Aff. ¶9; Martin at 113-14).  The Contracts also defined when a sale "closed":

(v) Closing – The Closing on a purchase of any Timeshare Interest shall be deemed to have occurred:

(a) In the case of a Cash Sale, when the Company has been provided with all documentation required by it to effectuate the transaction in proper form, the full amount of the purchase price has been paid to the Company, all funds have cleared and all statutory rescission periods have expired without cancellation, and the Company, under applicable law, has the unrestricted use of the purchaser's funds.

(b) In the case of a Financed Sale, when the Company has been provided with all documentation required by it to effectuate the transaction in proper form, the full amount of the deposit has been paid to the Company, all funds have cleared, and all statutory rescission periods have expired without cancellation, and the Company, under applicable law, has the unrestricted use of the purchaser's funds and interest on the transaction has started to accrue to the Company.

(The Contracts at ¶ 2A(v)).  Commissions advanced or paid were subjected to recoupment from the Timeshare Sales Representative if the sale defaulted.  (The Contracts at ¶ 2E; Pls. Memo. at 5).

The majority of the Plaintiffs' compensation throughout their employment with Patriot came from sales commissions.  (Pls. Memo. at 3).  Sales Representatives selling timeshare weeks, including the Plaintiffs, earned substantial incomes in great excess of minimum wage.  As examples, Plaintiff Martin grossed $48,012.53 (2002); Plaintiff Corbin grossed $40,234.42 (2003) and Plaintiff Massaconi grossed $60,890 (2003).  (Lippert Aff. ¶10).  Some of the Plaintiffs had worked as timeshare Sales Representatives at other

resorts where they also had been paid on a commission only basis. (See e.g., Massaconi at 10).

## II. LEGAL DISCUSSION

### A. Standard for Determining Class Certification: Opt–In vs. Opt–Out Action

Multi-plaintiff actions under the FLSA can be brought only on a collective basis in which an individual must affirmatively opt-in to join the suit. 29 U.S.C. § 216(b) ("Section 216(b)"). Actions brought outside the FLSA are not governed by the FLSA's opt-in rule. Indeed, the Massachusetts Minimum Fair Wage Act, Mass. Gen. Laws ch. 151, § 1 *et seq.* ("Chapter 151"*), and* the Massachusetts Payment of Wages statute, Mass. Gen. Laws ch. 149, § 148 ("Section 148"), have no provisions providing for an opt-in approach. Accordingly Massachusetts state courts apply Rule 23 when determining whether class certification is appropriate. *See, e.g, Parow v. Howard,* 17 Mass. L. Rptr. 149, No. 021403A, 2003 WL 23163114 (Mass. Super. Nov. 12, 2003) (holding that class meets Rule 23 requirements in case arising under Section 148); *Goodrow v. Lane Bryant, Inc.*, No. 953722H, 1999 WL 1318994 (Mass. Super. Mar. 1, 1999) (noting that case is Rule 23 class action pertaining to Sales Representatives' alleged denial of overtime in violation of Chapter 151), *rev'd in part on other grounds,* 432 Mass. 165, 732 N.E.2d 289 (2000).[5] Thus, the principal difference between FLSA collective actions and Rule 23 class actions

---

[5] The Plaintiffs have not maintained that Chapter 151 claims may be brought on a collective basis pursuant to an opt-in procedure. (*See* Pls. Memo. at 13-19). Rather, they have contended, without citation to any supporting authority, only that Section 148 claims should follow an "opt-in," procedure. As set forth above, that contention is contrary to the Massachusetts Superior Court's treatment of such cases as Rule 23 class actions, and the statute does not permit for such an approach. *See also, DeAscencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660 (E.D. Pa. 2001) ("Unlike the FLSA, the [state] law has no such provision mandating an opt-in approach, and thus, it is appropriate to utilize the opt-out procedures of Rule 23 in order to facilitate a class action."); *Beltran-Benitez v. Sea Safari, Ltd.*, 180 F. Supp. 2d 772, 774 (E.D.N.C. 2001) (same).

is that prospective FLSA plaintiffs must opt in, while the purported state law class

members are included in the lawsuit unless they opt out.

**B.  <u>The FLSA Claim Should Not Be Recognized as a Collective Action.</u>**

There are two requirements under Section 216(b) for an action to proceed as a

representative or "collective" action: (1) class members must be "similarly situated"; and

(2) all members must affirmatively consent to join the action.  29 U.S.C. § 216(b).  The

FLSA does not provide an express test for determining which employees are "similarly

situated" within the meaning of § 216(b).  In the absence of First Circuit or Supreme Court

guidance, a two-tiered certification structure has developed among the district courts.

*Kane v. Gage Merchandising Servs., Inc.,* 138 F. Supp.2d 212, 214 (D. Mass. 2001); s*ee*

*also DeAsensio v. Tyson Foods, Inc.*, 130 F. Supp.2d 660, 662-63 (E.D. Pa. 2001).  The

first tier of the test, "the notice stage," often occurs at the beginning of the case when the

court has minimal evidence, and, because of the minimal evidence, the determination as

to "conditional certification" is made under "fairly lenient standard[s]," such as by

demonstrating that the putative class members were subject to a single decision, policy,

or practice that violated the law.  *Kane,* 138 F. Supp. at 214.  Plaintiffs bear the burden of

establishing that they and the class they wish to represent are similarly situated.  Id.

The second tier of the test, "the merits stage," is appropriate when discovery has

concluded.  At that time, the court, which then will have the benefit of being able to review

"facts" demonstrated through discovery, must make a more thorough finding regarding

the "similarly situated" requirement.  *Id.*  During this second phase, the court must

conduct a fact-specific review of each class member who has opted in, taking into

account factors such as the disparate factual and employment settings, the various

defenses available to defendant which appear to be individual to each plaintiff, fairness and procedural considerations. *Reeves v. Alliant Techsystems, Inc.,* 77 F.Supp.2d 242, 246 (D.R.I. 1999). If the court then decides that the plaintiffs are not "similarly situated," the FLSA representative class cannot be recognized.

This Court should apply the merit stage analysis, i.e. the second step of the two-step method, to determine whether potential plaintiffs are "similarly situated" for class recognition under § 216(b) because discovery has been completed, giving the Court sufficient information to conduct a fact-specific review of each class member who has purported to opt-in. *See, e.g. Davis v. Charoen Pokphand (USA), Inc.,* 303 F. Supp.2d 1272, 1276 (M.D. Ala. 2004) (holding that the rationale for the "lenient" standard disappears…once plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and procedures"). Indeed, the Plaintiffs elected not to pursue any conditional certification prior to engaging in discovery, and, rather, maintained that the parties adhere to a fairly tight discovery schedule. Nonetheless, discovery was substantial. The parties exchanged written discovery and 10 persons were deposed. Defendants produced over 35,000 documents to the Plaintiffs. Further, during the course of discovery, the Plaintiffs requested and were provided with the information necessary to ascertain who the purported "class members" could have been had they elected to pursue any conditional certification. (*See* Plaintiff's Memorandum p. 20, which references the Defendants' Answers to Plaintiffs' First Set of Interrogatories). Indeed, although Plaintiffs in their Proposed Findings at ¶ 1 request the Court to Order Defendants to provide the names and addresses of all putative FLSA class members within 10 days of the proposed

Order, this information, pertaining to approximately 183 potential class members,[6] already has been provided to Plaintiffs.  Despite the lack of movement for conditional certification, over 50 persons have purported to opt in by filing Consents to Join.  Thus, there is no reason why the Court should apply the liberal standard of the first tier to the matter before it.  Rather, the Court should apply a "more rigorous standard," considering all evidence the parties have gathered to date.  *Davis,* 303 F. Supp.2d at 1276;  *White v. Osmose, Inc.*, 204 F. Supp.2d at 1309, 1313 n.2 (M.D. Ala. 2002); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp.2d 493, 497-98 (D.N.J. 2002).[7]  A fact-specific review demonstrates that certification would be inappropriate because the named plaintiffs are not similarly situated to other putative plaintiffs, namely "[a]ll current and former sales representatives and sales managers who were subject to the defendants' policy of failing to pay minimum wage or overtime payments."  (*See* Plaintiffs' Proposed Findings and Order on Notice and Class Certification ("Proposed Findings"), ¶ 1).

At the merits stage determination of the similarly situated requirement, in addition to determining whether Plaintiffs have come forward with evidence that a common policy or other factor allegedly unites the claims of the proposed class, the Court must consider additional factors:  (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the Defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Moss v.*

---

[6] As discussed in Section II. C., *infra*, this number is greatly inflated as the result of Plaintiffs' failure to take into consideration applicable statutes of limitation.

[7] If the Court elects to apply a notice stage analysis, the Defendants request that only *conditional* certification be granted such that Defendants may move for decertification prior to a trial in this matter.  *See Andews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985) ("…the entering of a conditional certification order does not in any way impinge upon the discretion of the court to later alter or rescind the order.")(quotation and citation omitted).

*Crawford & Co.*, 201 F.R.D. 398, 409-10 (W.D. Pa. 2000); *Pfohl v. Farmers Ins. Group,*

No. CV03-3080DT, 2004 WL 554834 at *2 (C.D. Cal. Mar. 1, 2004) (listing similar

considerations); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 627 (D. Colo. 2002) (same).

Plaintiffs have not met their burden of showing that all past and present Sales

Representatives and Sales Managers at Vacation Village in the Berkshires or "all other

sales personnel"[8] are similarly-situated to them.

### 1. Purported Members of the Collective Action Have Different Job Duties.

A fact-specific review of just a few of the 50 individuals who thus far have

attempted to "opt in" to the yet unrecognized class demonstrates that those within the

purported class work or worked in positions with job duties completely different from those

of the four Plaintiffs.  For example, Michael Castonguay has filed a Consent to Join the

FLSA lawsuit.  Mr. Castonguay, however, worked as a Sales Representative only in

Patriot's Exit Department.  Mr. Castonguay's daily activities were completely different than

those of the representative Plaintiffs.  Others who worked in the Exit Department during

part of their employment with Patriot, have filed Consents to Join, and thus have

attempted to opt in, include Samuel A. Barnes, Knud Breckmann, Owen Broch, Ronald J.

Ferreira, Kenneth L. Graf,[9] William A. Steele, Jr., Phillip Symonds, and Beth Torra.

(Lippert Aff. ¶11, 12).  Similarly, persons who spent much time employed as Verification

Officers also have purported to opt-in to the lawsuit.  They include Bonne Ecklund, Bonnie

Keough, Melissa McGruern, and Kathy Redmond.  Additionally, Samniang Geller, another

putative Plaintiff, spent time employed with Patriot as an Administrative Assistant.

---

[8] Plaintiffs' purported class definitions vary significantly within their own submissions from "all other sales personnel" to "Sales Representatives and Sales Managers," which provides this Court with yet another basis upon which to deny class recognition. (*Compare* Pls. Memo. at 12 *with* Proposed Findings ¶1).
[9] Mr. Graf also worked as a Verification Officer for Patriot.  (Lippert Aff. ¶ 12).

(Lippert Aff. ¶ 13, 14).  Thus, within the scope of the purported FLSA class, "sales

personnel at Vacation Village in the Berkshires," (Pls. Memo. at 12) or "Sales

Representatives" and "Sales Managers," (Proposed Findings ¶1), would fall both

Verification Officers and Exit Department Sales Representatives, whose job duties and

responsibilities did not include taking prospective timeshare purchasers on tour of the

Berkshires and a timeshare unit in Hancock, waiting for their next tour in the Lounge, or

performing any duties and tasks incidental to making sales to those they toured.

Individual defenses, in addition to the defenses applicable to the four named Plaintiffs as

asserted in Defendants' Answer and Affirmative Defenses to the Second Amended

Complaint, could be available to any claims for minimum wage and/or overtime

compensation allegedly due to these individuals.

Moreover, among the four named Plaintiffs alone exist significant differences in

duties and responsibilities.  No Plaintiff, other than Plaintiff Massaconi, was ever a Sales

Manager.  Plaintiff Massaconi's activities, duties and compensation structure while Sales

Manager was not the same as when he was a Sales Representative or as the other three

Plaintiff's activities, duties and compensation structures.  (Massaconi at 107-09).  As

Sales Manager, Mr. Massaconi trained and oversaw two to four full-time employees,

handled customer complaints, ensured that Sales Representatives were paid, and

performed "take over" or "T.O." duties, i.e. explained to buyers what the timeshare interest

cost and how it could be used.  (Massaconi 18-23, 107-09).  If Mr. Massaconi's T.O.

duties resulted in a sale for someone under his supervision, he received an additional 3%

commission.  If it resulted in a sale for someone under another Sales Manager's

supervision, he received an additional 1 ½ % commission.  (Massaconi at 40-41).  Also,

as Sales Manager, Mr. Massaconi arrived at work earlier than the Sales Representatives

to attend a Managers' meeting, and he held parties to motivate Salespeople.  (Massaconi

at 125, 129).  The other three Plaintiffs did not share in the compensation structure, duties

or responsibilities applicable to Sales Managers and their daily activities varied greatly

from those of Sales Managers, making class treatment inappropriate.

### 2.  Certifying the Class Would Improperly Strip Defendants of the Ability to Assert Various Defenses that Require Individualized, Fact-Specific Assessment.

The crux of the FLSA case turns on whether the four named Plaintiffs were exempt

from the FLSA's minimum wage and overtime compensation requirements because, *inter

alia,* they were Outside Salespersons within the meaning of 29 U.S.C. § 213(a)(1). [10]  To

the contrary, the four named Plaintiffs have claimed that they spent most of their time on

their employer's premises and were, therefore, insides Sales Representatives to whom

this exemption is not afforded.  (Compl. ¶¶ 44-47).  To Defendants' knowledge, no court

has decided whether timeshare Sales Representatives whose primary duty is to sell

timeshare interests at a location other than where they waited to meet with potential

customers to take them on tour were properly classified as "Outside Salespersons."  The

determination of whether one is entitled to the Outside Salesperson is fact-specific and

depends on one's daily activities.  *Palmieri v. NYNEX Long Dist. Co.,* No. 04-138PS,

2005 WL 767170, *12 (D. Me. Mar. 28, 2005) (citing *Nielsen v. Devry, Inc.*, 302 F.

Supp.2d 747, 756 (W.D. Mich. 2003).  Certification of the class would result in a complete

elimination of any determination as to what any particular plaintiff's actual daily activities

were and whether that individual plaintiff was, in fact, entitled to the Outside Sales

exemption.

---

[10]Other exemptions may also apply to one or more of the Plaintiffs as set forth in Defendants' Affirmative Defenses to Plaintiffs' Second Amended Complaint.

An Outside Salesperson is not defined in the FLSA.  The Department of Labor, however, issued Regulations at 29 C.F.R. § 541.500 *et seq.* that set forth guidance on the Outside Sales exemption.  Prior to August 23, 2004, when the Regulations were significantly altered, an employee qualified for the Outside Sales exemption if s/he was (in relevant part):

> Employed for the purpose of and customarily and regularly engaged away from the employer's place of business in making sales…for which a consideration will be paid by the client or customer, and s/he did not devote more than 20% of the hours worked by nonexempt employees of the employer to the activities that are not incidental to and in conjunction with the employee's own outside sales or solicitations.[11]

29 C.F.R. § 541.5.  Thus, prior to August 23, 2004, *what* each putative plaintiffs did during workdays prior and *where* they did it would be critical to determining whether the individual was entitled to the exemption.

As of August 23, 2004, the Department of Labor's Regulations pertaining to Outside Salespersons were streamlined.[12]  Significantly the new test *eliminates* the requirement that employees spend no more than 20% of their time on non-sales activities. Moreover, the new Regulations note that non-sales work that is incidental to or furthers the employee's sales efforts is also considered exempt work even if performed at the *employer's offices.*  29 C.F.R. § 541.500(b).  Work that "furthers the employee's sales

---

[11]With respect to the 20% limitation on nonexempt work, the regulations explained that nonexempt work in the definition of Outside Salesperson was limited to 20% of the hours worked in the work-week by nonexempt employees of the employer. The 20% was computed on the basis of the hours worked by nonexempt employees of the employer who performed the kind of nonexempt work performed by the outside salesman.  If there were no employees of the employer performing such nonexempt work, the base to be taken was 40 hours a week, and the amount of nonexempt work allowed would have been 8 hours a week. 29 C.F.R. § 541.507.

[12]The new criteria are as follows:  (1) Employees must have the primary duty of making sales or obtaining orders or contracts for services or the use of facilities; and (2) Employees must be customarily and regularly engaged away from the employer's place of business in performing their primary duty.  29 C.F.R. § 541.500 -541.504.

efforts" expressly includes "writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences." *Id.* As demonstrated by Plaintiffs' own testimony, there was no consistent use of daily time, even among the four of them, that would make treating similarly all timeshare Sales Representatives justifiable for purposes of applying the Outside Sales Exemption.[13]

Specifically, there is no dispute that during the majority of the named Plaintiffs' employment with Patriot they derived compensation from sales commissions and were employed for the purpose of making sales. (Pls. Memo. at 3). There also is no dispute that the four Plaintiffs were regularly engaged away from Patriot's Lanesboro headquarters as each testified that they took prospective buyers on tours of the Berkshires and a condominium in Hancock. (*Id.*). Accordingly, determining whether someone was an Outside Salesperson prior to August 23, 2004, depends on how much time each timeshare Sales Representative spent on tour, what each individual timeshare Sales Representative did when s/he was at the Lanesboro site waiting for his or her next tour, and whether that particular Sales Representative spent more than 20% of his/her time performing non-exempt work or work that was "incidental" to the employee's sales activity. 29 C.F.R. § 541.507. The lack of any consistent time usage, among even just the four representative Plaintiffs, demonstrates why the FLSA exemption claims are inappropriate for collective action treatment.

Firstly, how much time a person spent on a "tour" attempting to sell a timeshare unit at least for pre-August 23, 2004, purposes, has a substantial impact on whether the individual was an Outside Salesperson. The time spent away from the Lanesboro

---

[13]The argument for not treating Verification Officers and Exit Sales Representatives as "similarly situated" to Plaintiffs is even more obvious as Verification Officers and Exit Sales Representatives daily activities were completely different than those of the named Plaintiffs.

headquarters touring the Berkshires and the condominium was at least 1 ½ hours according to the representative Plaintiffs; however, each personally decided how long to spend on each tour, and such time varied from 90 minutes to hours. (Martin at 81, 83). Certifying the class wrongfully deprives Defendants from being able to demonstrate that any individual Timeshare Sales Representative spent 80% of his or her time away from the Lanesboro site attempting to sell a Timeshare unit. [14]

Secondly, the lack of any consistent use of on-site time justifies denial of collective action recognition.  Whether work performed at Patriot's place of business, the Lanesboro property, was "incidental" to an individual Sales Representative's sales activities, and, thus, not time that could disqualify an individual Sales Representative from the Outside Sales exemption must be made on an individual basis as there was no policy as to what had to be done during such time,[15] and such time was used differently, even among the representative Plaintiffs.   For example, some of the four Plaintiffs maintain that they were "required to remain all day in the employee's lounge….," when they were not giving a tour to potential timeshare purchasers, while others maintain that those on Mr. Stensland's Line were allowed to leave the premises as they so desired. (*Compare* Plaintiffs' Memorandum at 7, *with* Massaconi at 28, 30). [16]  Thus, if the employee left the premises and went to attend to personal business, such as getting gas or attending a doctor's appointment, *(see, e.g.,* Martin at 154-55), that time would not be working time.

---

[14] For example, as Sales Representative, Mr. Massaconi spent 2-4 hours giving a potential customer an off-premises tour, and, during the beginning of his employment, he went to one tour right after another. (Massaconi 109-10).

[15] Plaintiff Wise testified that she could not recall anything that those waiting in the "pit" were supposed to be doing.  (Wise at 208).

[16] For example, Plaintiff Martin, who worked for Patriot on two separate occasions, spent his first employment on Mr. Leete's Line and his second employment on Mr. Stensland's Line.  (Martin at 80). When Mr. Martin was on Mr. Stensland's Line, he could go off the property in between "waves," which are pre-arranged tour times.  (Martin 73-74).  He was free to leave until the next "wave" time.  (Martin 75).

If the Sales Representative, however, was required to stay at the Lanesboro site in the Lounge, which , according to the Plaintiffs, s/he may have been required to do depending on whose Line s/he worked on, whether or not the time spent in the Lounge would be disqualifying time turns on whether each employee, while in the Lounge, performed non-sales work that was incidental to or furthered the employee's sales efforts.  Looking to the testimony of even only the four named Plaintiffs demonstrates that there was no consistent use of time in the Lounge among the four such that all time that all purported class members spent in the Lounge, (which according to Plaintiffs was a very significant amount of time), should be lumped together.

Mr. Massaconi performed work incidental to his outside sales duties while in the Lounge:

> Q.  I guess I'm curious as to what you did in the pit during the waiting time?
> A.  You could read.
> Q.  What did you do?
> A.  What did I do personally?
> Q.  Yes?
> A.  I usually would open up my RCI Directory or I would read something on timeshares or sales pertaining to making the sales.
> Q.  Anything else?
> A.  Have a cup of coffee.

(Massaconi at 110).  Plaintiff Wise similarly testified that she prepared for her sales day while waiting in the Lounge:  "I'd prepare.  I would—at one point, I was assisting John Borden as he did his management work, TOing, closing tables.  I would observe different techniques and different methods of doing different steps and keep to the vibes of enthusiasm, keeping to what's called the ether."  (Wise 166-67, 206-05).

To the contrary, Mr. Martin claimed he spent most of his time "hanging out," socializing and gossiping when in the Lounge:

Q.  Where did you work when you were in the office?
A.  We didn't work. We all hung out in what they called the pit.

(Martin at 60).

Q.  Other than hang out, were you required to do anything in the pit?
A.  Occasionally the managers would come over and continue training.

(Martin at 63).

Q.  What types of things did you do when you were in the pit, other than the
    training you talked about?
A.  Hang out.
Q.  Did you socialize with your co-workers?
A.  Absolutely.
Q.  Did you eat?
A.  No.
Q.  Did you watch TV?
A.  Very little.
Q.  Did you do any of your own work or business or personal stuff?
B.  No.
Q.  Did you ever bring anything with you in the pit to read or do while you were
    there?
A.  No.

(Martin at 72-73).

Finally, Plaintiff Corbin did a bit of both: "Sometimes train, sometimes have a

training session, one-on-one, one-on-twenty, sometimes read the paper, sometimes have

a cup of coffee.  It would all be general." (Corbin 32).  Thus, depending on what each and

every person did in the lounge, (as there was no policy governing what one was to do in

the lounge), that time may, or may not, be considered time spent incidental to that Sales

Representative's sales activity.  Certifying the class wrongfully deprives Defendants from

being able to demonstrate that any individual Plaintiff qualified for the Outside Sales

exemption.

Noting this inherent unfairness to Defendants attempting to apply fact-specific

exemption analysis to FLSA claims, courts have noted that particularly unsuitable to

FLSA class treatment are cases involving the alleged misclassification of Outside

Salespersons as exempt. *Clausman v. Nortel Networks, Inc.*, No. 02-0400-C-M/S, 2003

WL 21314065 (S.D. Ind. May 1, 2003). In *Clausman,* the court refused to approve

notification to potential class members or certify a class reasoning as follows:

> Central to Clausman's case is whether he was classified correctly as an outside salesman. The same would be true for every other potential plaintiff. Even those individuals with the same job title as Clausman may or may not be exempt employees. Accordingly, many more questions must be asked of each affiant or deponent to determine whether he was an "outside salesman." For example the Court must decide what each individual did while at his home office or Nortel's office. Was that work "incidental to" the work of outside sales. From some testimony, it appear [sic] that it was; as to others it is unclear . . . .Further, the court must determine whether each individual spent greater than 20 percent of his workweek doing nonexempt work. While arguably the affiants have testified as to the percentage breakdown of their workweek, it is clear that each salesperson at Nortel operates differently. It is precisely because these questions must be answered that the court cannot approve notification of potential class members. The Court cannot make these inquiries of each of the unknown number of potential plaintiffs.

*Id.* at *4.

Other courts also have rejected class treatment of FLSA claims that arise out of

the alleged misclassification employees as exempt. *Morisky v. Pub. Serv. Elec. & Gas

Co.*, 111 F. Supp.2d 493 (D.N.J. 2000)(rejecting class and collective action treatment in

FLSA/state wage-and-hour claim because exempt classification issues presented unique

issues for each employee); *Ale v. TVA*, 269 F. 3d 680, 688 (6th Cir. 2001) (holding that in

FLSA cases "[t]he key to a determination of whether an employee is covered by an

exemption ... is what an employee actually does on a day-to-day basis."); *Bohn v. Park

City Group*, 94 F. 3d 1457, 1461 (10th Cir. 1996) ("the inquiry into exempt status ...

remains intensely fact bound and case specific."). In short, determination of whether

employees are "similarly situated" in an FLSA exemption case is an "extremely individual

and fact-intensive" process which must be determined on an "employee-by-employee basis." *Morisky*, 111 F. Supp. 2d at 499; *see also* 29 CFR § 542.201(b)(2) ("The exempt . . . status of any particular employee must be determined on the basis of whether his duties, responsibilities and salary meet all the requirements of the appropriate section of the regulations").  Moreover, certification also is inappropriate when putative class members share nothing more than a common allegation that they were denied overtime pay or paid below the minimum wage.  *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 412–14 (D. Or. 2002) (denying notice to all present and former employees in a case where plaintiffs alleged that "defendant exercised a policy and practice of failing to pay overtime and compensating workers at rates below the federal minimum wage," holding that "[p]utative class members must share more than a common allegation that they were denied overtime pay or paid below the minimum wage"); *Pfohl v. Farmers Ins. Group*, 2004 WL 554834 at *9 (C.D. Cal. Mar. 1, 2004) (rejecting attempt to certify class based upon claim that defendant's "plan" was to not pay overtime to a diverse group of employees); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp.2d 941, 944–46 (W.D. Ark. 2003) (denying plaintiff's request to send nationwide notice of the action to all salaried Wal-Mart employees below the officer level in a case alleging that Wal-Mart had misclassified salaried employees as exempt, rejecting plaintiff 's contention that all such employees were similarly situated "simply because they claim violations of the law against the same employer.").

> **B.  The Claims Arising under Massachusetts Law Should Not Be Class Certified.**
>
> **1.  *There Exists No Jurisdiction Over those Plaintiffs Who have Not Opted Into the FLSA Lawsuit.***

Plaintiffs propose two classes brought only pursuant to state minimum overtime claims and one class brought solely pursuant to state law requiring the timely payment of wages. (Pls. Memo. at 11-12). These three classes have absolutely no federal question claims. Thus, these "classes" may proceed in federal court only if the court has supplemental jurisdiction over their claims. The district court has supplemental jurisdiction over state law claims "that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Further, where federal jurisdiction is premised on a federal *class* claim, supplemental jurisdiction over companion state-law class claims extend *only* to those members of the state law class who are part of the federal class claim. *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1036-1037 (8th Cir. 1999); *See also Snider v. Stimson Lumber Co.,* 914 F. Supp. 388, 390-91 (E.D. Cal. 1996) ("The claims of the individual members of a permissive class are distinctive cases and controversies; each must separately support federal jurisdiction."). Accordingly, in dual-filed wage claims, a federal court may exercise supplemental jurisdiction over the state law wage claims *only* with regard to the members of the putative state class who opt into the FLSA claim. *Lindsay v. Gov't Employees Ins. Co.*, 355 F. Supp.2d 119, 122-23 (D.D.C. 2004); *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574 (N.D. Ill. 2004); *Bartelston v. Winnebago, Indus., Inc.*, 219 F.R.D. 629, 638 (N.D. Iowa 2003); *Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1033, 1036-38 (8th Cir. 1999) ("The district court lacks supplemental jurisdiction over any member of the [state] interest overcharge class who does not have a Truth in Lending

claim, because the court has no original jurisdiction over that plaintiff's case or

controversy.").

Like the Plaintiffs in the present action, in *Bartelston,* 219 F.R.D. at 638*,* the

plaintiffs purported to assert an FLSA collective action and a state-law class action.  In

refusing to allow the state law claims to go forward unfettered, the court concluded that:

> [T]his case involves a state-law class action claim, which can be in
> federal court only on the basis of supplemental jurisdiction. . . . As
> [8th Circuit precedent] makes clear, the claims of the individual members of
> a permissive class are distinct cases and controversies; each must
> separately support federal jurisdiction. Thus, only state claim class
> members who have also asserted a federal claim are properly in federal
> court. Here, that limitation on supplemental jurisdiction means that only
> [state-law] class members who have also asserted a FLSA claim in this
> action are properly in federal court; supplemental jurisdiction cannot extend
> to [state-law] class members who have no FLSA claim. Therefore . . . leave
> to amend to assert [a state-law] class claim can be granted only to the
> twenty-one plaintiffs already asserting FLSA claims, because the court's
> supplemental jurisdiction extends no further.

*See also, Foster v. The Food Emporium*, No. 99-Civ-3860, 2000 WL 1737858, *3

(S.D.N.Y. April 26, 2000) ("If persons who have no Federal claim but a timely State law

claim hear about this action from their friends and co-workers and wish to file their own

individual Labor Law complaints in the New York State Supreme Court, they are free to

do so.  Those individuals would not be properly before this Court, however, because they

have no federal claim and there would not be diversity jurisdiction over any State law

claim they might assert.  It would be improper to bring persons who have no Federal

claim into this Court under the guise of a collective action so they can pursue State law

claims. . . ."); *Zelaya v. J.M. Macias, Inc.*, 999 F. Supp. 778, 782-83 (E.D.N.C. 1998)("The

inclusion of a state law claim involving over 100 plaintiffs with a federal law claim involving

a separate, distinct and smaller class cannot be permitted."); *Isaac v. Wm. H. Pflaumer &*

*Sons, Inc.*, 1990 U.S. Dist. Lexis 8892, *5 n.3 (E.D. Pa. July 17, 1990) (declining to exercise pendent party jurisdiction over state wage-and-hour law class action); *Pirrone v. North Hotel Assocs.*, 108 F.R.D. 78, 84 (E.D. Pa. 1985) ("I do not believe that a plaintiff may assert claims under the WPCL on the basis of jurisdiction pendent to claims under the FLSA unless those claims are asserted on behalf of a party plaintiff who has filed a written consent.  The FLSA expressly limits the parties who may assert federal claims to those who have filed consents, and the court, therefore, should not create pendent-party jurisdiction as to plaintiffs for whom Congress has not provided a federal forum.  This court, absent diversity jurisdiction, appears to have no power to entertain WPCL claims on behalf of parties who do not assert FLSA claims.").

In the present case, not all the members of the putative state law classes would be members of the putative FLSA class.  Indeed, thus far, 50 persons have purported to opt-in to the FLSA collective action and 183 total individuals, according to Plaintiffs, potentially could be members of the state law classes.  Consequently, the potential state-law classes can overlap the federal class *only* as to those plaintiffs who properly opt into the federal claim class *if a class is recognized*.  *See, e.g. id.* at 637.  Thus, Plaintiffs' proposed state law classes can be recognized *only* if the court recognizes the FLSA claim, Count VII, as a collective action <u>and</u> must be restricted to only those persons who properly opt in to the FLSA claim.

### 2.  *Plaintiffs Have Not Established the Rule 23 Certification Prerequisites.*

To certify §148 or Chapter 151 class, the court must conduct a "rigorous analysis" of the prerequisites of Fed. R. Civ. P. 23.  *See General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364 (1982); *Makuc v. American Honda Motor Co.,*

835 F.2d 389, 394 (1st Cir. 1987).  Rule 23 sets forth a two-pronged certification

procedure.  Plaintiffs who are seeking class certification must first meet the Rule 23(a)

prerequisites:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Fed. R.

Civ. P. 23(a).  Plaintiffs must also show that the putative class meets the requirements of

Rule 23(b)(1), (b)(2), or (b)(3).  Fed. R. Civ. P. 23(b).  Plaintiffs cannot do so.

### a.  The Representative Plaintiffs have not Established  Rule 23(a) Prerequisites.

Numerosity, commonality, typicality and adequacy are absent from the record.

Firstly, Plaintiffs have not established numerosity because joinder of all members of the

class is not impracticable.  The facts and circumstances of each case are to be taken into

account to determine numerosity under Rule 23(a) (1).  *Andrews v. Bechtel Power Corp.*,

780 F.2d 124, 131 (1st Cir. 1985).  Numbers alone are not determinative, and a class may

not meet the numerosity requirement because joinder of all members is practicable.  *Id.*

As only the members of the FLSA opt-in class could possibly be members of the state law

classes, *Bartleson,* 219 F.R.D at 639, joinder is practicable.  Further, the present putative

class is not sufficiently numerous to justify class treatment because there is no evidence

before the Court that anyone other than the four named Plaintiffs have exhausted their

administrative remedies before participating in a Section 148 or Chapter 151 lawsuit.  *See*

*Coffin v. Bowater, Inc.*, 228 F.R.D. 397, 402 n.6. (D.Me. 2005) (noting that claims of non-

parties cannot be entertained until they have exhausted administrative remedies attached

to their claims);  *see also*  Mass. Gen.  Laws ch. 149, § 150.  Indeed, before either claim

may be asserted by an individual, that individual must, within the proscribed timeframe,

file a claim with the Massachusetts Office of the Attorney General pursuant to Mass. Gen.

Laws. ch. 149, § 150.  The individual, thereafter, can participate in a civil action only if 90

days has passed since the filing with the Attorney General, which timeframe may be shorter only if the Attorney General consents. *Id.* Accordingly, as the unnamed, putative plaintiffs have not established the procedural prerequisites to becoming part of the class, the class is so not so numerous that joinder is impracticable. *See, e.g. McLaughlin,* 224 F.R.D. at 307 (noting that 40 people generally needed to establish numerosity and that 51 likely class members is considered only "slightly above the critical mass," resulting in determination of whether other factors suggest class certification is inappropriate).

Additionally, where class members are from the same geographic area and can be easily identified, joinder is practicable thus defeating numerosity. *Id.* at 131-32; *See also Ziedman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir. 1981); *Dale Electronics, Inc. v. R.C.L. Electronics, Inc.*, 53 F.R.D. 531, 534 (D.N.H. 1971); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). In the present action the putative members of the collective action are all from the same small geographic area surrounding Patriot's Lanesboro place of business. Further demonstrating that joinder would not be impracticable is the fact that 50 persons, or approximately one-third of the representative class, already has purported to opt in even though notice has not been sent to them.

Secondly, Plaintiffs have failed to demonstrate that questions of law and fact are common to the prospective class. As discussed in Section II.B.2, *supra*, there are significant questions of fact directly related to whether the Plaintiffs were Outside Salespersons under the FLSA, and the Outside Sales exemption found in Mass. Gen. Laws ch. 151, § 1A(4) also requires a fact-intensive and plaintiff-specific interrogation. *See, e.g. Goodrow v. Lane Bryant, Inc.*, *supra,* at *6. The questions of fact and law highly

significant here, i.e. whether the individual Plaintiffs were Outside Salespersons and, thus, exempt from Massachusetts wage laws, preclude a finding of class-commonality.

Thirdly, the representative parties are not typical of the claims or defenses of the class.  Under Rule 23(a)(3) the Plaintiffs' claims must be typical of the claims of the proposed class.  The central inquiry in determining whether a proposed class has typicality is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class.  *McLaughlin v. Liberty Mut. Ins. Co.,* 224 F.R.D. 304, 309-10 (D. Mass. 2004) (quotations and citations omitted). Typicality entails an inquiry as to whether the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based*. Osgood v. Harrah's Entertainment, Inc.,* 202 F.R.D. 115 (D.N.J. 2001).

Finally, the representative parties do not fairly and adequately protect the interests of the class.  Plaintiff Wise held numerous positions concurrent with her employment with Patriot and was excessively absent from work, likely in part due to these other positions. (Wise 26-7, 37, 202-203).  In June 2003, Plaintiff Wise went to work at her other job, Lori Donuts, instead of reporting to work at Patriot.  (202-03)  As this was her 15th absence, which is the maximum Patriot's written attendance policy permits per year, she was terminated from employment; a termination which she maintains was based on her race and color.  (Wise at 204; *see also* Exhibit 6, Nov. 3, 2002 Company Attendance Policy signed by Wise).

Additionally, another barrier to Plaintiff Wise being a representative Plaintiff is that she asserts that one of the members of management to whom she allegedly complained

about not being paid minimum wage is *Plaintiff Massaconi*.   (Wise at 182). Thus, their

interests inherently conflict.  Further, Plaintiff Wise is a convicted criminal.  (Wise at 82).

*Hartsell v. Source Media*, No. 98-CV-1980, 2003 WL 21245989, *3 (N.D. Tex. Mar. 31,

2003) (questioning whether representative, whose duties require acting on behalf of

absent persons, can be a convicted criminal).

### b.  The Plaintiffs have not Established that the Putative Class Meets the Requirements of Rule 23(b)(3).[17]

The Court should not certify the state law classes because the purported class

action would devolve into a series of individual mini-trials on issues peculiar to each

plaintiff.  Among even only the four named Plaintiffs, there are numerous claims specific

to them that will require individualized inquiries into the unique circumstances surrounding

each plaintiff's employment with Patriot.   Plaintiff Wise, as noted previously, maintains

race and color discrimination and retaliation claims under state and federal law. Similarly

and also as noted previously, Plaintiffs Massaconi and Martin maintain separate and

distinct causes of action for Defendants' alleged retaliation against them for purportedly

engaging in activity protected under state law.  (See Counts VI and VIII).  Further, the

*application* of different policies, including the managing of workday time, was admittedly

inconsistent.  Thus, such policies or procedures do not apply to the purported class as a

whole.  Common questions of law and fact do not predominate and many aspects of this

lawsuit will require individualized inquiries into each plaintiff's employment.

Further, because those who wish to assert a claim for minimum wage or overtime

compensation can do so very easily by opting into the FLSA action, as demonstrated by

the fact that 50 persons already have filed Consents to Join, a state law class action is

---

[17]Plaintiffs do not contend that they meet the requirements of Rule 23(b)(1) or 23(b)(2) and seek certification only under 23(b)(3).

not superior to other available methods of the fair and efficient adjudication of the

controversy.  In *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.,* No. 01C2361, 2002

WL 1359411, *2 (N.D. Ill. June 25, 2002), the district court, refusing to certify a state law

overtime class action under R. 23(b)(3), reasoned:

> [O]nce employees who receive notice have decided whether to opt into the FLSA class, we will have before the Court as plaintiffs all of the present and former employees who wish to pursue a claim for unpaid wages.  Each of those persons then will be able to pursue on his or her own behalf state law claims, which cover the very same conduct as the FLSA claim…Because all of the companies' present and former employees will have the chance to decide whether to join the case, and because those who wish to do so will be before the Court, it makes no real sense [to] the Court to certify a class that will automatically include all of the employees unless they opt out.  Under these circumstances, and because of the relatively modest number of existing present and former employees, the Court sees nothing to favor the proposition that we should impose on the collective FLSA action an overlay of a Rule 23(b)(3) state-law class.

As noted above, the FLSA's opt-in provisions allow, should the class be

recognized, the Plaintiffs to send notice to all potential class members under the state law

claim advising them of their rights to join the lawsuit through the FLSA, along with a form

they can return to elect to be represented by Plaintiffs' counsel and assert the same

minimum wage and overtime pay claim that they could assert by being an absent class

member under the parallel state law.  There are absolutely no factors that demonstrate

that a state law class action is not a superior device to the FLSA's opt-in procedure for

resolving minimum wage and overtime pay violations.

**3.** ***The Court Should Decline to Exercise Supplemental Jurisdiction over the State Law Claims Because they "Substantially Predominate" Over the Section 216(b) Claim that Creates the Court's Original Jurisdiction; Involve Novel and Complex Issues of State Law; and for other Compelling Reasons.***

Plaintiffs should not be allowed to escape the policy considerations that resulted in

Congress amending the FLSA to require employees wishing to join the FLSA actions to

affirmatively opt in via individual written consents by attempting "to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement." *Leuthold,* 224 F.R.D. at 462 (citations omitted). Indeed, a federal court's exercise of supplemental jurisdiction is discretionary. Federal law sets forth several circumstances in which it is appropriate for a court to decline supplemental jurisdiction, including (1) when the state claims substantially predominate over the FLSA claim upon which the Court's original jurisdiction exists; (2) when the state claim raises a novel or complex issue of state law; and (3) where there other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1) – (4). All three circumstances appear in the present case, providing the Court with ample reason to prohibit the Plaintiffs from escaping the clear congressional mandates in favor of FLSA collective opt-in actions by including state law claims in their lawsuit.

Firstly, the state law claims substantially predominate over the FLSA claims because the state and federal law claims do not raise similar issues or require similar proof. For example, Count VII alleges a violation of Chapter 149, §148. Although often characterized as an act requiring the weekly payment of wages, *Commonwealth v. Savage,* 31 Mass. App. Ct. 714, 716 (1991), the statute itself does not mandate the weekly payment of wages. It does, however, establish different deadlines for the payment of wages to several different types of employees. As set forth in the Contracts, the named Plaintiffs were paid throughout the large part of their employments on a commission basis. Section 148's application to those paid on a commission basis is limited. It applies to the payment of commissions only when commissions are "definitely determined and have become due and payable." *Wiedman v. The Bradford Group, Inc.,*

444 Mass. 698, 831 N.E.2d 304, 309 (2005).  Thus, to determine whether this

Massachusetts statute even applies to the Plaintiffs, the Court must interpret the Plaintiffs'

written contracts and evaluate whether the complicated contingencies therein have been

met as to each and every individual sale such as to make the commission at issue

"definitely determined."  Thereafter, the Court would have to determine *as to each and

every sale* whether the putative plaintiff was, or was not, paid in accordance with Section

148's requirements.[18]  Indeed, the Plaintiffs have not alleged that all commissions were

untimely paid; rather, they have alleged that "some" commissions may have been

untimely paid.  (Pls. Memo. at 4).  This clearly would be a fact-intensive inquiry resulting

only from the Section 148 claim because the FLSA has no provision regarding when

commissioned salespersons, or anyone, must be paid.  Because the Section 148 claim,

unlike the FLSA claim, would require substantial additional testimony and proof beyond

that which would be required for the FLSA action, including but not limited to contract

interpretation and a detailed analysis of every sale for every putative class member, it

would be inappropriate for the Court to exercise supplemental jurisdiction over the state

law claims or certify a Section 148 class.  *See*, e.g. *De Asencio v. Tyson Foods, Inc.,* 342

F.3d 301 (3d. Cir. 2003) (refusing to exercise supplemental jurisdiction over state law

claims that would require proof of a contract between the employer and its employees not

required under FLSA).

Secondly, w*hen* commissions must be paid after they are due and payable is a

novel issue of Massachusetts law.  Indeed, Section 148's requirement for both a specific

frequency of wage payments and a requirement that wages be paid within a certain

---

[18]When commissions must be paid after they have been definitely determined and due and payable is novel issue of Massachusetts law as discussed.  This unresolved aspect of Massachusetts law, too, provides the Court with ample reason to decline to exercise supplemental jurisdiction over the state law claims.

number of days after the end of a particular pay period is nonsensical in the context of commissions which would not normally be paid on a frequent basis and are not connected to the end of any pay period.  *See Klint v. J & J Associates, Inc.*, No. 970251, 1998 WL 1181125, *3 (Mass. Super. Sept. 3, 1998).   Again, federal law, to the contrary, does not govern when wages must be paid and, thus, the detailed analysis of the contracts and a determination of when, legally, commissions must be paid after they are due and payable stems solely from the Section 148 claim.  Accordingly, the Section 148 claims should not be maintained in this forum, nor should the class be certified.

A similarly novel and complex issue of law is when someone is considered an "outside salesperson," within the meaning of Chapter 151, § 1A or 151 § 2, as the Massachusetts courts have not decided this issue.  Further, Massachusetts courts, when determining whether someone is exempt from the requirements of its wage laws, *does not* consider the FLSA's Regulations to "be the law" in Massachusetts.  *Goodrow v. Lane Bryant, Inc.,* 1999 WL 1473560, *5 (Mass. Super.) The Massachusetts Legislature or its state courts not the federal court focusing on an FLSA action, should resolve these state law issues.

Thirdly, the Court should refuse to certify the class for pragmatic reasons.  It would be impossible to prepare an effective notice to prospective class members that explains their opportunity to *opt in* to the FLSA collective action as well as their choice to *opt out* of the state law class action.  Indeed, in their proposed notice, the Plaintiffs do not even attempt to fashion such a notice and have provided the court with only an *opt-in* notice.  A notice requesting someone to check boxes expressing consent to join the FLSA case and to opt out of the state law case, when checking no boxes or not returning the form at all

will place a class member in the case anyway, is indisputably confusing and provides
sufficient grounds upon which to decline supplemental jurisdiction.  *See Thiebes v. Wal-
Mart Stores, Inc.*, No. 98-802-KI, 1999 WL 1081357, *4 (D. Or. Dec. 1, 1999) (declining to
certify class, *inter alia,* because opt-in and opt-out notice would be too confusing to
potential plaintiffs); *De la Fuente v. FPM Ispen Heat Treating, Inc.*, No. 02C50188, 2002
WL 31819226, *2 (N.D. Ill. Dec. 16, 2002) (holding that "a notice that both calls for a
decision whether to opt-in to a collective action and whether to opt-out of the class
action… seems an inherently difficult task to [perform] in a nonconfusing manner."); *Mete
v. New York State Office of Mental Retardation and Dev. Disabilities*, No. 92CV169, 1993
WL 226434, *4 (N.D.N.Y. June 24, 1993) (delaying determination of class certification
motion until expiration of opt-in period in part because "confusion among the potential
class members regarding the difference between the 'opt-in' and 'opt-out' choice of the
two rules"); *Robinson v. Sizes Unlimited, Inc.*, 685 F. Supp. 442, 446 (D.N.J. 1988)
(noting potential confusion between opt-in and opt-out notices); *Sperling v. Hoffman-
LaRoche, Inc.*, 118 F.R.D. 392 (D.N.J. 1988) (same).  Accordingly, the Court should reject
certification of the state-law based claims because the distribution of notice will prove too
confusing to potential plaintiffs and putative class members.

> **C.   Plaintiffs' Proposed FInidings and Order on Notice and Class
> Certification is Unsubstantiated and Permission to Send Notice Should
> Be Denied.**

The Plaintiffs' request as to the FLSA collective action that the Court approve
notice to "all current and former sales representatives and sales managers" ever
employed with Defendant is improperly unlimited in temporal scope.  (Proposed Findings
¶ 1). The statute of limitations for a cause of action for unpaid minimum wages, unpaid

overtime compensation, or liquidated damages under the FLSA is two years.[19] 29 U.S.C.
§255. For the FLSA claim, each Plaintiff's limitation period is measured not from the time
the suit was filed but from the date the particular plaintiff opts in. *Id.*; *Reeves v. Alliant
Tech. Sys., Inc.*, 77 F. Supp.2d 242, 244 n.4 (D.R.I. 1999); *Cahill v. City of Brunswick*, 99
F. Supp.2d 464, 479 (D.N.J. 2000). Thus, any notice purporting to include within this
lawsuit Sales Representatives or Sales Managers who were not paid minimum wage or
overtime compensation at *any time* would be improper. At most, only those Sales
Representatives and Sales Managers who were not paid minimum wage and/or overtime
within the two years preceding his or her opt-in date would be properly included in the
FLSA collective action.

Similarly, the purported Class Certification Order as to the state law claims is
unjustifiably broad in time. The statute of limitations for a violation of Chapter 151 is two
years. Mass. Gen. Laws ch. 151, § 20A; *see also Dagan v. Jewish Community Housing
for Elderly,* 45 Mass.App.Ct. 511, 699 N.E.2d 840, 842 n.6 (1998) ("There is a two-year
statute of limitations, G.L. c. 151, §20A regarding suits to recover any underpayment [of
minimum wage or overtime]. Therefore, at best, the plaintiffs could recover for the period
September 27, 1992 (two years before their complaint was filed), through June 13,
1994.") Nonetheless, Plaintiffs request that as to the Chapter 151 claims the Class
Certification Order include, *inter alia,* all sales representatives and sales managers who

---

[19] A cause of action arising out of a willful FLSA violation extends the statute of limitations to 3 years. 29
U.S.C. §255. The standard of willfulness for FLSA purposes is that the employer either knew or showed
reckless disregard as to whether its conduct was prohibited by the FLSA. *McLaughlin v. Richard Shoe Co.,*
486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). The record is devoid of evidence that Defendants'
actions were willful and that a 3-year statute of limitations should apply. Other than baseless allegations,
Plaintiffs have come forward with no evidence demonstrating that the Defendants' conduct was willful. To
the contrary, in concluding that their payment to the Plaintiffs was in accordance with the law, Defendants,
*inter alia*, relied on the opinion of Massachusetts counsel and of other attorneys. It also relied on the
enforcement policy of the United States Department of Labor. *See* 29 U.S.C. §259. (Deposition of Rebecca
Foster ("Foster Dep."), Ex. 7 at 41-47, 106-07; 129-145).

were not paid minimum wage from July 1, 2001 to the present. The first complaint in this matter alleging such violations was filed on May 11, 2004. Thus, the Order, if any, must be limited to the relevant individuals who were not paid minimum wage or overtime from May 11, 2002 forward. As requested, the Order is improper.[20]

Moreover, there is no proposed Certification Order pertaining to the Section 148 claim. As any class certified pursuant to a violation of this Section, too, would be subject to an opt-out process, an appropriate certification order must issue. As noted above, an employee claiming to be aggrieved by a violation of Section 148, may, only at the expiration of ninety days after the filing of a complaint with the attorney general, or sooner, if the attorney general assents in writing, and within three years of such violation bring a civil action. Any Certification Order pertaining to the Section 149 class must take into consideration only those who have exhausted their administrative remedies and the applicable statute of limitations.

The Proposed Findings also improperly request that the Court order Defendants to produce the names and addresses of all putative class members to the Plaintiffs. As noted both herein and in Plaintiffs' Memorandum, this information already was provided to Plaintiffs in discovery. Requiring Defendants to produce it again would be unduly burdensome.

For all the foregoing reasons, Defendants respectfully request that Plaintiff's Motion for Authorization to Send Notice and For Class Certification be denied.

---

[20]As noted previously, Plaintiffs have not indicated that opt-out notice be sent to the putative state law plaintiffs. However, should the state law claims be afforded class certification, the Defendants also note that any applicable notice should be sent only to those individuals who believe to have suffered a violation from May 11, 2002 to the present.

Respectfully submitted,


 /s/ Marylou Fabbo_____
Marylou Fabbo, Esq.
BBO No. 566613

/s/ Kimberly Klimczuk_____
Kimberly Klimczuk, Esq.
BBO #660973

Counsel for Defendant
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144
Dated:  October 24, 2005                Tel. (413) 737-4753 Fax: (413) 787-1941

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Memorandum in Opposition to Plaintiff's Motion for Authorization to Send Notice and For Class Certification* was served upon the attorney of record for each other party via electronic filing on October 24, 2005.

 /s/ Marylou Fabbo_____
Marylou Fabbo, Esq.