UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-cv-30091-MAP

LACRISHA WISE, MICHAEL
MASSACONI, ROGER MARTIN and
PETER CORBIN, on behalf of
themselves and on behalf of others
who are similarly situated,

        Plaintiffs,

v.

PATRIOT RESORTS CORP.,
THE BERKLEY GROUP, INC.,
MARC J. LANDAU, J.P. OTTINO, III
REBECCA A FOSTER, and JAMES E.
LAMBERT,

        Defendants.

## PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AUTHORIZATION TO SEND NOTICE AND FOR CLASS CERTIFICATION

I.    INTRODUCTION

The defendants have opposed the plaintiffs' request to send notice to persons similarly situated with the plaintiffs under the Fair Labor Standards Act ("FLSA") (for failure to pay minimum wage and overtime compensation under 209 U.S.C. § 206(a) and 207 (a)(1)), have opposed the plaintiffs' request to certify their state claims under M.G.L. c. 151 §§ 1 and 1A as a class action (for failure to pay minimum wage and overtime compensation under state law) and have opposed the plaintiffs' request to certify their

state claims under M.G.L. c. 149 (for failure to pay the plaintiffs their earned commissions in a timely manner).

The defendants' own statements, the documents already in the record and the additional documents submitted by the plaintiffs with this Reply Memorandum, show that:

(1) The four plaintiffs are all "similarly situated" to all other "Timeshare Salespeople" who worked for the defendants during the time period when the defendants failed to pay minimum wage and overtime compensation to the plaintiffs and all other "Timeshare Salespeople"[1];

(2) Additionally, Plaintiff Massaconi is "similarly situated" to all other Timeshare Sales Managers who worked for the defendants during the time period when the defendants failed to pay minimum wage and overtime compensation to the plaintiffs;

(3) The plaintiffs' employment positions were identical to all other Timeshare Salespeople and Timeshare Sales Managers for determining whether Timeshare Salespeople and Timeshare Sales Managers were "outside salespersons" under the FLSA exemptions;

(4) Each of the plaintiffs and all other Timeshare Salespeople and Timeshare Sales Managers performed identical job duties during their work day; and

(5) The policies of the defendants concerning the payment of commissions to the four plaintiffs and all other Timeshare Salespeople and Timeshare Sales Managers

---

[1] For purposes of this Reply, the plaintiffs will use the job titles employed by the defendants. As Faith Lippert notes in her Affidavit filed by the defendants, "the four named Plaintiffs are former Timeshare Salespeople who were headquartered out of Patriot's Lanesboro, Massachusetts office". For the sake of clarity, the plaintiffs will amend their definition of the class, contained at page 11 in their Memorandum in support of class certification to include all "Timeshare Salespeople and Timeshare Sales Managers" in the jargon of the defendants, rather than simply sales representatives and sales managers.

were identical for each and every person who worked in these two jobs at Lanesboro, Massachusetts;

As a result, under standards applicable to FLSA collective actions and federal class action rules, this court should find that the plaintiffs' claims may proceed as a federal collective action under FLSA, that appropriate notice be authorized under the FLDA claims to all former Timeshare Salespersons and Timeshare Sales Managers of the defendants during the relevant time period, and that the state claims of the plaintiffs be certified as class actions.

## II.   ADDITIONAL FACTS

Despite the arguments of the defendants to the contrary, the plaintiffs and all other Timeshare Salespersons and Timeshare Sales Managers performed identical jobs that did not differ in any way that is germane to this court's decision on collective action or class action certification.

Each Timeshare Salesperson (hereinafter "Salesperson" for ease of use), was required to appear at the employer's place of business at Lanesboro at 8:30 a.m. each and every workday. Supplemental Affidavit of Joel Feldman, Exhibit 1, Deposition Transcript of William Rauer, p. 18. Every Salesperson then attended a twenty or thirty minute sales meeting. Supplemental Affidavit of Joel Feldman, Exhibit 2, Deposition Transcript of Rodney Lewis, p .46. Thereafter, every Salesperson was required to remain at the employer's work site in Lanesboro until he/she was assigned a tour by the employer. Affidavit of Joel Feldman, Exhibit 4, Deposition Transcript of William Rauer, p. 19. Simply put, the Salespeople "[w]ould wait in the sales lounge until they're called for their tour". Supplemental Affidavit of Joel Feldman, Exhibit 1, Deposition

3

Transcript of William Rauer, pp. 43-44. If a Salesperson did not stay on site, they would face the discipline of "overage", being placed at the bottom of the list for the assignment of tours. Supplemental Affidavit of Joel Feldman, Exhibit 2, Deposition Transcript of Rodney Lewis, pp. 62-63. On some days, Salespeople did not get a tour at all despite waiting in the sales lounge all day in Lanesboro. Supplemental Affidavit of Joel Feldman, Exhibit 1, Deposition Transcript of William Rauer, p. 46.

When asked at his deposition what "the company wanted [Salespeople] to be doing" during the period they were mandated to be on site waiting for a tour, Rodney Lewis, the on-site project director for Vacation Village, testified to the following:

> We provide a lounge for them that has a television set, tables and chairs where they can play board games, they can play cards, they can read, help each other with sales presentations, you know. There's a refrigerator, microwave, toaster oven. Typically they have there lunches there, whatever.

Supplemental Affidavit of Joel Feldman, Exhibit 2, Deposition Transcript of Rodney Lewis, p. 62. Mr. Lewis testified that "Yes most of the salespeople just, you know, stay in the lounge area or they sit outside or they're prepared to go to work and they just sit there and wait for their turn to come." *Id.* at 67.

In sum, the defendants required the Salespeople to come to work at 8:30 a.m., attend a sales meeting, and then wait at the sales center until a tour came. The project director of Vacation Village testified that there were no required activities for Salespeople while waiting in the lounge. *Id.* at 90. The defendants engaged the Salespeople to wait at the sales center until the defendants "gave" the Salespeople a tour. Any activity performed by the defendants, whether it was "playing board games", "playing cards", reading, or eating lunch was irrelevant to the reason why the Salespeople

4

remained on site, which was taking customers out on tour and closing sales at the Lanesboro site.

The defendants set out exactly what the Salespeople were supposed to do on tour by providing them a detailed outline of the mandatory tour presentation. Supplemental Affidavit of Joel Feldman, Exhibit 2, Deposition Transcript of Rodney Lewis, p. 71. The sales representative would

> Drives [sic] them in his car to an area called Mount Greylock. They spend some time there talking about vacationing and get them involved in understanding what the concept of time-sharing is. They drive them around the area. I don't know the exact route, but they show them things of interest in the area, and they bring them back to the sales office, talk to them there briefly about other benefits of the time-share plan. Then they leave the property again and go to the actual location of the resort, and again they look at points of interest along the way to the resort. When they get to the resort, they tour the model apartment and the clubhouse area, and then they leave the property and come back to the sales office. And if there is a sale they transact the sale at the sales office.

Supplemental Affidavit of Joel Feldman, Exhibit 3, Deposition Transcript of Rebecca Foster Campagna, pp. 123-124. Mr. Rauer agreed with this description of the tour provided by Ms. Campagna, president of the company. Supplemental Affidavit of Joel Feldman, Exhibit 1, Deposition Transcript of William Rauer, p. 52.

These sales policies, described above by the defendants, were enforced equally by the managers of the company at Lanesboro and by the "line directors", those directly supervising the Salespeople. Supplemental Affidavit of Joel Feldman, Exhibit 3, Deposition Transcript of Rebecca Foster Campagna, pp. 64-65. Ms. Campagna testified that she was completely unaware of any evidence showing that the policies were applied differently by different managers. *Id.* at p. 65.

The defendants have submitted to this court no facts which dispute the central contentions of the plaintiffs' request for class certification and for an order that the case may continue as a FLSA collective action:

(1)    The defendants never paid minimum wage to Salespeople and Sales Managers whose weekly commissions totaled less than the minimum wage;

(2)    The defendants never paid overtime compensation to Salespeople and Sales Managers who worked more than forty hours in any given week; and

(3)    The defendants withheld payment of validly earned commissions to Salespeople and Sales Managers.[2]

### III.    ARGUMENT

#### A.    THE PLAINTIFFS' CLAIMS UNDER FLSA SHOULD BE ACCORDED COLLECTIVE ACTION STATUS

The parties agree that the proper analysis for determining the collective action status of the plaintiffs' claims is the two-step process enunciated in cases such as *Kane v. Gage Merchandising Services, Inc.*, 138 F. Supp. 2d. 212 (D. Mass. 2001). Regardless of whether this court finds the first or second step analysis applicable in this case, the defendants have failed to make any legitimate showing that the plaintiffs' case is not ripe for collective action status.[3]

---

[2] The defendants do not dispute the facts concerning these three failures with regard to Salespeople or Sales Mangers. While Sales Managers performed some additional functions beyond those of the Salespeople, such as providing pricing materials, comparing the two timeshare programs, providing training, addressing customer complaints and checking on deals, they still in the main performed Salesperson functions: the Sales Managers were required to appear on site at 8:20 a.m. (rather than 8:30 a.m.), to wait on-site for tours, lead tours, and then try and close deals at the sales center. See, Exhibit 2 to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Authorization to Send Notice and for Class Certification. Deposition of Michael Massaconi.

[3] The parties disagree about the step the parties have reached for a determination of collective action. The parties have not completed discovery, in part because the plaintiffs are missing wide swaths of documentation concerning the payment of commissions during a time period which totals over one year. Additionally, discovery has not closed in this case. The plaintiffs cannot contact, and have not contacted,

The defendants do not dispute the factual predicate of the case. The defendants did not pay Salespersons or Timeshare Sales Managers minimum wage when the employees earned below that wage, yet worked forty hours a week. See plaintiffs' Memorandum in Support of Motion for Authorization, pp. 13-16. The defendants paid no overtime compensation to Salespersons or Timeshare Sales Managers when they worked over forty hours per week. *Id.*

Instead they make two other arguments for opposing the authorization of a collective action. First, they contend, the members of the collective action "have different job duties", meaning they are not similarly situated. Defendants' Memorandum at p. 11. Second, the Defendants would lose their ability to assert various defenses that are individual and fact-specific if a collective action is maintained. Defendants' Memorandum at p. 13. Neither argument addresses the facts in this case.

1. <u>The Facts in the Records Show That the Plaintiffs Had Identical Jobs and Performed Exactly the Same Job Duties as All Others Salesperson and Sales Managers</u>

The defendants first argue that a review of even a few of the "opt-in" plaintiffs shows that those plaintiffs have different job duties than the named plaintiffs. But even a cursory review of the defendants' cursory review shows that the claim is meritless. The defendants have cited only one "opt-in" plaintiff who was never a Timeshare Salesman at any point during the relevant time period. Apparently, according to the defendants, a

---

potential "opt-in" plaintiffs because the defendants have said none can be contacted except through counsel, as noted in the plaintiffs' earlier Memorandum. See, plaintiffs' Memorandum in support of class certification motion, p. 13 footnote 9. As a result the plaintiffs request that the court provide the preliminary "conditional certification" referred to in *Kane*. Courts have rejected the argument made here, that a "second stage" review should be conducted, even when discovery has almost closed. *See, e.g., Leuthold v. Destination America, Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004). To the extent the court finds that this case is in a similar posture to that of *Thiessen v. General Elec. Capital Corp.*, 996 F.Supp. 1071 (D. Kan., 1998), the plaintiffs alternatively request that an intermediate analysis of the "similarly situated" doctrine be used. *See, Thiessen v. General Elec. Capital Corp.*, 996 F.Supp. 1071, 1080-1081 (D. Kan., 1998)

7

Michael Castonguay was a Sales Representative in the Exit Department, and was never a Timeshare Salesmen. To the extent he is not in the defined collective action, he would not qualify as an "opt-in" plaintiff.

But each and every other person cited by the defendants as dissimilar is also noted by the defendants as having worked for some time period in another department. Not a single other "opt-in" plaintiff is described as having worked "only" in another department, as is Mr. Castonguay. In other words, all other "opt-in" Timeshare Salespersons *did* work as Timeshare Salespersons, as did Mr. Massaconi. They would obviously be "similarly situated" with all other Timeshare Salespersons while they performed this job duty. Nothing noted in the Affidavit of Faith Lippert provided by the defendants makes any claim that "opt-in" plaintiffs other than Mr. Castonguay worked solely as other than a Timeshare Salesperson. Unless something else disqualifies these "opt-ins", they should be considered similarly situated while they worked in the same jobs as the named plaintiffs.

2. The Plaintiffs are Similarly Situated Under FLSA Even When Determining Whether an Exemption To FLSA is at Issue

The defendants are engaged in misdirection by alleging that collective action status would result in the "complete elimination of any determination as to…whether that individual plaintiff was, in fact, entitled to Outside Sales exemption". The defendants claim that FLSA does not require payment of minimum wages and overtime compensation to Timeshare Salesmen, and that the only way of proving this defense is to painstakingly determine what the Salesmen were actually doing while sitting in the pit, citing to FLSA regulations about performing non-exempt work on site.

Unlike the cases cited by the defendants, the collective action in this case will include only those persons with exactly the same job duties, job descriptions and positions. Each and every Salesperson engaged in exactly the same job and did their job in exactly the same company-directed manner. They came to Lanesboro at 8:30 am. They sat through a twenty or thirty minute sales meeting. They waited in the pit for their next tour assignment, where they were permitted to watch television, read a newspaper or do almost anything except leave the premises and miss their tour. They then gave the same mandated tour that every other salesperson took: they went to Mount Greylock, they came back to the sales center, they toured Vacation Village and the model timeshare, and they returned to the sales center to close the sale. No one was allowed to deviate from this model, as noted above by Mr. Rauer and Ms. Campagna—they were supposed to follow the sales presentation outline.

In this kind of a case, where "the actual job duties of the plaintiffs are quite similar", courts have determined that collective actions may go forward as collective actions, despite a claim that an exemption defense may be asserted. *See, Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 265 (D. Conn. 2002). The *Scott* court looked at the facts in the court record to find that systems engineers for Aetna had similar job codes, engaged in the same sort of work and were subject to a blanket exemption based upon a single job description. *Id.* Even though the engineers spent time on different assignments, the job duties of the plaintiffs and "opt-in plaintiffs" were of the same type. *Id.* In the court's words, "the "exemption" analysis does not require a more narrow inquiry into the job duties of an employee."—all employees were either exempt or non-exempt, with little differentiation between the work performed. *Id.*

Other courts have concurred that the mere assertion of a defense of "exemption" does not defeat the attempt of a plaintiff to obtain collective action status under FLSA. *See, e.g., Goldman v. RadioShack Corporation*, No. Civ. A. 2:03-CV-0032, 2003 WL 21250571 (E.D. Pa., April 16, 2003); *Moss. v. Crawford & Co.*, 201 F.R.D. 398 (W.D. Pa. 2000)(differences in job duties and billing rates did not forestall collective action and de-certification denied); *Kelley v. SBC*, No. 97-CV-2729 CW, 1998 WL 928302 (N.D. Cal. 1998)(employees with different job functions have sufficient similarity to allow class to be certified under FLSA). Under this analysis, the plaintiffs need only show that the parties are "similarly situated", that is that they have claims which are typical and common to the other Salespersons and Sales Managers, and that the legal analysis concerning exemptions will be common as well. This they have shown.

The defendants seek to undo plaintiffs' collective action claim by asserting that "outside sales" exemption defense of 29 U.S.C. § 213(a)(1) requires an analysis of what the Salespersons were doing while waiting in the lounge at the Lanesboro site and how much time they spent on tour. Defendants' Memorandum at p. 15. The defendants reach this claim by first finding that time spent away from the Lanesboro site is not working "on-site", and therefore if anyone spent 80% of his/her time touring, they were not on-site, leading to the conclusion that the Salesperson was an "Outside Salesperson".

At the "class action certification" stage, this court should not be determining the merits of the defendants' defense. When deciding a motion to allow a class action to be maintained "district courts must not consider or resolve the merits of the claims of the purported class". *Caridad v Metro-North Commuter R.R.*, 191 F. 3d. 283, 293 (2d Cir. 1999). Whether the plaintiffs spent touring the actual site of the timeshares at Vacation

Village and its environs should be considered "off-site" is a legal issue as yet undetermined in the case. The plaintiffs contend that the entire time spent viewing the Vacation Village site and model timeshare and the environs is time spent at the employer's place of business. *See, e.g., WH Admin. Op.* (Dec. 21, 1971)(rental agent showing apartment community facilities is not "outside salesperson", as he works on a permanent basis at location of employer). But this court should not decide the legal issue at this stage; instead the court need only determine whether the plaintiffs are similarly situated for the purposes of claims and defenses. Since each plaintiff performed the same job, the issues concerning exemptions will be common to all.

If the court were to make a determination of whether an exemption exists in this case, it should find that the "outside sales" exemption has been applied traditionally to salesmen who work away from home, hold events to solicit sales, get leads and/or meet with customers in their homes or place of business. *See, e.g., Nielsen v. Devry, Inc.*, 302 F. Supp. 2d 747, 761 (W.D. Mich. 2003). This typical set of facts is simply irrelevant to the manner in which a Vacation Village Salesperson operated. The salesperson waited at the employer's place of business for sales "leads" that were provided solely by the employer. The Welcome Center of the defendants provided a listing all of the customers who were to tour on a particular day—no salesperson arranged a single tour on his or her own and only persons on the customer list actually appeared at the Center for a tour. Supplemental Affidavit of Joel Feldman, Exhibit 1, Deposition Transcript of William Rauer, pp. 58-59. The Salesperson followed a carefully tailored script during a tour in which he spent time at the actual resort owned by the employer, returning to the employer's sales center during the middle of the tour. Every single deal was closed at the

employer's sales center. The defendants then engaged the Salesperson to wait again at the lounge until the defendants then assigned a new tour to that Salesperson. That was the Salesperson's day, every day.

The cases finding that the outside sales exemption applies have nothing to do with this model. *See, e.g., Nielsen: Olivo v. GMAC Mortgage Corporation*, 374. F. Supp. 545, 550 (Evidence from defendants show that loan officers were "outside salespeople" where defendants relied upon them to work primarily outside the office to contact prospects, maintain contacts, and create new sales opportunities); *Ackerman v. Coca-Cola Enterprises, Inc.*, 179 F. 3d. 1260, 1266 (10th Cir. 1999) (Key distinction for outside sales exemption was whether salesmen consummated sales at out-of-office locations and whether salesmen solicited orders). Instead they describe a salesperson who is mostly out of the office engaged in soliciting new customers, maintaining contacts and closing deals outside of the office. The facts show the opposite in this case—salesmen were directed at every turn by the defendants, consummated every sale at the employer's place of business, never left the site to maintain contacts and never found a single sales lead. A sentence omitted by the defendants in their extensive citation of the *Clausman* case on p. 19 of Defendants' Memorandum shows the inapplicability of the facts to this case—"a related question is whether each potential plaintiff consummated their sales at the customer location they visited." *Clausman v. Nortel Networks, Inc.*, NO. 02-0400-C-M/s, 2003 WL 21314065 (S.D. Ind. May 1, 2003) *quoting Ackerman v. Coca-Cola Enterprises, Inc.*, 179 F. 3d 1260, 1266-1267 (10th Cir. 1999). Salesmen at Vacation Village closed every deal at the employer's site. Should the court now decide that the merits of the "outside sales" exemption, all the indicia, including those contained in

*Clausman*, show that Vacation Village Timeshare Salespeople were "inside salespeople".

Additionally, to the extent this court reviews the merits of the exemption, the "exemption" is an affirmative defense to be proven by the defendants. An employer has the burden of proof to show that employees fall "plainly and unmistakably within the terms and spirit" of the exemption. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S. Ct. 807, 808, 89 L.Ed. 1095 (1945). Exemptions from FLSA must be narrowly construed. *Arnold v. Ben Kanowsky, Inc.* 361 U.S. 388, 392, 80 S. Ct. 453, 456, 4 L.Ed. wd. 393 (1960). To the extent that the defendants are arguing that any of the plaintiffs or "opt-in" plaintiffs are exempt because they are Outside Salesmen, they must provide some proof of this. According to the defendants, they must show that 80% of the time of the plaintiff was spent off the employer's site. Defendants' Memorandum at p. 16.

This they cannot prove. The defendants kept no time records whatsoever for the plaintiffs or the "opt-in" plaintiffs, as noted in plaintiffs' Memorandum at p. 9. There is simply no way for the defendants to show how much a plaintiff worked on a given day, a given week or a given year, nor can the defendants show how much time was spent by the plaintiffs away from Lanesboro on any given day, or how many tours were taken. The defendants provide no such evidence in their Memorandum except to assert vague generalities mentioned by some of the plaintiffs. See, Defendants' Memorandum at p. 16.

One further point should be noted concerning the time spent on site by the plaintiffs. The defendants obligated the plaintiffs to wait on site until they assigned a Salesman a tour, supplying them board games and a television while they waited. There

can be no dispute that the Salespeople were "engaged to wait" in the parlance of FLSA, as they had to be on-site ready for their tour. The notion, then, that an individual exemption determination can be made by discovering whether one plaintiff drank coffee, or watched a thirty minute television show while waiting, or looked at a training manual, is simply wrong. Without the requirement to pursue leads, follow up on leads, engage in activities to close deals and perform work outside the employers' place of business, all of the "work" performed in the pit was that of an "inside salesman" waiting for a tour. Each and every plaintiff "performed" the same required task—he/she waited for the defendants to assign him/her the next tour. They waited, all together, every day, and that is the activity they did in common. The notion that Plaintiff Wise was doing exempt work when she was "keep[ing] to the vibes of enthusiasm" in the pit, as noted by the Defendants in their Memorandum, does not require additional comment.

Suffice to say that unlike in the cases cited by the defendants, there is no need to engage in any individual assessment in this case. The facts produced by the parties show that a Timeshare Salesperson's job was a Timeshare Salesperson's job. The facts cited in the defendants' cases show a clear variation in job titles, job duties and job descriptions. The case of *Morisky v. Public Service Electric and Gas Company*, 111 F. Supp. 2d 493 (D.N.J. 2000), cited by Defendant at p. 19, addressed a disparate group of employees with administrative, supervisor and technical employees and with various salary grades, as did *Ale v. TVA*, 269 F. 3d 680 (6th Cir. 2001)(Employees were lieutenants, shift supervisors, and a host of separate groups of employees). The defendants note in their cited cases that the putative class members must share more than the mere fact of failing to be paid overtime compensation or minimum wage. The plaintiffs here share the same

exact job, that of inside salesperson, directed closely and with intense scrutiny at the employer's place of business. The plaintiffs therefore request that this court authorize them to proceed with a collective action under their FLSA claims by sending appropriate notice now to potential class members.

B. THE PLAINTIFFS' STATE LAW OVERTIME AND MINIMUM WAGE CLAIMS SHOULD BE CERTIFIED AS A CLASS

The defendants raise a number of claims for requesting that a class not be certified, including that the state class should be limited solely to those class members who have "opted in" to the FLSA class, and that the plaintiffs have failed to meet the requirements of Rule 23.

1. The Plaintiffs' Overtime and Minimum Wage Claims Under State Law are Not Limited to Opt-In Plaintiffs Only

The defendants state with certitude that supplemental jurisdiction in federal court extends only to those members of the state law class who are part of the federal class. Defendants' Memorandum at p. 21. This means, say the defendants without qualification, a federal court may exercise supplemental jurisdiction over state law wage claims solely concerning the "opt-in" plaintiffs from the FLSA action. Id.

This position overtly flouts the "other side" of the argument by ignoring the well documented opposing line of cases. Federal district courts in many, many cases have determined that a state opt-out class may be certified which is not limited to "opt-in" FLSA plaintiffs. See. *Ansoumana v. Gristede's Operating Corporation*, 201 F.R.D. 81, 89-96 (providing extensive history and analysis of supplemental jurisdiction in federal/state wage and hour cases); *Goldman v. RadioShack Corporation*, No. Civ. A. 2:03-CV-0032, 2003 WL 21250571, * 4-5 (E.D. Pa., April 16, 2003)(Federal court has