clear power to exercise jurisdiction of state class that is larger than "opt-in" group of employees); *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 265 (D. Conn. 2002)(same); *O'Brien v. Encotech Construction Services*, 203 F.R.D. 346, 350-353 (N.D. Ill. 2001)(same); *Bryzchnzlski v. Unesco, Inc.*, 35 F. Supp. 2d 351, 354 (S.D.N.Y. 1999)(same); *Laudegarde. Hard Rock Concrete Cutters, Inc.*, No. 00-C-5755, 2000 WL 1774091 (N.D. Ill.. Dec. 1. 2000)(same).

In the same manner in which the defendants studiously avoided mentioning that an opposing line of cases on supplemental jurisdiction in FLSA/state wage claims existed, the defendants also fail to cite the case of *McLaughlin v. Liberty Mutual Insurance Company*. decided very recently in the District of Massachusetts. *McLaughlin v. Liberty Mutual*, 224 F.R.D. 304 (D. Mass. 2004). Judge Keeton addresses precisely the issue contained in this case. whether a state law class claim on wage issues could be maintained in federal court in conjunction with a FLSA claim. Judge Keeton found that, first. the plaintiffs' state law rights and FLSA remedies were separate rights which could be pursued by plaintiffs. *Id. at 308*. A failure to opt-in to the federal claim could not infer a forfeiture of the plaintiffs' rights to pursue their separate *state* law claims. And requiring the state class to file a separate case in state court would "be a waste of judicial resources and would increase litigation costs for the parties, prohibitively so for the remaining class members." *Id*. The court therefore included all of the putative state class members. not simply FLSA "opt-in" plaintiffs, when it considered whether to certify the class.

That reasoning should govern the result here when this court considers the scope of the state law class action on overtime compensation and failure to pay minimum wage.

Exercising jurisdiction over the state law claims promotes judicial economy and avoids duplicative litigation. *Scholtisek v. The Eldre Corporation*, 229 F.R.D. 381, (W.D.N.Y. 2005). As in *Scholtisek*, the state law claims here arise out of exactly the same set of operative facts forming the basis of the FLSA claims—the failure to pay minimum wage and overtime to Salespeople and Sales Managers. The federal claims will be heard in federal court, regardless of what occurs to the state class action. Accordingly, the court should not limit the numbers of state class members, as noted in the many cases above, and allow the full number of state class members under the overtime compensation and minimum wage claims to be included.

2.      The Plaintiffs Have Established Rule 23(a) Prerequisites

The plaintiffs have shown numerosity in their Memorandum, as the class may be up to approximately 200 persons thus far, based upon discovery records.[4] The "opt-in" number is already almost 60 persons, well over the 40 number cited by Judge Keeton in *McGlaughlin*.

The defendants note that some courts have found that where the plaintiffs are clustered in a small geographic area, courts may determine that joinder is feasible. The problem for the defendants is that they note "putative members" live near Patriot's place of business, but fail to submit even one piece of evidence noting where the potential class

---

[4] The defendants argue that all absent class members may not be considered as members of the class unless they have exhausted their administrative remedies, i.e., filed individual claims with the Massachusetts Attorney General. Defendants' Memorandum at p. 24. This argument has absolutely no bearing on the plaintiffs' state minimum wage and overtime compensation claims, as they are brought pursuant to M.G.L. c. 151 § 1B and § 20. These statutes have no requirement of bringing claims to the Attorney General before court filing. See, M.G.L. c. 149, § 150 (delineating all claims which require such filing). Section 150 of Chapter 149 also explicitly notes that an "employee" may file with first with the Attorney General on a "late payment" claim under section 148, and then, without further filings by class members, may bring a claim "for others similarly situated" in court. Nothing in the statute mandates filing with the Attorney General by all other class members. If this were a requirement, there would be no point to bringing class claims under this statute with the attendant efficiencies of class actions, as each class member would have to file an "individual" claim with the Attorney General.

members reside, which is the legal test used by the First Circuit Court of Appeals. *McGlaughlin*, at p. 308. As counter examples, Ms. Wise lives in Springfield, while Mr. Massaconi lives in New York. Supplemental Affidavit of Joel Feldman, Exhibit 4, Deposition Transcript of Michael Massaconi, p. 6; Supplemental Affidavit of Joel Feldman, Exhibit 5, Deposition Transcript of LaCrisha Wise, p. 14. The defendants have provided no evidence to show class members *live* (rather than work) in a narrow section of Berkshire County. Class members who no longer work at Vacation Village are just as likely to be outside of the Lanesboro area as they are to live near it. And even then, having 180 persons join a lawsuit would prove untenable, as the defendants do not dispute that the number of class members may rise to 180.

The arguments against commonality and typicality made by the defendants are cursory and do not apply to the actual facts in this case. The Salespeople have the same job as all other Timeshare Salespeople, and Mr. Massaconi, while he was a Sales Manager, had the same job as all other Sales Managers. All were not paid overtime compensation and minimum wage under state law. All were required to perform the same functions, took tours, waited for more tours, and were mandated to be on site, whether playing cards, reading books or watching television. Any exemption which applies to one, applies to all.

Finally, the claim that the parties do not adequately protect the interests of the class appear to focus on Ms. Wise, without citation to any case. The standards for determining adequacy are that there be an assurance of vigorous prosecution and that there be an absence of potential conflicts between the named plaintiffs and class members. *McLaughlin* at p. 310. The defendants make no claim that counsel for the

plaintiffs have not vigorously litigated this case. And they have cited no conflicts, other than mentioning that Ms. Wise complained about wages to Mr. Massaconi, who was her sales manager for a time. But Mr. Massaconi filed claims with the Attorney General complaining of lost wages prior to the filing of this court case, and has been aggressively pursuing these claims. Rather than showing a conflict between plaintiffs, the facts show that the parties have the same interest in obtaining compensation for the failure to pay appropriate wages.

Under Rule 23(a), the plaintiffs have shown that a class action may be maintained under state minimum wage and overtime compensation law.

3.    The Class Meets the Requirements of Rule 23 (b)(3)

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The defendants make two arguments that the (b)(3) standards are not met, first because the class action would devolve into "mini-trials" on individual issues, and second because the state class action is not superior to the "opt-in" federal method of collective actions under FLSA. Defendants' Memorandum at p. 27.

The first argument is simply misguided. The individual plaintiffs do have individual claims, but those claims are entirely separate from their class claims. The doctrine under (b)(3) looks to the nature of the class claims rather than any separate individual claims brought by the parties. There will indeed be separate issues raised from the class claims by the plaintiffs, but this is a management issue for the court to address at

trial, rather than a disqualifying issue for the class. Certainly, the class could continue and the individual claims of the plaintiffs could be tried after the class claim is tried and the claims could be "decoupled" to the extent the court found this necessary to help a jury rule on this case. But that creates no "individual" issues within the class claim in any manner.

The second argument essentially is that the "opt-in" process should govern the state law class claims, as it should set the parameters for who is a class member, since all interested class members can opt for the state class. But that simply is not the standard for determining whether Rule 23 (b)(3) has been satisfied, and there certainly is no "opt-in" requirement for the state claims. Instead, the standard is whether the claims are common and whether maintaining a state law class action is a superior method than the individual joinder of almost 200 plaintiffs. As noted above, the claims of all plaintiffs are virtually identical, especially so in a case where job duties, job descriptions and the activities of the job are so similar and have been so closely monitored and directed by the defendants.

Requiring all state law claimants to "opt-in" to this case as a superior method of litigation essentially conflates the state and federal claims. While similar, the state law claim is a separate claim, as noted in the *McLaughlin* case, above, without the "collective action" requirements of FLSA. In its Rule 23 (a) analysis, this court will have already determined that joinder is not practicable, given the numbers of potential class members. To make all class members parties to this case as a superior method under (b)(3) would create a remarkably unwieldy structure. To require the class members to file a separate class action in state court on the same facts and same issues, or multiple individual

20

actions in potentially multiple state courts, would be a waste of resources and create the potential for lack of uniformity of result.

That is precisely why courts have often and routinely found a state class claim on wage and hours to be superior to the alternatives. Courts certifying such claims have noted that "individual plaintiffs could bring an action in state court on the state claims" but these courts wish to "avoid this result", not pursue it. *Laadegard v. Hard Rock Concrete Cutters, Inc.*, 00 C 5755, 2000 WL 1774091, *7 (N.D. Ill. Dec. 1, 2000). The *Laadegard* court noted that "it is desirable to concentrate the litigation [of FLSA claims and state claims] in one forum" to avoid the filing of state claims in a state court. *Id.*

Similarly, in the Massachusetts case mentioned above, when addressing the superiority prong of Rule 23(b)(3), Judge Keeton found that

> I will not infer a forfeiture of state remedies from the failure to join in the pursuit of federal relief...Many of the same issues arise here as have arisen in the FLSA litigation...Resolution of the common issues in a single judicial forum will promote judicial economy and uniformity of outcome. Finally, the class members' failure to opt-in does not imply that the class members consider individual actions superior to a class action. Instead, it suggests that many of the class members lack the individual incentive to bring suit, making a class action superior.

*McGlaughlin v. Liberty Mutual Insurance Company*, 224 F.R.D. 304, 312 (D. Mass. 2004). The minimum wage and overtime claims "arise out of the same nucleus of operative facts as the FLSA claim" so that exercising jurisdiction avoids duplicative litigation. *Scholtisek v. The Eldre Corporation*, 229 F.R.D. 381, 393-394 (W.D.N.Y. 2005)(reiterating that the small individual claims of employees provides little incentive to pursue individual claims, making a class action superior). See, also *Ansoumana v. Gristedes Operating Corporation*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001)(state class wage

action superior to other methods because common questions should be litigated in one forum for fairness and efficiency, and management of class action is no greater challenge than collective action); *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) (state class on state overtime compensation was superior because of potential for reprisal if individual claims pursued, cost of individual litigation was prohibitive and common questions of law should be decided together).

In essence, the defendants argue here that state class members who do not opt-in can go to state court or litigate state claims if they desire, which they will indicate by a failure to opt-in. The opposite is true. As Judge Keeton noted, potential class members will likely not pursue individual claims, they will not be likely to find counsel to prosecute the claims, and they will be subject to a separate and differing result on the same claim found in this litigation, which is now fairly far along. Any class member who truly does not wish to participate may opt-out under Rule 23(b)(3). The superiority of the class action in this forum, with the rest of the case, has been proved, and this court should certify the class.

4.    The Court Should Exercise Supplemental Jurisdiction in This Case

The defendants argue next, that even if the class should be certified, this court should use its discretion to deny supplemental jurisdiction over the state claims because first, the state law claims predominate over the federal claims, second, there are two novel issues of state law to be decided, and third, potential plaintiffs will be too confused by any notice to be fashioned by the parties alerting them to the existence of this case and explaining their rights.

a.  The evidence needed to prove the plaintiffs' state law claims concerning wages and overtime is exactly similar to the federal claims and does not "predominate" over those claims

The defendants baldly assert that "the state and federal claims do not raise similar issues or require similar proof". Defendants' Memorandum at p. 29. This is a remarkable statement given that the proof required for the federal minimum wage and overtime claims and the state minimum wage and overtime claims are identical. The same group of Salespersons and Sales Managers will be testifying that they never received minimum wage when their commission pay was below this standard. They never received overtime compensation when they worked over forty hours.

The defendants have admitted to never paying minimum wage during weeks when commissions were less than minimum wage, and never paying overtime compensation. The evidence to prove the state and federal claims will substantially overlap. The state claim does not predominate, therefore, as noted extensively in the Rule 23 section of this Memorandum at pp. 17-21. These set of four claims will then likely "either succeed or fail together," as they are substantially similar, and this court should not decline jurisdiction on this basis. *Ansoumana v. Gristede's Operating Corporation*, 201 F.R.D. 81, 95 (S.D.N.Y. 2001).

b.  The plaintiffs' state law claims concerning untimely payment of wages is related to the payment policies of the defendants and would not predominate over the federal law claims

The Salespersons and Sales Managers of the defendants during the relevant time period failed to receive their commissions in a timely manner during the course of their

23

employment with the defendants. The manner in which these employees were paid late is described in detail in Plaintiffs' Memorandum pp. 3-5 and 17-19.

The defendants' argue that the proof of the failure to pay wages in a timely manner would require "substantial" testimony over and above the FLSA proof in this case. The defendants' argument concerning the proof problem overreaches. According to the defendants, "the Court would have to determine as to each and every sale" whether the plaintiff had received timely wages.

This argument fails on a number of grounds. First, as acknowledged by the defendants, the plaintiffs are not arguing that "each and every sale" resulted in late payment. The plaintiffs have alleged that only that *certain* commissions were not paid in a timely manner, vastly reducing the proof required.

Second, the plaintiffs have organized their claim to late payment of wages such that the issues raised are discrete and are part and parcel of the overall payment policies of the defendants. The plaintiffs do not claim that the commissions regularly paid twenty-one days after the date "earned" were late. Rather, they argue that certain commissions which were paid *after that time period had run*, some times months later, were late. As described in Plaintiffs' Memorandum, commissions which were not paid because of (1) the customer's failure to make timely payments after a deal was closed by a Salesperson, or (2) which were "charged back" after being paid to the Salesperson because of untimely payments by a customer, were late payments under state law. The facts to prove these claims will be no more difficult to determine than the facts which will show the failure to pay minimum wage. The documents provided by the defendants show which commissions were held by the defendants for months because of a

24

subsequent failure to pay by a customer, just as the documents show which Salespeople were not paid minimum wage when they worked forty hours. There is nothing particularly novel about this proof, and the issues will arise solely at the damages portion of a trial, since the liability issue will rise or fall in common—this court will determine whether the defendant's "timely customer payment" policy provides a lawful reason for withholding commissions on already closed sales.

There will be no need to provide individualized "contract interpretation" for this claim, as all Salespeople had the same contract. Each Salesperson has the same legal claim, concerning when commission payments were due and payable. The only difference will be computational--whether any Salesperson happened to receive zero late payments, or instead, multiple late payments, based upon the application of a uniform policy. As such there will be no need for a massive, individualized review of the proof, and the case will proceed without requiring the resources the defendants' claim will be required of this court. This claim will not predominate over the rest of the wage claims of the plaintiffs.

        c.        The plaintiffs' state law claims concerning untimely payment of wages are not so novel or complex as to justify rejecting them

The defendants then argue that interpreting when commissions are "due and payable" and whether state exemptions on "outside salepersons" reflect federal exemptions is too novel and complex for this court to maintain jurisdiction.

Determining the parameters of the state exemption of "outside salesperson" will hardly be too "complex" for this court, when it will be doing exactly the same analysis under federal law. At most this may lead to a "modest difference between two statutory schemes" which "are otherwise quite similar if not identical", as noted in a New York

25

case where state and federal wage overtime claims were brought. *Scholtisek v. The Eldre Corporation*, 229 F.R.D. 381, 392 (W.D.N.Y. 2005).[5]   Where the exemption issue will be dealt with in such a similar mode of analysis, the issue is not sufficiently "novel and complex" to cause this court to withhold supplemental jurisdiction.

Similarly, the determination of when a commission is due and payable relates to the central policies at issue, the manner, method and amount of the payment of commissions by the defendant. The determination of this issue is a straightforward matter of statutory interpretation under the state set of wage and hour laws. The claim is clearly related to the defendants' payment policies. And this court regularly interprets state law in claims related to the nucleus of facts in a case. See, e.g., *Cloutier v. Costco Wholesale*, 311 F. Supp. 2d 190, 191 (D. Mass. 2004) *aff'd on separate grounds, Cloutier v. Costco Wholesale Corp.*, 390 F. 3d 126 (1st Cir. 2004)(court addresses state law on "reasonable accommodation" in federal religious discrimination employment case, although issue is a novel one under state law). The claim of late payment will focus on whether Salespeople were paid when commissions were "due and payable", and the outcome will depend on the meaning of that phrase. The interpretation of another statute differs little from the interpretation function which the court will perform when determining whether the state law on overtime and minimum wage was violated.

---

[5] The defendants also misstate the law promulgated by Massachusetts courts concerning the force of FLSA regulations for the interpreting analogous law. The defendants state emphatically that Massachusetts court do not consider FLSA regulations to be "the law" in Massachusetts when determining the extent of exemptions, citing the trial court decision in *Goodrow v. Layne Bryant, Inc.*, 1999 WL 1473560, *5 (Mass. Super.) But the actual doctrine, as noted in the *Goodrow* case on appeal is that "in such instances we may look to interpretations of analogous Federal statutes for guidance, *see Tate v. Department of Mental Health*, 419 Mass. 356, 361 (1995)". *Goodrow v. Layne Bryant, Inc.*, 432 Mass. 165, 170 (2000). This court may certainly look to interpretations of federal FLSA regulations for guidance when determining exemptions, although plaintiffs would argue that FLSA rules should be a "floor" when determining state exemptions. This makes the exemption issue much less "novel" than defendants claim.

As in the *Ansoumana* case, where the defendant argued that New York state labor law included liquidated damages not included in FLSA claims, this court should determine that the state late payment claim "is neither so "novel or complex" as to suggest that [it] should decline to exercise supplemental jurisdiction". *Ansoumana v. Gristede's Operating Corporation*, 201 F.R.D. 81, 95 (S.D.N.Y. 2001). *See also, McLaughlin v. Liberty Mutual Insurance Company*, 224 F.R.D. 304, 311-312 (D. Mass. 2004)(Court asserts supplemental jurisdiction over state wage claims where FLSA action has also been plead. finding no reason to decline such jurisdiction).

        d.        <u>The notice required for the "opt-in" collective action and "opt-out" class will not be confusing</u>

The defendants express their concern for the members of the class who may be confused by an "opt-in" and "opt-out" notice concerning the state and federal claims. The issue is not a novel one, and courts have been able to direct counsel for the parties to craft a notice which is not confusing.  The *Scholtisek* court found that "the risk of such confusion can be adequately minimized through a carefully crafted notice", finding further that the mere presence "of both FLSA and state claims has not prevented courts from certifying the state claims under Rule 23 (b)." *Scholtisek*, 229 F.R.D. at 394.  Other courts concur. *See, e.g.. Laudegard v. Hard Rock Concrete Cutters, Inc.*, No. 00-C-5755, 2000 WL 1774091 * 7 (N.D. Ill., Dec. 1, 2000)(court express confidence that counsel can draft joint notice as others have been done in the Illinois district).  And the cases noted at length, above, have not found the notice issue to be of such consequence that it has prevented the certification of a state class in a FLSA collective action lawsuit. *See, e.g., McLaughlin.* 224 F.R.D. 304 (D. Mass. 2004).

27

Ultimately. refusing to hear the state and federal claims at issue here will lead to "unnecessary costs. inefficiency and inconsistency of proceedings and results" and a variety of other problems. including "overlapping and uncoordinated discovery, differing rulings" on discovery. privilege and other important issues, and the difficulties of managing joint trials. *See. Ansoumana v. Gristede's Operating Corporation*, 201 F.R.D. 81. 96 (S.D.N.Y. 2001). There is no reason to create this sort of difficulty, and this court should permit the case to go forward as a FLSA action, and the state class actions as described.[6]

C.   THE CLASS ACTION PROPOSED ORDER AND COLLECTIVE ACTION NOTICE MAY BE MODIFIED TO REFLECT A FINAL AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANTS

Should this court certify this case as a collective action and class action, the plaintiffs will certainly modify their notice and order as directed by this court. However, the plaintiffs believe the appropriate statute of limitations will be three years on the federal claim. The plaintiffs have evidence showing a willful FLSA violation, by virtue of the complaints of the plaintiffs and others that the defendants were failing to pay proper compensation to them. For example, plaintiff Peter Corbin wrote the defendants a letter. "probably in 2002". noting that the "company was not adhering to Massachusetts law. labor law specifically. i.e.. minimum wage, i.e., overtime...". Supplemental Affidavit of Joel Feldman. Exhibit 6, Deposition Transcript of Peter Corbin, pp. 81-82. Plaintiff Roger Martin complained "several times" about not getting paid any wages while sitting in the pit. Supplemental Affidavit of Joel Feldman, Exhibit 7, Deposition

---

[6] The defendants note that the state claims concerning late payments must be viewed as a Rule 23 class action. However. as noted in the Plaintiffs' Memorandum, the wording used in that statute, "similarly situated". is the same as used in FLSA. The plaintiffs believe that a "collective action" under that statute is the proper way to move forward. again, as noted in their prior Memorandum.

Transcript of Roger Martin, pp. 179-180.   Despite these complaints, and the filing of this complaint in court on May 11, 2004, the defendants refused to change their compensation practices concerning minimum wage for another year, until June, 2005.  See, Plaintiff's Memorandum at p. 3, citing testimony of Rod Lewis.

The defendants have so far defended against the "willful" claim of the plaintiffs, which would extend the FLSA statute of limitations from two to three years, by noting that the defendants "relied on the opinion of Massachusetts counsel and other attorneys." However, the defendants asserted attorney-client privilege at their depositions when asked about the opinions of counsel.  See Deposition of Rebecca Foster, cited at Defendants' Memorandum at p. 33, footnote 19.  This defense must fail given that the defendants would not allow the plaintiffs during discovery to question them about the details of this representation.  By refusing to provide discovery on this issue, the plaintiffs have effectively waived the use of this evidence.  At the appropriate time, the plaintiffs will move in limine to exclude any evidence which would support such a defense; the defendants cannot use the privilege as a shield to avoid discovery, and then use "advice of counsel" as a sword to defeat a "willfulness" claim under FLSA.

The plaintiffs are willing to modify the class to include Timeshare Salespersons and Sales Managers only, to use a three year statute of limitations for FLSA claims and the appropriate statute of limitations on the state claims .  Subject to the orders of this court, the plaintiffs will craft notices and orders, and reach agreement with the defendants on the documents to be sent to potential class and collection action members.

IV.    CONCLUSION

For the reasons noted above, the plaintiffs request that this court provide the

orders requested in the plaintiffs' Motion for Authorization to Send Notice and For

Class Certification.

THE PLAINTIFFS
By their attorneys,

I hereby certify that a
true copy of the above
was served upon the
defendants' counsel by hand
delivery on

Joel Feldman
BBO # 552963
Suzanne Garrow
BBO# 636548
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA  01103
(413)788-7988
(413)788-7996 (fax)

November 18, 2005

Dated: November 18, 2005