UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBI,<br><br>                Plaintiffs,<br><br>vs.<br><br>PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III, REBECCA A. FOSTER, and JAMES E. LAMBERT,<br><br>                Defendants. | CIVIL ACTION NO. 04-30091-MAP |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON COUNT V (MARTIN'S INDIVIDUAL CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF G. L. Ch. 149, § 148A)**

Roger Martin was a Timeshare Sales Representative who had temper-control issues throughout his life which permeated his employment with Defendant, Patriot Resorts Corporation ("Patriot"). Martin *admittedly* complained about everything his employer did, swore at and otherwise spoke offensively to co-workers, called potential customers "liars," frightened Patriot's Office Manager and engaged in tantrum-like behavior, such as throwing down and stomping on a notepad. Despite an incident of swearing at Rod Lewis, Patriot's Project Director and Patriot's most senior member of management on site, which led to his termination in May 2003, Bill Rauer, Senior Project Director, rehired Martin at Martin's request several months later on the condition that he would refrain from emotional outbursts at work. Nonetheless to Patriot's dismay Martin's disruptive and improper behavior continued. In September 2004, Martin

refused to take customers on tour and was sent home. Martin was requested to meet with Rauer, the Senior Project Director, who had rehired him. However, after Martin arrived at work, he decided not to meet with Rauer, and, instead, he elected to walk off the job. This is the sole reason Martin is no longer employed with Patriot.

Martin asserts that his offensive and disruptive behavior was not the cause of his separation from employment with Patriot. As set forth in Count V of the Second Amended Complaint ("Complaint"), he claims that the Defendants, Patriot, The Berkley Group, Inc. ("Berkley"), Marc J. Landau ("Landau"), J.P. Ottino, III ("Ottino"), Rebecca A. Foster ("Foster"), and James E. Lambert ("Lambert"), terminated him in violation of Mass. Gen. Laws ch. 149, §148A, for asserting his rights under Massachusetts Wage Act, specifically, Mass. Gen. Laws ch. 149, §§ 148, 149, 150, and 151. No admissible evidence exists in the record to demonstrate: (1) that Martin satisfied statutory prerequisites to filing his individual claim in court; or (2) that he was subjected to an adverse employment action as the result of his involvement in protected activity within the meaning of the Wage Act. Therefore, summary judgment for Defendants on Count V is appropriate. Additionally, summary judgment for Defendants Landau, Ottino, Foster and Lambert is appropriate as they had no involvement whatsoever in any of the actions of which Martin complains. Finally, Berkley is entitled to summary judgment on Count V because it is not liable for any allegedly wrongful actions of its subsidiary, Patriot.

### A.   *Summary Judgment Standard*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,*

950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, the court must construe the record and all reasonable inferences from it in the light most favorable to the party opposing the motion. *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir. 2004). A party who wishes to avoid summary judgment on a claim on which he or it bears the burden of proof at trial must produce enough evidence to get to a jury. *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir. 2001). "This obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.* Martin's individual claim, which is asserted in Count V, is ripe for summary judgment.

B.   ***Martin Failed to Satisfy Statutory Prerequisites to Filing a Civil Action***

Defendants are entitled to summary judgment on Martin's retaliation claim because he did not first present that claim to the Office of the Attorney General ("OAG"). Massachusetts law protects employees who pursue their rights under the wages and hours provisions of Chapter 149 from retaliation. Specifically, § 148A provides as follows:

> No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter. Any employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint to the attorney general or any other person, or assists the attorney general in any investigation

3

> under this chapter, or has instituted, or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceedings, shall have violated this section....

Mass. Gen. Laws ch. 149, § 148A.  Mass. Gen. Laws ch. 149, § 150 provides an aggrieved employee with a private right of action to enforce the anti-retaliation provision. The statutory prerequisites to bringing suit include the filing of a complaint with the OAG that includes a claim for retaliation against the employer.  *Sterling Research, Inc. v. Pietrobono*, 2005 WL 3116758, *14-15 (D. Mass. 2005).  In *Sterling Research*, the District Court granted summary judgment for the defendant-employer on certain wage claims where the plaintiff-employee, who had filed a complaint with the OAG, failed to include those claims in his complaint to the OAG.  *Id.* at *11-12.  In reaching its conclusion to do so, the court pointed out that Section 150 of the Wage Act "implicitly requires that the complaint 'adequately describe the substance of the abuse'" . . . .  If it did not, the purpose of the statutory requirement--to provide notice of the Attorney General that an offense had occurred and to allow him to decide whether to enforce the statute—would be undermined."  *Id.* at *11 (citations omitted).  Further, while the court noted that "some level of generality may be tolerated in addressing a complaint under § 150 . . . the statute requires reasonable notice."  *Id.* at 12.  While the *Sterling Research* plaintiff's Non-Payment of Wage Complaint Form claimed the defendant owed him for medical reimbursement in an amount over $3,300, bonuses and stock; it did not , however, "mention, or even suggest" that he had received late payment of salary commissions, medical insurance reimbursement premiums or had not been paid for certain days.  Accordingly, the court granted summary judgment for the employer on

these latter claims on the ground that the employee failed to satisfy the statutory prerequisite of providing the OAG with any information as to those claims. *Id.*

Martin has come forward with no evidence demonstrating he complained about retaliation in violation of the Wage Act to the OAG. Martin did not even allege in his Second Amended Complaint that he brought his individual retaliation complaint to the OAG. Because Martin failed to include any allegation whatsoever in his complaint to the OAG that one or more of the Defendants discharged or discriminated against him in any manner because he sought his rights under the Wage Act, summary judgment for Defendants on Count V is appropriate. *Id.*; *Daly v. Norton Co.*, 1999 WL 1204011, *2 (Mass. Super. Nov. 15, 1999) (dismissing claim for unpaid wages for failure to satisfy statutory prerequisites); *Axton-Cross Co. v. Blanchette,* 2 Mass. L. Rptr. 646 (1994) (dismissing wage claim because plaintiff did not allege facts indicating he had followed statutory requirements); *Melley v. Gillette Corp.*, 397 Mass. 1004 (1986) (affirming dismissal of Chapter 151B because plaintiff failed to follow the statutory procedures); *Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 286-87 (1985) (dismissing Chapter 93A claim for plaintiff's failure to allege and prove the sending of a demand letter, or in the alternative, for an inadequate demand letter); *Daniels v. Contributory Retirement Appeal Bd.*, 418 Mass. 721, 721-22 (1994) (affirming dismissal of administrative appeal because plaintiff failed to exhaust administrative remedies).

C.   ***Defendant(s)[1] Did Not Retaliate Against Martin***

To prove a Wage Act retaliation case, a plaintiff must establish that he (1) sought his rights under the wages and/or hours provisions of Chapter 149; (2) the employer

---

[1] As discussed in subsequent sections, *infra*, not all Defendants are proper parties to this lawsuit.

discharged or in any other manner discriminated against the employee; and (3) the discharge or discrimination was because such employee made a complaint to the attorney general or the employer. *See, e.g., Smith v. Winter Place, LLC*, 447 Mass. 363, 366, 851 N.E.2d 417, 420-21 (2006). The third element requires a causal connection between the protected conduct and the adverse action. *Blackie v. Maine*, 75 F.3d 716, 722 (1st Cir. 1996); *see also, Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165 (2000) (noting that the Fair Labor Standards Act may provide guidance as to interpretation of Massachusetts Wage Act's provisions). If the plaintiff is able to set forth a discriminatory or retaliatory reason, the burden shifts to the defendants to show a legitimate reason for the adverse action. *See, e.g., Cheng v. IDE Associates, Inc.*, 2000 WL 1029219, *4 (D. Mass. 2000) (applying the *McDonnell-Douglas* burden-shifting paradigm to FLSA retaliation claim). When defendants meet their burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the Defendants' articulated reason is not the real reason but a pretext for illegal retaliation. *See, e.g., McDonough v. City of Quincy*, 452 F.3d 8, 17 (1st Cir. 2006) (discussing third step of analysis in Title VII case). Evidence that the defendant's reason was pretext may, but need not, result in a finding of liability. *Id*. The undisputed evidence is clear: Patriot did not discharge or in any other manner discriminate or retaliate against Martin because he engaged in statutorily protected activity.

### D.     *Martin was Terminated in May 2003 Because of His Insubordination to Lewis*

Martin alleges that he was terminated in May 2003 and again in September 2004 in retaliation for protesting Defendants' alleged violations of the Wage Act. (*See* Amended Compl. ¶¶ 62-66). Prior to his 2003 termination, Martin had not engaged any

6

action to seek his rights under the laws governing wages that would afford him the protections of § 148A.  While § 148A extends its protection to employees who reasonably believe that the wages he has been paid violate Massachusetts laws, *Smith v. Winter Place, LLC*, 447 Mass. 363, 851 N.E.2d 417 (2006), courts require an employee to take action beyond mere "abstract grumbling." *Jackson v. McKesson Health Solutions, Inc.*, 2004 WL 2453000 (D. Mass. Oct. 29, 2004) (citations and quotations omitted); *see also, Claudia-Gotay v. Becton Dickinson Caribe, Ltd.,* 375 F.3d 99, 103 (1st Cir. 2004).  Indeed, any and all complaints do not rise to the level of activity protected by the Wage Act.  An employee must actually seek his or her rights under the Wage Act to be afforded its anti-retaliation provisions.  M.G.L. ch. 149, § 148A.  Implicitly the employee must have a reasonable, good faith belief that the employer violated the Wage Act at the time the purported complaint to the employer is made.  *See, e.g., Cordero v. Turabo Medical Ctr. Partnership*, 175 F. Supp. 2d 124, 128 (D.P.R. 2001) (citation omitted) (discussing FLSA anti-retaliation provision).  Mere abstract grumbling, not engaging in protected activity, is what Martin did—about every topic.

Martin admits that he complained and protested just about everything his employer did.  (Facts 14)  Even the most generous reading between the lines could not result in a reasonable jury concluding that Martin's constant and often hostile and agitated arguing with anyone and everyone had anything whatsoever to do with a good faith assertion of his rights under the Wage Act.  His threats and hostile attitude to co-owners and ultimately to Rod Lewis, the Project Director—which resulted in his May

7

2003 termination---were just miniscule samples of the endless grumblings Martin was prone to.  Martin did not engage in any activity protected by § 148A.

Further, the undisputed evidence demonstrates that Martin was terminated in 2003 for being insubordinate to Lewis, who was the Project Director and the highest level of management at Patriot.  (Facts 12)  Although Martin has offered several versions of what allegedly occurred resulting in his May 2003 separation from Patriot's employment, one consistent fact has been that Martin has admitted to swearing at Lewis.  (Facts 31)  Lewis' undisputed testimony demonstrates that this offensive language directed at him resulted in Martin's separation from employment.  (Facts 31)  Further, Martin knew he could be disciplined for inappropriate behavior.  (Facts 32)  Terminating an employee for insubordination is a legitimate, non-discriminatory reason for separation of an employee.  *See, e.g., Williams v. Raytheon Co.*, 45 F. Supp. 2d 124 (D. Mass. 1999)*, aff'd*, 220 F.3d 16 (2000).

Martin has the burden of demonstrating that Patriot's reason for terminating his employment, *i.e.*, insubordination toward Lewis, was a pretext for discrimination for having engaged in statutorily protected activity.  "[A] reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S. Ct. 2742 (1993).  A reason is not shown false by merely questioning the employer's credibility.  *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260-261 n.3 (1st Cir. 1994).  Like the plaintiff in *Williams*, 45 F. Supp. 2d at 131, Martin suggests that Lewis wanted him gone from the company because of his alleged protest of wage laws, Martin has "put forth no evidence that [Lewis] wanted him out because of his [protected

activity] rather than because of his confrontational style." Further, there are no other facts or circumstances suggesting that Patriot's termination of Martin was retaliatory. To the contrary, after Patriot terminated Martin in 2003 and even after Martin alleges to have called the OAG, Patriot *rehired* Martin. Martin, further, has not identified a similarly-situated employee, *i.e.,* one who spoke as he did to Lewis, who was not terminated and from which an inference of improper motive could be inferred. The Wage Act does not "provide a shield against legitimate employer actions." *Blackie v. State of Maine,* 75 F.3d 716, 724 (1st Cir. 1996). Accordingly, Martin's 2003 termination from Patriot's employ was not retaliatory.

### E. *Martin's Resignation in September 2004 was not an Adverse Employment Action*

Similarly, Martin's separation from employment in September 2004 was not an act of discrimination or retaliation within the meaning of Chapter 149. As a matter of law, Defendant did not take any action negatively affecting Martin; Martin voluntarily resigned his employment. While Martin suggests in his Complaint that his employment was "terminated," his own testimony makes it undisputed that in September 2004, he resigned his employment rather than having to meet with Rauer to discuss the fact that he had refused to take a group of customers on tour. (Facts 40)

Further, the end of his second employment with Patriot was not a constructive discharge which may constitute an adverse employment action. A constructive discharge occurs *only* when a reasonable person in the employee's position would have resigned because he found working conditions intolerable and there was no longer any possibility of rescuing the employment relationship. Constructive discharge "describes harassment so severe and oppressive that staying on the job while seeking redress is

9

intolerable." *Williams v. Mass Mutual Life Ins., Co.*, 2007 WL 518357 (D. Mass. Feb. 20, 2007); *Hansen v. J.L. Hammett Co.*, 53 Mass. App. Ct. 1114 (2002) (employee's failure to return from FMLA leave not constructive discharge because employee only believed that working conditions would be an issue; employee did not return to work and test the nature of her working conditions and, thus, could not prove that those conditions were so difficult or intolerable that a reasonable person would have been compelled to resign); *see also, Rubin v. Household Commercial Financial Services, Inc.*, 51 Mass. App. Ct. 432 (2001); *Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5 (1st Cir. 2001); *Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 732-33 (1st Cir. 1999); *Nunez-Soto v. Alvarado*, 918 F.2d 1029, 1030-31 (1st Cir. 1990). In analyzing this issue at the summary judgment stage, the court must apply an objective standard, "focusing on the reasonable state of mind of the putative discriminate." *Jackson v. McKesson Health Solutions LLC*, 2004 WL 2453000, *7-8 (D. Mass. Oct. 29, 2004) (citations and quotations omitted). To avoid summary judgment on this aspect of his claim, Martin must be able to point to evidence of working conditions so intolerable "that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." *Williams v. Massachusetts Mut. Life Ins. Co.*, 2007 WL 518357 at *8 (citations and quotations omitted).

    No reasonable jury could find that Martin was constructively discharged from Patriot's employment in September 2004. Martin, who had been rehired by Rauer after having been terminated previously, was scheduled to meet with Rauer because he had refused to take a customer on tour. (Facts 39) When he arrived at work for the meeting, Stensland, according to Martin, told him that when he met with Rauer he was

10

going to have to "beg for his job." (Facts 40) Therefore, Martin, who apparently did not wish to "beg for his job," quit instead of meeting with Rauer as scheduled.[2] (Facts 40) This is not a constructive discharge. *Suarez v. Pueblo Intern, Inc.*, 229 F.3d 49 (1st Cir. 2000) (affirming summary judgment for employer when employee failed to demonstrate his separation was constructive discharge).

**F.    *Summary Judgment for the Individual Defendants is Appropriate.***

There is no evidence in the record demonstrating that Foster, Landau, Ottino and/or Lambert played any role whatsoever in any employment decision affecting Martin and, thus, they cannot be held individually liable for any purportedly retaliatory conduct. All four individuals worked and lived in Florida. Foster was the only one of the four Martin has mentioned even meeting. When Martin met Foster it was brief: He walked next to her to hold an umbrella. Martin himself admitted that he did not bring his concerns to Foster. There is not even a single allegation that any of the four individuals retaliated against Martin, nor is there any admissible evidence that any of the four knew that Martin had engaged in conduct allegedly protected by § 148A. Martin expressly admitted that he did not bring his concerns to Foster.

Further, Landau, Foster, Ottino and Lambert are not liable by virtue of their roles as officers in Patriot and/or Berkley. Chapter 149, § 148 sets forth when wages must be paid by an employer. Section 148 also provides that "[n]o person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred fifty. The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be

---

[2] To the extent that Rauer is deemed to have terminated Martin. Martin's retaliation claim still fails because Rauer was not aware that Martin had engaged in any activity within the scope of § 148A's protection. (Facts 42)

the employers of the employees of the corporation *within the meaning of this section.*" M.G.L. ch. 149, § 148 (emphasis added). Section 148A, however, which prohibits retaliation and/or discrimination against one who seeks his or her rights under the wages or hours provisions of Chapter 149, does not have a similarly inclusive definition assigning personal liability to certain officers of the corporation. When particular language is included in one section of a statute but omitted in another, it is generally presumed that the legislature acted intentionally and purposely in the disparate inclusion or exclusion. *Leclair v. Town of Norwell*, 430 Mass. 328, 336 (1999). Further, at common law, courts reach to get beyond the corporate form to get at its officers only in rare situations. *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619-20. Statutes in derogation of the common law are strictly construed. *Kerins v. Lima*, 425 Mass. 108, 110 (1997). Because the individual Defendants had no knowledge of Martin's purportedly protected conduct, they could not have retaliated against Martin and are not liable by virtue of their officer status, summary judgment in their favor on Count V is warranted.

**G.    *Summary Judgment for Berkley on Martin's Retaliation Claim is Appropriate.***

Berkley is not liable for Patriot's actions simply because it is its parent corporation. Martin was hired by Patriot and had an employment contract with Patriot. He was terminated by Patriot's Project Director and rehired by Patriot. He then resigned employment from Patriot. He had no contact with Berkley. As noted by this Court in the recent decision, *Williams v. Mass Mutual Life Ins. Co.,* 2007 WL 518357 (D. Mass. Feb. 20, 2007), the First Circuit's decision in *Romano v. U-Haul Int'l*, 233 F.3d 655, 665 (1st Cir. 2000), *cert. denied,* 534 U.S. 815 (2001), sets forth three tests for

analyzing when a parent company may be liable for the acts of its subsidiary: the intergraded-enterprise test, the "sham" test, and the agency test.

Under any test, Berkley was not Martin's employer. Firstly, the integrated-enterprise test determines whether two entities, while separate, jointly control the terms and conditions of employment. *Romano,* 233 F.3d at 662 n.5. The integrated-enterprise test examines four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations;[3] and (4) common ownership. These factors are to be applied flexibly looking at the parent's participation in the "total employment process." *Id.* at 664. Secondly, under the agency test, a parent company is liable for its subsidiary's purported wrongdoings only when there is "strong and robust evidence of parental control over the subsidiary, rendering the latter a mere shell." *Mass Mutual*, 2007 WL 518357, *6 (citations and quotations omitted). Thirdly, under the "sham" test, any limited liability afforded a parent corporation from being held responsible for its subsidiary's acts are applicable unless the separateness of the entities is a "sham," and there is an "arm's-length relationship among the companies." Summary judgment for Berkley is appropriate regardless of what test is applied.

Patriot exercised complete control over Martin's employment process. Patriot approached Martin while he was working at another timeshare sales organization and sought to have him become employed by Patriot. (Facts 9-10) Martin became employed with Patriot and entered into a written employment agreement with Patriot. (Facts 11) Martin has come forward with no evidence that Berkley employees in any manner participated in the decision-making process leading to any adverse employment

---

[3] A parent's general policy statements are not enough to demonstrate its control over labor relations: A parent must control the subsidiary's day-to-day employment decisions. *Romano*, 233 F.3d at 666.

action Martin claims to have suffered. Rather, Martin's own testimony establishes that Patriot alone exercised complete control over Martin's employment. It was Lewis, Patriot's Project Director, who terminated Martin in May 2003 and Stensland and Leete, Patriot's Line Directors, who were Martin's direct supervisors. (Facts 7, 13) Martin inquired of Patriot's Office Manager, Lippert, when he had perceived issues with his employment. (Fact 16) Martin only met Foster, Berkley's President, one time, and it was during a rainy day when he held an umbrella for her. (Facts 26) Martin did not contact Foster with any issues regarding his employment. (Facts 4) There is no evidence that Martin ever met or spoke with Ottino, Lambert, or Landau, all of whom live and work for Berkley in Florida. Patriot and Berkley are separate corporations, who, at most, share some common directors. This is not enough to hold Berkley liable for Patriot's alleged retaliation against Martin.

For all the foregoing reasons, Defendants request that the Court grant summary judgment in their favor on Count V of the Second Amended Complaint.

Respectfully submitted,

/s/ Marylou Fabbo
Marylou Fabbo, Esq.
BBO No. 566613
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts  01144

Dated:  April 16, 2007                    Tel. (413) 737-4753/Fax: (413) 787-1941

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Memorandum in Support of their Motion for Summary Judgment on Count V (Martin's Individual Claim for Relief: Retaliation in Violation of G.L.Ch. 149, § 148A)* was served upon the attorney of record for each other party electronically, on April 16, 2007.

/s/ Marylou Fabbo
Marylou Fabbo, Esq.