UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBI,<br><br>                  Plaintiffs,<br><br>vs.<br><br>PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III, REBECCA A. FOSTER, and JAMES E. LAMBERT,<br><br>                  Defendants. | CIVIL ACTION NO. 04-30091-MAP |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED REGARDING COUNT VIII, CLASS CLAIM FOR RELIEF IN VIOLATION OF M.G.L. CH. 149, § 148**

1. Defendant Patriot Resorts Corporation ("Patriot"), located in Lanesborough, Massachusetts, owns and sells timeshare interests at Vacation Village in the Berkshires in Hancock, Massachusetts ("Vacation Village"). (Affidavit of Faith Lippert ("Lippert Aff."), Exhibit ("Ex.") 1, ¶ 2)

2. Faith Lippert ("Lippert") is and has been the Office Manager and Human Resources Representative of Patriot and has worked at the Lanesborough location since the company opened in 2001.[1] (Lippert 8-9, Lippert Aff. ¶2)

3. Patriot is a wholly-owned subsidiary of the Defendant The Berkley Group, Inc. ("Berkley"), a foreign corporation headquartered in Fort Lauderdale, Florida. In addition to Patriot, Berkley has several other wholly-owned subsidiaries in various states. (Foster 10-12, 21)

4. Defendant Rebecca A. Foster ("Foster") at all relevant times was President of both Patriot and Berkley. Foster at all relevant times has resided and worked

---

[1] True and accurate copies of the deposition transcripts referenced herein are attached as follows: Ex. 2 – Faith Lippert; Ex. 3 – Rebecca A. Foster; Ex. 4 – Michael Massaconi; Ex. 5 – William Rauer.

        for Berkley in Florida.  Foster has been employed with Berkley for 32 years. (Foster 7, 28)

5. Defendant Marc J. Landau ("Landau"), at all relevant times was Treasurer of both Patriot and Berkley and was Chief Financial Officer of Berkley.  Landau at all relevant times has resided and worked for Berkley in Florida.  (Foster 13, 19, 28)

6. Defendant J.P. Ottino, III ("Ottino") at all relevant times was a Vice President – Corporate Acquisitions of Berkley and a Director and Vice President of Patriot.  Ottino at all relevant times has resided and worked for Berkley in Florida.  (Foster 13, 28)

7. Defendant James E. Lambert ("Lambert") at all relevant times was Chairman of the Board and CEO of Berkley, only.  Lambert at all relevant times has resided in Florida and has worked on a part-time basis providing sales and marketing expertise to Berkley's Board of Directors.  (Foster 13-14)

*8.* The Plaintiffs are a class of similarly-situated Timeshare Salespeople and Sales Managers, employed by Patriot in Massachusetts, selling timeshare interests at Vacation Village, who allegedly were not paid compensation due and owing to them in a timely manner.  (*See* March 8, 2006 Order (Ponsor, J.) on Plaintiffs' Motion for Clarification)

9. During the majority of their employments with Patriot, the Plaintiffs were paid on a commission-only basis for timeshare units sold.  (Lippert Aff. ¶7)

10. Plaintiffs, including the representative Plaintiffs in this lawsuit, earned substantial incomes in great excess of minimum wage.  As examples, Plaintiff Martin grossed $48,012.53 (2002); Plaintiff Corbin grossed $40,234.42 (2003) and Plaintiff Massaconi grossed $60,890 (2003).  (Lippert Aff. ¶9)

11. Prior to beginning employment with Patriot, some of the Plaintiffs had worked as Timeshare Sales Representatives at other resorts where they also had been paid on a commission-only basis.  (*See, e.g.,* Massaconi 10)

12. The Plaintiffs' commission structure and commission payment schedule is expressly set forth in written contracts they each entered into with the Defendant Patriot Resorts Corporation when commencing employment.  The agreements are entitled, "Employment Agreement – Sales Representative" (the "Contract"). [2]  (Foster 68-69; a representative copy of the Contract is attached to Lippert's Affidavit, Ex. 1, as Attachment A)

---

[2] The actual commission *rate* to be earned was set forth in a separate document, and it would vary among Timeshare Salespeople and Timeshare Sales Managers.  (Lippert Aff. ¶8)  The Commission rate is not at issue in this lawsuit.  (*See* Second Amended Complaint)

13. The Contract notes that timeshare interests can be sold either on a cash or financed basis. A "Cash Sale" is defined in the contract as a sale in which the full amount of the purchase price is paid in cash. A "Financed Sale" is defined in the contract as a sale in which the full amount of the deposit is paid in cash and the balance of the purchase price is financed.[3] (The Contract ¶¶ 2.A. (iii) and (iv))

14. The Contract also defines when the sales "Closing" is deemed to have occurred for both Cash Sales and Financed Sales. A Cash and/or Financed Sale is deemed to have closed when the following factors were met: (1) Patriot receives all proper documentation; (2) the full purchase price is paid; (3) all funds have cleared; (4) all statutory rescission periods have expired without cancellation[4]; and (5) Patriot, under applicable law, has unrestricted use of the purchaser's funds. (The Contract ¶ 2.A.(v))

15. The Contract that the Plaintiffs entered into with Patriot also expressly establishes the time period when commissions would be earned. In the case of Cash Sales, commissions are Earned upon the Closing of a Sale. In the case of Financed Sales, commissions are earned only after the purchaser makes three timely and consecutive monthly payments in accordance with the terms of the purchase money, note and mortgage. (The Contract ¶ 2.A(vi))

16. It is the company's experience that only after a customer has made three timely and consecutive monthly payments can it be reasonably ensured that it will receive the appropriate future payments on the sale. (Foster 89)

17. If a Plaintiff received a Pre-authorized Checking withdrawal authorization ("PAC") from the purchaser, commissions are earned upon the Closing of the Sale as if it had been a "cash" sale. (Lippert Aff. ¶ 9; Martin 113-14) The company encouraged PACs because statistics demonstrate that sales that have PACs, which gives Patriot the authorization to make automatic monthly withdrawals from the purchaser's account, are more likely to pay out over the term of the loan. (Foster 89; Lippert 21-23) Patriot would accept a PAC check up to fifteen days prior to the first mortgage payment due date, which gave the sales person at least three weeks to obtain a PAC from the customer. (Lippert 35) If there was a PAC in place, the three, timely, consecutive payments requirement did not apply before salespersons' commissions are advanced. (Rauer 25-28)

---

[3] Timeshare interests cost between $3,590 and $22,990. The required deposit on each timeshare was 10 percent of the cost. (Lippert 114-15)

[4] For example, the statutory rescission period for Massachusetts and Connecticut purchasers is 3 days and for New York and New Jersey residents is 7 days. (Lippert 37-38)

18. The company always preferred to have PACs; however, during the first few months Patriot operated, a salesperson would have Earned commissions on a deal that had no PAC, and the salesperson would have been paid in accordance with any other full down sale. (Foster 89-90)

19. When Commissions are to be paid after they are earned is also expressly set forth in the written Contract. (The Contract ¶ 2.D)

20. On Cash Sales, Earned commissions are due and payable within twenty-one days of the date Earned. (The Contract ¶ 2.D.; Foster 73-74)

21. On Financed Sales, commissions are *advanced* within twenty-one days of the Closing and subject to a charge back pursuant to other terms of the Contract. (The Contract ¶ 2.D)

22. Under the express terms of the Contract between the parties, Commissions advanced on financed sales are subjected to charge back against future commissions if the sale defaulted. The Contract also provides that the employee expressly authorizes Patriot to offset the appropriate amount of charge back from the next available commission due to the employee. (The Contract ¶ 2E; Foster 76-77)

23. If a customer is consistently late on a payment but the payment is made, an exception to the charge-back provision, *i.e.,* the employee would not be charged back, could occur. (Foster 81-82)

24. A charge back also could occur if the customer cancelled his/her contract. (Foster 85-86)

25. In the case of a charge back, the entire Commission would not be charged back. Only a proportional amount would be charged back. (Rauer 30-31)

26. The Contract provides that either party can terminate the Contract at any time and for any or no reason upon twenty-four hours notice. (The Contract ¶ 3)

27. In the event that employment is terminated, commissions on Closings that occurred after notice of termination and commissions on Financed Sales for which Closings occurred prior to notice of termination but for which Commissions had not yet been earned are not advanced and become due and payable only when earned under the terms of the Contract. (The Contract ¶ 3)

28. The payment of commissions under the Contract is different for employees who have terminated employment in that the payment of the putative commissions are held in accounts payable for the employee. This is done so that if charge backs accrue, the commissions can be adjusted before payment, rather than Defendant needing to initiate lawsuits for overpayment of the Commissions pursuant to the agreed upon formulae. (Foster 150-51)

29. Patriot employees are paid weekly. Commissions that become due and payable or due to be advanced during a pay week are included on a pay ledger for that same week. The weekly pay period at Patriot ends on Sunday. On Monday, Lippert's office overnights the ledger to the pay office, and on the Tuesday of the following week, employees at Patriot are paid. (Foster 70, 96; Lippert 119-20)

30. Each paycheck is issued to a salesperson with a Commission Report indicating the status of all their sales, such as "pending," "cancelled" and sales that have not yet closed. (Foster 95-101)

31. Foster's knowledge regarding timely payment of wages under Massachusetts law was obtained by consulting with legal counsel. (Foster 107)

Respectfully submitted,

/s/ Marylou Fabbo, Esq.
Marylou Fabbo, Esq.
BBO No. 566613
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144

Dated: April 16, 2007    Tel. (413) 737-4753/Fax: (413) 787-1941

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Statement of Material Facts as to Which There is No Genuine Issue to Be Tried Regarding Count VIII, Class Claim for Relief in Violation of M.G.L. Ch. 149, § 148* was served upon the attorney of record for each other party via electronic filing on April 16, 2007.

/s/ Marylou Fabbo, Esq.
Marylou Fabbo, Esq.