93

1  salespeople could go to find out what the policy
2  was with regard to payments, is that right?
3      A.   I'm pretty sure that's true.
4      Q.   Is there any other place they could go
5  to?
6      A.   No, but if it's not in the handbook --
7  and I believe it is -- there would be something
8  they would be given at hire that would tell them
9  that.
10     Q.   Would a chargeback ever be implemented
11 with regard to a salesperson if there either was
12 a PAC check or three timely payments were made?
13     A.   What was the question?
14     Q.   Here's the question: Would Vacation
15 Village ever implement a chargeback to a
16 salesperson in any instance where there was a PAC
17 check or three timely payments were, in fact,
18 made?
19     A.   Only -- I don't believe that that has
20 happened; but if three timely payments are made,
21 for example, and then the next eight payments are
22 not timely within that first year, I believe
23 that's a possible chargeback situation.
24     Q.   What's the basis of your belief?

94

1      A.   Pardon?
2      Q.   What's the basis of your belief?
3      A.   Oh, I think that has happened. It's
4  so rare that I'm not even certain, but I think
5  within that first year if there is consistently
6  not good payments made, then I believe that
7  there's a chargeback. Now, when that happens,
8  most of the time there's a re-pay as well,
9  because they get it fixed and people get paid
10 back their commission. It doesn't happen that
11 often, though.
12     Q.   I understand. Where would a
13 salesperson go to find out that that was the
14 policy of Vacation Village?
15     A.   Oh, I really don't know how to answer
16 that honestly because I'm not sure; but I'm sure
17 there is a policy in place somewhere.
18     Q.   Has a sales person ever complained to
19 you about a chargeback?
20     A.   I don't really remember at that
21 resort. At other resorts yes, but I don't know
22 specifically at that resort that that question
23 has come up. It might have; I'm just not sure.
24     Q.   Has any salesperson at Vacation

95

1  Village ever been paid overtime?
2      A.   They've gotten paid bonuses.
3      Q.   I understand that; but overtime, time
4  and a half?
5      A.   No, they don't get paid by the hour.
6           MS. FABBO: I just have one or
7           two questions.
8
9  CROSS EXAMINATION BY MS. FABBO:
10     Q.   Since you -- when did you leave the
11 position as project director at Vacation Village?
12     A.   I think August of '02.
13     Q.   And since that time, how frequently do
14 you visit Vacation Village in the Berkshires?
15     A.   About once a month.
16          MS. FABBO: That's all my
17          questions.
18          Mr. Feldman: Nothing further.
19          Thank you.
20
21          (Deposition concluded at 11:40)
22
23 COMMONWEALTH OF MASSACHUSETTS
24 HAMPDEN, SS.

96

1
2      I, Ann A. Preston, a Notary Public in
   and for the Commonwealth of Massachusetts, do
3  certify that there came before me on June 3,
   2005, at the offices of Heisler, Feldman and
4  McCormick, PC, 1145 Main Street, Springfield,
   Massachusetts, the following named person, to
5  wit: WILLIAM RAUER, who was by me duly sworn to
   testify to the truth and nothing but the truth as
6  to his knowledge concerning the matters in this
   case; that he was examined upon his oath and his
7  examination reduced to writing by me; and that
   the statement is a true record of the testimony
8  given by the witness, to the best of my knowledge
   and ability.
9      I further certify that I am not a relative
   or employee of counsel or attorney for any of the
10 parties, or a relative or employee of such
   counsel or attorney, nor am I financially or
11 otherwise interested in the outcome of the
   action.
12
13 WITNESS MY HAND this 27th day of June 2005.
14
15
   _____
16 Ann A. Preston
17 My commission expires:
   December 22, 2011

RAUER                Real-Time Court Reporting                Pages 93 to 96

## Page 97

```
 1
 2                        June 27, 2005
 3   Marylou Fabbo, Esq.
     Skoler, Abbott and Presser, PC
 4   1414 Main Street
     Springfield, MA  01103
 5
     RE:  Wise v Patriot
 6
     Dear Counselor:
 7
            Enclosed is a copy of the deposition of
 8   William Rauer, taken on June 3, 2005 in the
     above-entitled action.
 9
            According to Rule 30(e) of the
10   Massachusetts Rules of Civil Procedure, the
     deponent has thirty days to sign the deposition
11   from the date of its submission to the deponent,
     which is the above date.
12
            Please have the deponent sign the enclosed
13   Signature Page/Errata Sheet and return it to the
     offices of Joel Feldman, Esq., whereupon it will
14   be attached to the original deposition
     transcript.
15
            Thank you for your cooperation in this
16   matter.

17   Sincerely,

18
     Ann A. Preston
19

20   cc:  Joel Feldman, Esq.
```

## Page 98

```
 1              COMMONWEALTH OF MASSACHUSETTS

 2    Wise v Patriot
      No. 04-CV-30091-MAP
 3

 4          I, WILLIAM RAUER, do hereby certify under
      the pains and penalties of perjury that the
 5    foregoing testimony is true and accurate to the
      best of my knowledge and belief, with the
 6    addition of the following changes/corrections:

 7

 8    Page  Line          Change/Correction

 9    _____
10    _____
11    _____
12    _____
13    _____
14    _____
15    _____
16    _____
17    _____
18

19    Witness my hand this ___ day of _____, 2005.

20                               _____
21                                  WILLIAM RAUER
      Orig:  Joel Feldman, Esq.
22    Copy:  Marylou Fabbo, Esq.
```

## Page 99

(blank)