UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBI,<br><br>                 Plaintiffs,<br><br>vs.<br><br>PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III, REBECCA A. FOSTER, and JAMES E. LAMBERT,<br><br>                 Defendants. | CIVIL ACTION NO. 04-30091-MAP |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON CLASS CLAIM (COUNT VIII)**

**1. INTRODUCTION**

In Count VIII of the Second Amended Complaint ("Complaint") Plaintiffs, a Rule 23 class of similarly-situated Timeshare Salespeople and Timeshares Sales Managers, allege that the Defendants violated Mass. Gen. Laws ch. 149, §148 (the "Wage Act"), by failing to pay commissions in accordance with the Wage Act's provisions. However, as the Supreme Judicial Court has noted, "nothing in the weekly wage law itself requires the weekly payment of wages." Rather, it sets out different payment deadlines for different types of employees. G.L. c. 149, §148. The paragraph of §148 that is relevant to commissions states that it applies "so far as apt" to commissions that are definitely determined and have become due and payable." *Wiedmann v. The Bradford Group, Inc.*, 444 Mass. 698, 704, 831 N.E.2d 304, 309 (1995).

Nothing in that Act fixes when commissions must become due and payable or, more relevantly, precludes the parties from contractually establishing when commissions are due and payable. In an arena where substantial commissions are being paid on sales which may not be completed for years, if ever, it is altogether appropriate and legal for the parties to contractually determine such matters in advance of entering into the employment relationship. No statute or caselaw stands for a proposition that parties to such a relationship cannot contractually determine when commissions become due and payable. Nothing in the Wage Act could rationally be construed as a limitation on the parties' right to contract such matters and enter into binding contractual agreements setting forth when payments relating to commission sales are due and when they are payable.

As a matter of fact and law, the Defendants did not violate the Wage Act because they promptly paid Plaintiffs when their commissions became due and payable under the express, written terms of contracts they each voluntarily entered into with their employer. Accordingly, the Defendants, Patriot Resorts Corporation ("Patriot"), The Berkley Group, Inc. ("Berkley"), Marc J. Landau ("Landau"), J.P. Ottino, III ("Ottino"), Rebecca A. Foster ("Foster"), and James E. Lambert ("Lambert"), move that the Court grant summary judgment on said claim. Additionally, Defendants James E. Lambert and J.P. Ottino are not proper parties to this lawsuit, and the claim against them should be dismissed on that basis as well.

## 2. *FACTUAL BACKGROUND*

The Plaintiffs are or were commissioned sales people who voluntarily entered into written employment agreements (the "Contract") with their employer, Patriot, that established when commissions on timeshare interests they sold would be advanced or paid to them.  The Contracts expressly set forth when commissions would be definitely determined and due and payable to the Plaintiffs.  Moreover, the fairly complex agreement, reflects a balancing of the employee's desire for immediate payment when documents are signed, with the employer's need to protect itself from paying commissions on sales that turn out not to be *bona fide* sales, because the purchaser fails to pay the full purchase price on which the Commission is based.  Reflecting this balance even when commissions were not due or payable, in some circumstances, commissions would be *advanced* to the Plaintiffs, in circumstances when the employer's interests could be protected by a future charge back to the employee's earnings in the event that the sale failed to lead to the anticipated revenue.

There is no claim that the payments were not made consistent with the terms of the parties' written agreements covering such issues.  Nevertheless, despite the clear language of the parties' written agreements, the Plaintiffs claim that their commissions should have been paid at some other, (unspecified), time than they actually were paid as the result of a provision of the state's Wage Act, Mass. Gen. Laws, ch. 149, §148, that purportedly supersedes the language of the parties' written Contracts.

### 3.  LEGAL DISCUSSION

A.  **The History of Mass. Gen. Laws Ch. 149, §148's and Its Limited Applicability to Commission Payments.**

The Wage Act is not all encompassing when it comes to its applicability to commissions.  The Wage Act provides that employees earning wages must be paid within a certain number of days of the end of a pay period.  The Act also applies "so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable…."  Mass. Gen. Laws ch. 149, §148.  The Wage Act was intended to prevent unreasonable detention of wages.  *Boston Police Patrolmen's Ass'n v. Boston,* 435 Mass. 718, 720, 761 N.E.2d 479 (2002).  Its goal is to protect casual wage earners who might otherwise be vulnerable to employer intimidation.  *Cumpata v. Blue Cross Blue Shield of Ma.*, 113 F. Supp. 2d 164, 167 (D. Mass. 2000) (citation omitted).  It was not intended, and cannot be construed, to prohibit a voluntary contractual agreement regarding how the parties will share the risks, *vis a vis* the payment of commission, of a sale "gone bad."  It is not an "unreasonable detention of wages" to ensure circumstances to prevent a salesman from receiving full payment commissions on a sale that is not completed or defaults.

In construing the Wage Act, courts have limited commissions that fall within its scope to those which are a significant part of the weekly compensation of a person who would ordinarily be paid weekly, such as retail salespeople.  *Commonwealth v. Savage,* 31 Mass. App. Ct. 714, 716 (1991); *Beaule v. M.S. Inserts and Fasteners Corp.*, 17 Mass. L. Rptr. 623 (2004).  Irregular and substantial commissions have not been afforded the protection of the Wage Act.  *Cumpata*, 113 F. Supp. 2d at 168; *Dennis v.*

*Jager, Smith & Stetler, P.C.*, 2000 WL 782946, *1 (Mass. Super. Apr. 10, 2000). Further, as noted above, commissions only come within the purview of the Act when they are "definitely determined" and have become "due and payable." Mass. Gen. Laws ch. 149, §148; *Cumpata,* 113 F. Supp. 2d at 167. Thus, commissions that are based on a number of contingencies are not "definitely determined" or "due and payable" and do not fall within the Act unless the contingencies have been satisfied. *Cumpata*, 113 F. Supp. 2d at 125 (finding that commissions at issue were not covered by the Wage Act in part due to their contingent nature); *Loke v. Sales Consultants of Boston, Ma.*, 2001 WL 716911 (Mass. Super. 2001) (holding that commissions paid quarterly and triggered by numerous contingencies are not covered by the Wage Act)

Only once a commission is "definitely determined" and has become "due and payable," must it be paid "promptly" and even then not necessarily within a specific number of days. *Klint v. J & J Assoc., Inc.*, 1998 WL 1181125, *3 (Mass. Super. Sept. 3, 1998). As logically reasoned by the *Klint* court:

> The reference to applying §148 to commissions "so far as apt" appears to refer to some flexibility of application in the specific time frames that are set forth for "wages." The requirements for prompt payment of wages include both a specific frequency of wage payments and a requirement that they be paid within a certain number of days of a particular pay period. Some of these calculations make no sense in the context of commissions, which would not normally be paid on such a frequent basis and would not normally be due within a few days of the end of a "pay period." What is apparently called for in the case of commissions is prompt payment once they are calculated, due and owing, not necessarily payment within a specific number of days.

*Id.* at *3, n.2. The Defendants paid Plaintiffs' commissions once they were definitely determined and due and payable promptly in accordance with the Wage Act's provisions.

5

**B.    Defendants[1] Paid Plaintiffs' Commissions "Promptly" When they Became Definitely Determined and Due and Payable.**

When commissions on timeshare interests sold were considered "definitely determined" was established by the express terms of the Contracts that the Plaintiffs voluntarily entered into with Defendants. Commissions were "definitely determined" subject to numerous contingencies set forth in the Contracts. Thus, if the sale was a Cash Sale as defined in the Contract,[2] commissions were earned upon the Closing of a sale as defined in the Contracts.[3] (Facts 15) If the sale was a Financed Sale, commissions were Earned at a different time, *i.e.,* when the purchaser made three timely and consecutive monthly payments in accordance with the terms of a purchase money note and mortgage.[4] (Facts 15) And, if a Plaintiff received a Pre-authorized Checking withdrawal authorization ("PAC") from the purchaser, commissions were advanced upon the Closing of the Sale as if it had been a "cash" sale. (Facts 17)

---

[1] Defendants also maintain that not all parties are proper Defendants to this litigation for the reasons set forth in Section 3C., *infra.*

[2] A "Cash Sale" was defined as a sale in which the full amount of the purchase price was paid in cash. (Facts 13)

[3] A Cash and/or Financed Sale would be deemed to have Closed as provided in Paragraph 2.V. of the Agreement. (Facts 14)

[4] Plaintiffs have suggested that this three consecutive payment provision is somehow unfair to them because it is theoretically possible that a purchaser could take years to make three consecutive, timely monthly payments and they would be unfairly delayed in receiving commissions. Despite their contention, there is nothing inherently wrong with such an arrangement. *See, e.g., Klint,* 1998 WL 1181125, * 3 n.4 (recognizing contingencies in commission structures may result in *no* commission being owed and stating, "By definition under Klint's employment agreement, Klint was not entitled to commissions on [customer] sales for which [the employer] itself had not yet received its payment from [the customer]. The phase-out of the [customer] sales agreement, and ongoing disputes about what [the customer] does or does not owe for sales made either under that agreement or subsequent to its formal cancellation would appear to cloud (if not eliminate) much of Klint's own commission claim.") Moreover, Plaintiffs have not identified a circumstance where this years-long delay actually occurred. Additionally, Defendants made exceptions for certain situations such as when a customer repeatedly paid but paid late. (Facts 23) Finally, and most importantly, Defendants note that this rule did not apply if the Plaintiff received a PAC check from the customer and that Defendants actually *advanced* the Plaintiffs their commissions on financed sales prior to the three consecutive monthly payments pursuant to ¶ 2D even though those commissions were not yet Earned under the terms of the contract. (Facts 17)

Further, the circumstances under which Commissions became "due and payable" or, in the alternative, due to be *advanced* after they were earned, was also expressly set forth in written agreements. On Cash Sales, Earned commissions were due and payable within twenty-one days of the date earned. (Facts 20) In contrast, on Financed Sales, commissions were *advanced* within twenty-one days of the Closing but remained subject to a charge back pursuant to other terms of the Contract.[5] Additionally, if an employee resigned or was terminated before a Closing took place, commissions or Financed Sales were not advanced, rather, they become due and payable when earned under the terms of the Contract.[6] (Facts 27) This agreed upon process precludes the payment of a commission based on the anticipated revenues of a sale. In such circumstances the employee is not going to be readily available for a charge back. Even at that, it does not require the employee to wait until the full price is paid, merely until such time as three consecutive timely installment payments are made by the purchaser, providing reasonable grounds to conclude that the balance will be paid as well. Assuming *arguendo* that Plaintiffs admit that they are not entitled to full commissions on sales where the payments are not collected, the failure to delay the time at which these commissions became payable would require the employer to

---

[5] Under the terms of the Contract between the parties, Commissions *advanced* on financed sales were subjected to charge back against future commissions if the sale defaulted. The Contract also provides that the employee expressly authorized Patriot to offset the appropriate amount of charge back from the next available commission due to the employee. (Facts 22) There is nothing inherently wrong with not paying sales people for cancelled deals. *See, e.g., In re Vital Basics, Inc.*, 472 F.2d 12 (1st Cir. 2006) (affirming that under terms of parties' agreement, employer not required to make commission payments on "paid cancels.")

[6] Alternate commission-payment arrangements for terminated employees are permissible. *See, e.g., Barsamian v. Corporate Exp. Office Products, Inc.*, 67 Mass. App. Ct. 1105, 853 N.E.2d 220 (2006) (holding that under contract language, former employee was not entitled to any payment on commissions after her position with employer terminated).

7

constantly track down former employees and request payment or initiate legal action to recover the overpayments.

In the end, the fact that the system is inherently sensible is not crucial. What is crucial is that the Contracts expressly provided when commissions were due and payable, and thus no reasonable jury could find that they were due and payable at some time *other* than the time frame set forth in the Contracts. *Desantis v. Commonwealth Energy Sys.*, 20 Mass. L. Rptr. 460 (2005) (terms of offer letter, acceptance letter and employer's actual practices supported conclusion commissions due and payable when "booked").

Once a commission under the terms of the Contract became due and payable or due to be advanced, Defendants promptly paid (or advanced) that commission. The Defendants work week ran from Monday through Sunday, and Plaintiffs were paid weekly. (Facts 29) Commissions that became due and payable or due to be advanced during a pay week were included on a pay ledger for that same week ending Sunday. (Facts 29) On the following day, Monday, the ledger was transmitted to the pay office, and on the Tuesday of the following week, the Plaintiffs were paid or advanced their commissions. (Facts 29) Thus, at the least, Plaintiffs were paid (or advanced) commissions 9 days after their commissions became due and payable (or due to be advanced) and at the most there was a 16-day time period between the two events. (Facts 29) Payment between 9-16 days after commissions became due and payable is "prompt" payment consistent with the intent of the Wage Act.[7] Indeed, the Wage Act

---

[7] As discussed previously, commissions that are not actually "due and payable" within the meaning of the Wage Act are not subject to its terms. *See, e.g.*, *Cumpata*, 113 F. Supp. 2d at 168. Thus, there is no requirement that commissions be advanced "promptly" within the meaning of the Wage Act if they are not due and payable. These commissions were nothing more than compensation paid as a

recognizes that payment of wages may be made in weekly, bi-weekly or even monthly increments. *See* Mass. Gen. Laws ch. 149, §148.

Moreover, Plaintiffs are not the "laborers or casual wage earners" who might otherwise be vulnerable to employer intimidation" or a delay in life-sustaining wages. *Cumpata*, 113 F. Supp. 2d at 167. To the contrary, Plaintiffs were commissioned salespeople who earned substantial incomes from selling timeshare units. (Facts 10) Many Plaintiffs had sold timeshare units for other employers prior to beginning employment with Patriot. Being paid on a commission-only basis was not a novel concept to them as they had been paid in that manner by other employers. (Facts 11) The Plaintiffs voluntarily entered into Contracts with Defendants and understood the terms of those Contracts, which clearly explained when commissions would be definitely determined and due and payable to them as wages or an advance on wages. Plaintiffs' Complaint does not include any count for breach of the parties' written Contracts. Rather, Plaintiffs claim that even though the Defendants adhered to the terms of the contract, they still should be entitled to the benefits of the Wage Act, including up to treble damages, costs, and attorneys' fees, simply because they had to wait 9-16 days after the commissions became due to be paid (or advanced) under the express terms of their employment agreements. As noted by the *Cumpata* court, 113 F. Supp. 2d at 168, "there is no evidence that the Legislature intended to provide treble damages and attorneys' fees and costs to professionals enforcing their asserted contract rights."

In essence, the Plaintiffs are asking the Court to disregard the Contracts they voluntarily entered into with the Defendants and instead hold that commissions were

---

recoverable draw, which may permissibly reduce future commissions. *Massachusetts Dep't of Labor, Division of Occupational Safety,* Opinion Letter MW-2003-004 (Mar. 14, 2003).

9

due and payable or earned at some time other than the time established in the Contracts and, therefore, were untimely paid. Indeed, in their Pretrial Memorandum, Plaintiffs claim that their evidence "will show that the defendants routinely paid commissions many months after they were earned by the plaintiffs, and often recouped the commissions earned by, and paid to, the plaintiffs when, among other things, a loan made to a time-share customer was in default." The problem with Plaintiffs' argument is that when commissions were to be definitely determined and due and payable was specifically set forth in the Contracts they entered into with Defendants. There is absolutely no precedent in the Wage Act or the cases that have evolved in its wake for the Court to intervene in the parties' contractual relationship and instruct Defendants how they should be written, presumably in a manner Plaintiffs deem more "fair" to them. There is nothing inherently unlawful or unfair in denying Commissions when there is a default. Commissions, after all, reflect a sharing of the gain of a sale as per some agreed upon arrangement. When the gains do not materialize because of a default, the salesperson is not entitled to a share of the gain that would have materialized absent the default. In fact, as a matter of law, Defendants could have included in the Contracts' language that the Plaintiffs would get *no* commissions on financed sales or no commissions on financed sales until the timeshare interest was paid for *completely*. *See, e.g., Klint,* 1998 WL 1181125 at *3, n.4. Defendants did not violate the terms of their Contracts with Plaintiffs, and, if they had, Plaintiffs' means of redress would have been via a *breach of contract* lawsuit. Plaintiffs are not entitled to recovery under the Wage Act as commissions were in fact paid promptly to them after they became

definitely determined and due and payable according to the express terms of the Contracts.

**C.      Defendants Ottino and Lambert are Not Proper Defendants.**

The Wage Act expressly provides that the "president and treasurer of a corporation and any officers or agents having the management of such corporation" shall be deemed to be the employers of the employees of the corporation within the meaning of this section." Mass. Gen. Laws ch. 149, § 148. In *Weidemann v. The Bradford Group, Inc.*, 444 Mass. 698, 711, 831 N.E.2d 304, 312 (2005), the SJC for the first time defined who was to be included as "officers or agents having the management of such corporation." The *Weidemann* court, applying the common meaning of the terms at issue, concluded that "a manager is someone who controls, directs and participates to a substantial degree in formulating and determining policy of a corporation." *Id.* at 314. Further, "[m]erely holding a managerial position over some branch, division, or office of a corporation does not, by itself, mean that the manager has the 'management' of the 'corporation' as a whole." *Id.* Under the standard enumerated in *Weidemann*, neither Defendant Ottino nor Defendant Lambert are deemed to be "employers" within the Payment of Wages Act.

Defendant Ottino was not the president or treasurer of Patriot or Berkley. (Facts 6) Ottino at all relevant times was a Vice President – Corporate Acquisitions of Berkley and a Director and Vice President of Patriot. Ottino at all relevant times has resided and worked for Berkley in Florida. (Facts 6) Further, Plaintiff's have come forward with absolutely no evidence whatsoever that Ottino controlled, directed or participated to a substantial degree in formulating and determining Patriot or Berkley's corporate policy

regarding the Contract that is at issue in this lawsuit. Similarly, Defendant Lambert at all relevant times was Chairman of the Board and CEO of Berkley, only. Lambert at all relevant times has resided in Florida and has worked on a part-time basis providing sales and marketing expertise to Berkley's Board of Directors. (Facts 7) Plaintiffs have not come forward with any evidence that Lambert either was a manager or agent within the meaning of the Payment of Wages Act. Accordingly, Ottino and Lambert cannot be held individually liable under the Payment of Wages Act and are not proper defendants to this lawsuit. Summary judgment should be granted in their favor.

**CONCLUSION**

For the foregoing reasons, Defendants request that the Court grant summary judgment in their favor on Count VIII of the Plaintiffs' Second Amended Complaint.

Respectfully submitted,

 /s/ Marylou Fabbo, Esq.
Marylou Fabbo, Esq.
BBO No. 566613
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144
Dated: April 16, 2007        Tel. (413) 737-4753/Fax: (413) 787-1941

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Memorandum in Support of Their Motion for Summary Judgment on Class Claim (Count VII) was* served upon the attorney of record for each other party via electronic filing on April 16, 2007.

 /s/ Marylou Fabbo, Esq.
Marylou Fabbo, Esq.