UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WISE ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> PATRIOT RESORTS CORP. ET AL., <br><br> Defendants. | Civil Action No.  04-30091-MAP |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON COUNTS I-IV (WISE'S INDIVIDUAL CLAIMS FOR RELIEF: DISCRIMINATION AND RETALIATION IN VIOLATION OF G. L. c. 151B AND 42 U. S. C. § 2000e)**

**1.    Introduction**

On June 7, 2003, Plaintiff Lacrisha Wise ("Wise") was terminated from her employment with Defendant, Patriot Resorts Corporation ("Patriot"), for violating Patriot's attendance policy.  Wise maintains that her blatant disregard for Patriot's attendance policy was not the cause of her separation from employment with Patriot, but rather, in Counts I-IV of the Second Amended Complaint ("Complaint"), she claims that Defendants, Patriot Resorts Corporation ("Patriot"), The Berkley Group, Inc. ("Berkley"), Marc J. Landau ("Landau"), J.P. Ottino, III ("Ottino"), Rebecca A. Foster ("Foster"), and James E. Lambert ("Lambert"), terminated her because of her race and in retaliation for complaining about race discrimination, in violation of Mass. Gen. Laws ch. 151B, §§ 4(1) and 4(4) and 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a).

As set forth below, there is no admissible evidence in the record demonstrating that Wise was discriminated against on the basis of her race or in retaliation for any complaints of race discrimination, and, as a result, summary judgment for all Defendants on Counts I-IV is appropriate.  Additionally, summary judgment for Defendants Berkley, Foster, Ottino, Landau, and Lambert is appropriate because they are not proper parties to these claims.

## 2.     Factual Background

Lacrisha Wise was a Timeshare Sales Representative employed by Patriot, whose unwillingness to comply with Patriot's company policies, particularly Patriot's attendance policy, resulted in the termination of her employment.  (Facts ¶ 35). When Patriot tried to enforce its policies with respect to Wise, she often became defiant and confrontational.  (Facts ¶ 41; Affidavit of Faith Lippert ("Lippert Aff."), Exhibit ("Ex.") H).  In fact, Patriot's Human Resources Representative, Faith Lippert ("Lippert"), felt personally threatened by Wise.  (Facts ¶ 40).  Although Wise frequently claimed to be singled out or picked on when Patriot insisted that she follow company policies, these claims are based solely on speculation.

Although Wise had signed various documents recognizing the need for sales personnel to produce documentation to the company proving that she had a valid driver's license and sufficient automobile insurance, when Patriot tried to obtain this information from her, Wise considered this a personal affront, even though all employees were required to present this information, and some white employees were transferred out of their positions because they failed to produce the required paperwork.  (Facts ¶¶ 10-15).

When Wise wore a spaghetti strap dress to work merely one week after receiving notice of Patriot's dress code policy specifically prohibiting spaghetti straps, her supervisor asked her to change her outfit or wear a sweater to cover her shoulders. (Facts ¶¶ 16, 18). Although co-workers offered to lend her a sweater so that she wouldn't have to change her clothes, Wise refused to accept this simple remedy. (Facts ¶ 18). When Wise was written up for violating the dress code policy, she insisted that she was being picked on, even though white employees had been counseled and sent home for similar violations of the policy. (Facts ¶¶ 19-20)

The biggest issue with Wise's performance, however, was her failure to abide by Patriot's attendance policy. Due to the nature of Patriot's timeshare business, it is essential that sales representatives exhibit regular, predictable attendance and punctuality to ensure that Patriot has enough staff to give prompt tours to all prospective buyers. (Facts ¶ 21). Despite the fact that company policy clearly limited sales representatives to no more than fifteen absences per year, Wise was absent *49 times* in 2002, and she wasn't even employed for the whole year. (Facts ¶¶ 9, 22, 25). When Patriot announced at the end of 2002 that the attendance policy would be enforced strictly from that point forward, Wise continued to flout the policy with frequent absences in 2003. (Facts ¶¶ 27, 30-34). During the first month and a half of 2003, Wise was absent nine times. (Facts ¶ 30). During that same period, she arrived late for work on eight occasions. (Id.). In March, Wise was absent another five days and was late once, bringing her to fourteen absences for the year, one less than her maximum yearly allowance. (Facts ¶ 31).

3

Yet, when Patriot warned Wise that her job was in jeopardy because she was nearing the maximum number of allowed absences, Wise complained that she was being picked on. (Facts ¶ 41; Lippert Aff., Ex. H). On the contrary, Patriot hoped that this warning would encourage Wise to improve her attendance, as Wise was a successful salesperson (when actually at work). The warning seemed to have some impact – Wise was not absent at all between March 31, 2003 and May 11, 2003. (Facts ¶¶ 31-32). However, she was late on seven occasions during this period, and on May 31, 2003, Wise arrived at approximately 2:45 p.m. for a shift that started at 9:00 a.m., thus managing to avoid an absence by "signing in" for that day. (Facts ¶¶ 32-33).

On May 12, 2003, Wise had her fifteenth and final permissible absence. (Facts ¶ 32). On June 7, 2003, Wise failed to report to work for the sixteenth time in 2003. (Facts ¶ 34). Despite Wise's ability to sell timeshares, Patriot could not continue to employ a salesperson who refused to abide by company policies and who could not be relied on to come to work as scheduled. As a result, Patriot terminated Wise's employment on June 7, 2003. (Facts ¶ 35).

## LEGAL DISCUSSION

### A.   Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the court must construe the record and all reasonable inferences from it in the light most favorable to the party opposing the motion. *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir.2004). A party who wishes to avoid summary judgment on a claim on which he or it bears the burden of proof at trial must produce enough evidence to get to a jury. *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir.2001). "This obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.*

### B.     Defendant(s)[1] Did Not Discriminate Against Wise

#### 1.     Wise Cannot Establish a Prima Facie Case of Discrimination

To establish a *prima facie* case the plaintiff must show that 1) she was a member of a protected class; 2) she met her employer's legitimate performance expectations; 3) she suffered an adverse employment action; and 4) the employer's discriminatory animus was the determinative cause of the adverse action. *Weber v. Community Teamwork, Inc.*, 434 Mass. 761, 775 (2001); *Lewis v. City of Boston*, 321 F.3d 207 (1st Cir. 2003). *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir. 1999) *cert. denied*, 528 U.S. 1161, 120 S. Ct. 1174, 145 L.Ed.2d 1082 (2000). Wise must point to specific facts that would warrant a finding that "the employee has satisfied her *ultimate* burden of proving that the decision was made *because of* the unlawful discrimination as G.L. Ch. 151B, § 4(1) requires." *Lipchitz v. Raytheon Co.*,

---

[1] As discussed in Sections D and E, *infra*, not all Defendants are proper parties to these claims. Summary judgment for Defendants Berkley, Foster, Ottino, Lambert and Landau is appropriate.

5

434 Mass. 493, 505 (2001).  To prevail, an employee must "prove that [the employer] acted with a discriminatory intent, motive or state of mind."  Liability can only be imposed if the trier of fact concludes that the employee proved "that the defendant's discriminatory animus was the determinative cause . . . in bringing about the adverse decision."  *Lipchitz*, 434 Mass. at 504.[2]

Since Wise was not performing her job at a level that met Patriot's legitimate expectations, she cannot even establish a *prima facie* case.  Wise's outrageous absenteeism alone is enough to preclude her from establishing a *prima face* case.  In 2002, Wise was absent 49 times, over *three times* the number of absences allowed under Patriot's policy.  Even after Patriot announced its intention to enforce strictly its attendance policy beginning in the fall of 2002, Wise continued her pattern of excessive absences and frequent tardiness.  On June 7, 2003, Wise was terminated for exceeding the maximum amount of absences allowed under Patriot's policy.  Wise's failure to abide by Patriot's attendance policy renders her unable to establish that she was performing her job at an acceptable level.

Nor can Wise establish the fourth prong of her *prima facie* case: that, but for her race, her termination would not have occurred.  Regular, predictable attendance and punctuality were key to an efficient workplace at Patriot.  Patriot could not operate properly if it could not count on its sales representatives to be available to give tours to prospective buyers.  In the face of Wise's unwillingness to abide by company policies, it is nonsensical to assert that her race, rather than the fact that she missed 65 days of work in a little over a year, was the determinative factor in

---

[2] The SJC further indicated that "[A] cause is the determinative cause if it was the active efficient cause in bringing about the adverse employment action."  *Lipchitz v. Raytheon*, *supra* at. n. 19.

6

Wise's termination. As there is no evidence to suggest that Wise's termination was motivated by discriminatory animus, Wise cannot establish the fourth element of the *prima facie* case.

Accordingly, since Wise cannot establish a *prima facie* case of discrimination, Defendants are entitled to summary judgment on her claims for race discrimination.

> 2. *Wise Cannot Establish that Defendants' Legitimate, Nondiscriminatory Reason for Her Termination is a Pretext for Discrimination*

Even if Wise could establish a *prima facie* case, Patriot has articulated a legitimate, nondiscriminatory reason for terminating Wise: her outlandish absenteeism and tardiness. Once the employer articulates a legitimate, nondiscriminatory reason for its actions, any presumption of discrimination vanishes, and the sole remaining question is whether Defendants terminated Wise because of her race. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097 (2000); *Melendez-Arroyo v. Cutler-Hammer de P.R. Col, Inc.*, 273 F.3d 30, 33 (1st Cir. 2001)*; Lipchitz*, 434 Mass. at 504-505. Casting doubt on the employer's reasons, or even a finding of pretext, is not sufficient for a plaintiff to prevail. The ultimate question is not whether the explanation was false, but whether discrimination was the cause of the termination. *Knight v. Avon Products, Inc.*, 438 Mass. 413, 426 (Mass. 2003) *citing Lipchitz*, 434 Mass. at 506 n.19.

There is no actual evidence of racial animosity or discrimination here, only an unsuccessful effort to enforce standards of attendance and behavior. Although Wise claims that Patriot's policies were enforced only with respect to her and not other employees, she has no admissible evidence to support these allegations. To defeat a motion for summary judgment, Wise cannot rely on "conclusory allegations,

7

improbable inferences, and unsupported speculation," *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990); *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 12 (1st Cir. 1998); *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 129-130 (1997). *See also, Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 18 (1st Cir. 1999) (refusing, on motion for summary judgment, "to indulge rank speculation or unsupportable hyperbole"); *Finney v. Madico, Inc.*, 42 Mass. App. Ct. 46, 49, 674 N.E.2d 655 (1997) ("to defeat a summary judgment motion the asserted conflict "must be genuine, *i.e.*, the proponent cannot establish it by simply saying so or adducing only evidence from which a factfinder could not reasonably infer unlawful discrimination.")"

Wise can show no admissible evidence to support her allegations that company policies were applied more strictly to her than to white employees. Indeed, such a claim defies common sense in light of the fact that Wise was allowed to be absent 49 times in one year without receiving any discipline whatsoever, while no other employee came close to that number of absences. Wise cannot point to any Caucasian employee who was absent 65 times in 16 months who was not terminated.[3]

In addition, despite Wise's allegations, white employees were disciplined for violations of other company policies as well. Sam Barnes and Ron Ferreira, two Caucasian employees, were transferred to the Exit Department when they failed to

---

[3] Even if Wise presented any admissible evidence that other employees were not terminated for exceeding fifteen absences, Wise cannot establish that she is similarly situated to any such employees, since there are no employees who violated the attendance policy to anything even approaching the degree that Wise did. While Wise would be "similarly situated" to such employees in the sense that they all exceeded the allowable fifteen absences, there is an inherent, non-discriminatory difference between discharging an employee with 65 absences in the course of sixteen months and not terminating another employee with, for example, 31 absences over the same time period, although both are in violation of the policy.

8

provide documentation confirming their driver's license and insurance information. (Facts ¶¶ 13-15). Chelsea Wright and Erica Reu both were disciplined for failing to abide by Patriot's dress code policy. (Facts ¶¶ 19-20). Wise's claims that she was "singled out" in this respect are simply without merit.

Accordingly, as Wise cannot establish that Patriot's reasons for terminating her employment are a pretext for discrimination, summary judgment on her claims of discrimination is appropriate. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 516, n.6 (1993); *Brunner v. Stone & Webster Engineering Corp.*, 413 Mass. 698, 703 (1992).

## C.    Defendant(s)[4] Did Not Retaliate Against Wise

To prove her claims of retaliation, Wise must show that before her discharge she engaged in protected conduct, that she suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action. *Mole v. University of Massachusetts*, 442 Mass. 582, 592 (2004) *citing Mesnick*, 950 F.2d at 827 (1st Cir. 1991). If the plaintiff is able to set forth a discriminatory or retaliatory reason, the burden shifts to the defendants to show a legitimate reason for the adverse action. *See Mole*, 442 Mass. at 591; *McMillan v. Massachusetts Soc. for Prevention of Cruelty to Animals*, 140 F.3d 288, 309 (1st Cir. 1998). Once the defendants show a legitimate, nonretaliatory reason for their actions, the burden shifts back to plaintiff to show that defendants' articulated reason is not the real reason, but is instead a pretext to mask retaliatory animus. *Mole*, 442 Mass. at 591; *McMillan*, 140 F.3d at 309. The undisputed evidence is clear: Patriot did not

---

[4] As discussed in Sections D and E, *infra*, not all Defendants are proper parties to these claims. Summary judgment for Defendants Berkley, Foster, Ottino, Lambert and Landau is appropriate.

9

discharge or in any other manner discriminate against Wise because she engaged in statutorily protected activity.

Wise has nothing other than mere speculation to support her contention that Defendants terminated her due to her alleged complaints of discrimination.  As set forth above, Patriot's legitimate reason for Wise's termination was her blatant disregard for Patriot's attendance policy, and Wise can offer no admissible evidence that this reason was a pretext for retaliation.  It is not enough to cast doubt on Defendants' reasons for her termination; rather, Wise must show that she was terminated *because of* the protected activity.  The First Circuit has noted the importance of establishing this causal relationship, stating:

> That an employer knows of a discrimination claim and thereafter takes some adverse action against the complaining employee does not, by itself, establish causation.  "Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint."

*Mesnick*, 950 F.2d at 828.

Wise cannot inhibit her well-deserved discharge with her complaints of discrimination.  Indeed, there is ample evidence that Patriot's problems with Wise predate her complaints of discrimination.  Clearly Patriot expressed its intent to enforce strictly its attendance policy well in advance of any alleged complaints of discrimination by Wise.[5]  (Facts ¶ 27).  That Patriot followed through with its intent when Wise achieved her sixteenth absence for the year is not evidence of retaliatory

---

[5] Wise alleges that she reported "to a member of management" on or around March 2003 that she believed she was being discriminated against on account of her race:  (complaint ¶58).  Even if true, Defendants' problems with Wise's attendance predated these complaints, and there is no evidence that Lewis, the person who made the decision to terminate her employment, was aware of any such complaints.  Further, Wise's Complaint to the Massachusetts Commission Against Discrimination was not served on Defendants until June 18, 2003, eleven days *after* her termination.

10

animus. Further, Lewis, the person who made the decision to terminate Wise's employment, was not even aware that Wise had made any complaints of race discrimination at the time he made the decision to terminate her employment. (Facts ¶ 36). Where there is no evidence that the person taking the adverse employment action had any knowledge of plaintiff engaging in any protected activity, there can be no inference that the protected activity was the cause of the adverse action. *See Hazel v. Postmaster General*, 7 F.3d 1, 3 (1st Cir. 1993) (protected activity must be known by alleged retaliator); *Lewis*, 22 F.3d at 24 (analyzing state law claim) ("At a minimum, there must be competent evidence that the alleged retaliators knew of plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged.").

Accordingly, since Wise cannot establish any causal relationship between her engaging in protected activity and her termination, summary judgment on Wise's claims for retaliation is appropriate.

**D.     *Defendant Berkley Is Not Liable for the Actions of Its Subsidiary Patriot***

It is well settled that a parent company is not generally liable for alleged discrimination by its subsidiary company. Under Massachusetts law, a parent corporation and its subsidiary are separate corporate entities. *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24 (1st. Cir. 1980), citing, *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 618-19, 233 N.E.2d 748 (1968). "The rule in the Commonwealth is that corporations are to be regarded as separate entities where there is no compelling reason of equity to look beyond the corporate form for

11

the purpose of defeating fraud or wrong, or for the remedying of injuries."  *Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 550 N.E.2d 127, 134 (1990).

There are three recognized methods for determining whether a parent company can be liable for the unlawful acts of its subsidiary with respect to claims of discrimination: the intergrated-enterprise test, the corporate law "sham" test, and the agency test.  *Romano v. U-Haul Intern.*, 233 F. 3d 655, 665 (1st Cir. 2000).  Under the agency test, a parent company cannot be held liable for its subsidiary's alleged misdeeds unless there is "strong and robust evidence of parental control over the subsidiary, rendering the latter a mere shell."  *Williams v. Mass. Mutual Life Ins.*, No. 03-11470, 2007 WL 518357, *6, *quoting DeCastro v. Sanfill, Inc.*, 198 F.3d 282, 284 (1st Cir. 1999).  Such "strong and robust evidence" does not exist in this case.  At all relevant times Patriot has been legally distinct from The Berkley Group for purposes of Wise's claims.  Wise worked solely for Patriot's Lanesborough location, Vacation Village in the Berkshires.  (Facts ¶¶ 1, 9)  No one from the parent company was actively involved in the day-to-day operations of Patriot d/b/a Vacation Village of the Berkshires regarding employment related issues.  Indeed, no one from Berkley ordered or authorized Wise's termination.  (Facts ¶ 35)  Lewis, who made the decision to terminate Wise, was at all times an employee only of Patriot.  (Facts ¶ 3).  Accordingly, Berkley cannot be held liable for Patriot's alleged unlawful acts under the agency test.  *See Williams*, 2007 WL 518357 at *6 (the mere use of common human resources employees is far from sufficient to justify imposing liability on corporate parent, particularly where common employees did not participate in Plaintiff's discharge).

For similar reasons, liability is not justified under the integrated-enterprise test. In order to determine parent liability under this test, the court must examine four factors: 1) interrelation of operations; 2) common management; 3) centralized control of labor relations, and 4) common ownership. *Id.*, *citing Romano*, 233 F.3d at 664. As set forth above, Berkley and Patriot are completely separate entities, and no one from Berkley was actively involved in the daily operations of Patriot regarding employment related issues. Issues related to discipline and discharge of Patriot employees generally were handled by Patriot employees only, without direction or guidance from Berkley. Therefore, this relationship does not satisfy the criteria of the integrated-enterprise test, and there is no basis for Berkley to be held liable for Patriot's alleged acts under this theory. *See Williams*, at *6, *citing Mas Marques*, 637 F.2d at 27, n.4.

Finally, there is no evidence that Patriot is a "sham" entity formed for the purpose of committing fraud or other misdeeds. In *Mas Marques*, the plaintiff, though employed by a subsidiary, had argued the parent should also be subject to liability for sex and age discrimination because (a) the parent wholly owned the subsidiary; (b) the subsidiary contracted with the parent for accounting and bookkeeping services; and (c) the subsidiary purchased 50 percent of its inventory from the parent. The appellate court rejected her argument outright. Rather, the court noted that the parent's affidavits described a *bona fide* parent-subsidiary relationship, with separate corporate structures, facilities, workforces, business records and financial statements. *Mas Marques*, 637 F.2d at 26-27. There was no evidence that the parent used the subsidiary as its agent or that a "sham"

13

relationship existed between them. *Id.* Accordingly, the court respected the corporate form of the parent and subsidiary and dismissed the discrimination claims against the parent on that basis.

Because Berkley cannot justifiably be held liable under any of these theories of parent liability, summary judgment is appropriate as to Defendant Berkley with respect to Counts I-IV of the Complaint. Furthermore, summary judgment is appropriate as to Defendant Lambert, since Lambert is a corporate officer only of Berkley, and therefore there is no basis for Lambert to be found individually liable for Wise's claims.

### E.  *Summary Judgment Is Appropriate for the Individual Defendants*

#### 1.  There Is No Liability Under Federal Law

Neither the First Circuit nor the Supreme Court has decided the issue of whether a plaintiff suing under Title VII can maintain a suit against an individual in their personal capacity. However, the majority of District Courts in the First Circuit have held that individuals are not liable under Title VII. *Edsall v. Assumption College*, 367 F. Supp. 2d 72, 77 (D. Mass. 2005) (*citing Healy v. Henderson*, 275 F. Supp. 2d 40, 44-45 (D. Mass. 2003). *See also Tomka v. Seiler Corp.*, 66 F.3d 1295 1313-14 (2d Cir. 1995); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir.1996), *cert denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir.1998); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.1994), *cert denied,* 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995); *Bonomolo-*

*Hagen v. Clay Central-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 446 (8th Cir.1997); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 588 (9th Cir.1993), *cert denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir.1996); *Smith v. Lomax*, 45 F.3d 402, 403-404, n. 4 (11th Cir.1995); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.1995), *cert denied,* 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 493, (1995).

Therefore, as a matter of law, Defendants Foster, Landau, Ottino and Lambert cannot be held liable for unlawful discrimination or retaliation under Title VII. *Orell v. UMass Memorial Medical Ctr., Inc.*, 203 F. Supp. 2d 52, 64 (D. Mass. 2002); *Horney v. Westfield Gage Co.*, 95 F. Supp. 2d, 29, 36 (D. Mass. 2000).

    2.    <u>*Defendants Foster, Landau, Ottino and Lambert Did Not Violate M.G.L. 151B*</u>

There is no evidence in the record demonstrating that Foster, Landau, Ottino or Lambert played any role whatsoever in any employment decision affecting Wise and, thus, they cannot be held individually liable for any purportedly discriminatory or retaliatory conduct. Individuals may only be liable under Mass. Gen. L. Ch. 151B for their *own* unlawful conduct. To prevail against an individual, there must be proof that the person charged was actually involved in the allegedly discriminatory act*, i.e.,* that he either committed it or actually aided and abetted the alleged discrimination. *See, Mass. Gen. L. ch. 151B § 4(5); Beaupre v. Cliff Smith & Associates, 50 Mass. App. Ct. 480, 491 (2000), rev. denied, 433 Mass. 1101 (2001). See also Orell,* 203 F. Supp. 2d at 65 (Mass. Gen. L. ch. 151B allows for personal liability under the theory of aiding and abetting).

In order to establish a claim for aiding and abetting discrimination, Wise must be able to show, as a threshold matter, an underlying act of discrimination. *See Abramian v. President & Fellows of Harvard College,* 432 Mass. 107, 122 (2000) (a claim of aiding and abetting discrimination is entirely derivative of the discrimination claim). Since, for the reasons set forth above, Wise's claims against Defendant Patriot are subject to summary judgment, her claims against the individual Defendants also must fail. *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 458, n.7 (2002). *See also Ligenza v. Genesis Health Ventures of Mass., Inc.*, 995 F. Supp. 226, 233 (D. Mass. 1998) (individual defendants cannot be responsible for aiding and abetting unlawful discrimination that did not occur).

However, even should this Court deny Defendant Patriot's motion on Wise's claims against it as a corporate entity, her claims against the individual Defendants still must fail, because she cannot show that Foster, Landau, Ottino or Lambert acted with any discriminatory or retaliatory intent. In its decision in *Beaupre*, the Massachusetts Appeals Court took note of a seminal decision of the MCAD, in which the MCAD outlined the basis for individual liability under Mass. Gen. L. ch. 151B. *Beaupre*, 50 Mass. App. Ct. at 491 n.18*, citing Harmon v. Malden Hosp.*, 19 M.D.L.R. 157, 157-158 (1997)). According to the Appeals Court in *Beaupre*, *Harmon* established the standard for determining liability for aiding and abetting employment discrimination:

> The wrong must be separate and distinct from the claim in main. . . . Further, the complaint must provide credible evidence that the aider and abettor shared an intent to discriminate not unlike that of the alleged principal offender, and that the aider and abettor knew of his or her supporting role in an enterprise designed to deprive an individual of a right guaranteed him or her under G.L. c. 151B.

*Harmon*, 19 M.D.L.R. at 158; see also *Murray v. Sharp Air Freight Services, Inc.*, No. 975878J, 2000 WL 33170935, at *4 (Mass. Super. Dec. 5, 2000).[6]

Here, the Plaintiff has not provided any evidence to indicate that the individual defendants *intended* to discriminate against her, or that they discriminated against her at all. The individual defendants were not involved in Wise's employment. None of them were involved in the decision to terminate Wise, nor were they involved in the enforcement of company policies at Vacation Village with respect to Wise. (Facts ¶¶ 5-8, 35, 37). All four individuals worked and lived in Florida. There is no evidence that Wise ever met or spoke with any of these individuals. There is not even a single allegation that any of the four individuals discriminated or retaliated against Wise, nor is there any admissible evidence that any of the four knew that Wise had engaged in conduct allegedly protected by Mass. Gen. L. Ch. 151B. Accordingly, even if there had been a discriminatory or retaliatory action, which is not the case, no reasonable jury could conclude that the individual Defendants harbored an *intent* to discriminate and that they acted in a supporting role for the purpose of depriving Wise of her rights under Mass. Gen. L. c. 151B, as required to support a claim against them individually. *See Harmon,* 19 MDLR at 158; Murray, 2000 WL 33170935 at *4. *See also Ligenza*, 995 F. Supp. at 233 (summary judgment granted in favor of individual defendants where plaintiff never complained to them about harassment and could not present any evidence that they were otherwise aware of such harassment).

---

[6] For the convenience of the court, copies of the MCAD's decision in *Harmon* and the court's unpublished decision in *Murray* are attached to this Memorandum as Exhibits 1 and 2.

Since no reasonable jury could find that the individual Defendants' actions were related in any way to their own discriminatory or retaliatory animus against Wise, and Wise has not come forward with any evidence that an alter ego theory should apply to the individual Defendants, Wise's claims against Foster, Landau, Ottino and Lambert as individual Defendants must fail.

## *CONCLUSION*

For all of the foregoing reasons, Defendants respectfully request that the Court grant Summary Judgment in their favor on Counts I-IV of Plaintiffs' Second Amended Complaint.

Respectfully submitted,

  /s/ Kimberly A. Klimczuk
Kimberly A. Klimczuk, Esq.
BBO No. 660973
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144
Dated: April 16, 2007                Tel. (413) 737-4753/Fax: (413) 787-1941

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Memorandum in Support of their Motion for Summary Judgment on Counts I-V (Wise's Individual Claims for Relief: Discrimination and Retaliation in Violation of G. L. c. 151B and 42 U. S. C. § 2000e)* was served upon the attorney of record for each other party electronically, on April 16, 2007.

  /s/ Kimberly A. Klimczuk
Kimberly A. Klimczuk, Esq.