UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WISE ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> PATRIOT RESORTS CORP. ET AL., <br><br> Defendants. | Civil Action No. 04-30091-MAP |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED REGARDING COUNTS I-IV (WISE'S INDIVIDUAL CLAIMS FOR RELIEF)**

1. Defendant Patriot Resorts Corporation ("Patriot"), which is located in Lanesborough, Massachusetts, owns and sells timeshare interests at Vacation Village in the Berkshires which is located in Hancock, Massachusetts ("Vacation Village"). (Affidavit of Faith Lippert ("Lippert Aff."), Exhibit ("Ex.") 1, ¶¶ 2-3)

2. Faith Lippert is and has been the Office Manager and Human Resources Representative of Patriot's Lanesborough location and has worked at the Lanesborough location since the company opened in 2001.[1] (Deposition Transcript of Faith Lippert ("Lippert") pp. 8-9)

3. Rodney Lewis ("Lewis") was a Project Director at Patriot's Lanesborough location from September 13, 2002 to September 29, 2006. (Deposition Transcript of Rodney Lewis ("Lewis") pp. 6-7; Lippert Aff. ¶ 5)

4. Patriot is a wholly-owned subsidiary of the Defendant The Berkley Group, Inc. ("Berkley"), which is a foreign corporation headquartered in Fort Lauderdale, Florida. In addition to Patriot, Berkley has several other wholly-owned subsidiaries in different states. (Deposition Transcript of Rebecca Foster ("Foster") pp. 10-12, 21)

---

[1] True and accurate copies of the deposition transcripts referenced herein are attached as follows: Ex. 2 Faith Lippert; Ex. 3 – Rodney Lewis; Ex. 4 – Rebecca Foster; Ex. 5 – Lacrisha Wise; Ex. 6 – Paul Stensland

5. Defendant Rebecca A. Foster ("Foster") at all relevant times was President of both Patriot and Berkley. Foster at all relevant times has resided and worked for Berkley in Florida. Foster has been employed with Berkley for 32 years. (Foster pp. 7, 28)

6. Defendant Marc J. Landau ("Landau"), at all relevant times was Treasurer of both Patriot and Berkley and was Chief Financial Officer of Berkley. Landau at all relevant times has resided and worked for Berkley in Florida. (Foster pp. 13, 19, 28)

7. Defendant J.P. Ottino, III ("Ottino") at all relevant times was a Vice President – Corporate Acquisitions of Berkley and a Director and Vice President of Patriot. Ottino at all relevant times has resided and worked for Berkley in Florida. (Foster pp. 13, 28)

8. Defendant James E. Lambert ("Lambert") at all relevant times was Chairman of the Board and CEO of Berkley, only. Lambert at all relevant times has resided in Florida and has worked on a part-time basis providing sales and marketing expertise to Berkley's Board of Directors. (Foster pp. 13-14)

9. Wise began employment with Patriot as a timeshare salesperson on or around February 8, 2002. (Deposition Transcript of Lacrisha Wise ("Wise") p. 73, Lippert Aff. ¶ 4)

10. Patriot's Employment Contract for Sales Representatives, including Wise, required sales employees to maintain insurance on their personal vehicles at specific levels, and to provide "appropriate certificates evidencing said insurance". On February 8, 2002, Wise executed a document entitled "Enforcement of Car Insurance Policy" which clearly set forth the policy and further indicated that the policy will be "strictly enforced". (Lippert Aff. ¶ 14; Lippert Aff., Exs. A, E)

11. Sales Representatives were also required to have a valid drivers license. (Lippert Aff., Ex. E)

12. When Wise arrived at work in a car that wasn't hers, Lewis asked Wise to verify that the car she was driving met the insurance requirements specified in Patriot's company policy. (Wise pp. 100-101)

13. Sam Barnes and Ron Ferreira are Caucasian males who were employed with Patriot as sales representatives during the time period relevant to the Complaint. (Lippert Aff. ¶¶ 6-8)

14. Sam Barnes failed to provide up-to-date documentation of his driver's license and automobile insurance information. As a result, he was transferred to the Exit Department, since sales representatives in the Exit Department do not need to drive customers on tours. (Lippert pp. 111-113)

15. Ron Ferreira failed to provide up-to-date documentation of his driver's license and automobile insurance information. As a result, he was transferred to the Exit Department, since sales representatives in the Exit Department do not need to drive customers on tours. (Lippert pp. 111-113)

16. On May 11, 2003, Patriot issued to all employees a memorandum setting forth the dress code policy for Vacation Village in the Berkshires. (Lippert Aff. ¶ 15; Lippert Aff., Ex. B) The dress code policy prohibited, among other things, spaghetti straps. (Lippert Aff., Ex. B)

17. Wise received a copy of this policy. (Lippert Aff., Ex. B)

18. On May 18, 2003, Wise wore a spaghetti strap dress to work. (Wise p. 156, Lippert pp. 210-211). Wise was asked to either put on a sweater to cover the spaghetti straps or change her outfit. (Wise p. 156; Lippert p. 212). Wise refused to put on a sweater, and she was issued a written warning for violating the dress code. (Lippert pp. 212-213; Lippert Aff Ex. D).

19. Chelsea Wright, a Caucasian employee, was sent home in May 2003 for wearing flip-flops to work in violation of the dress code policy. (Lippert Aff. ¶ 12; Lippert Aff., Ex. F; Lippert p. 211). On another occasion, Ms. Wright was asked to cover a low-cut top with a sweater, which she did. (Lippert Aff., Ex. F; Lippert p. 211)

20. Erica Reu, a Caucasian employee, was sent home in May 2003 for violating the dress code policy. (Lippert Aff. ¶ 10; Lippert Aff., Ex. F; Lippert p. 211).

21. Due to the nature of Patriot's timeshare business, it is essential that sales representatives exhibit regular, predictable attendance and punctuality to ensure that Patriot has enough staff to give prompt tours to all prospective buyers. (Lippert Aff. ¶ 12)

22. At all times relevant to this action, Patriot's company policy limited sales personnel to fifteen absences per year. The policy explicitly stated that this policy applied to absences for any reason, without exception, including "vacation days, sick days, doctor's appointments, emergencies, car problems, etc."[2] (Lippert Aff., Ex. C)

---

[2] Statutorily protected absences such as FMLA leaves, jury duty absences, and absences due to Workers' Compensation injuries, were excluded from this policy.

3

23. Patriot's policy further limited sales personnel to one absence per month during the months of January, February, March, July, August and October and five absences per month during the remaining months.  (Lippert Aff., Ex. C)

24. Patriot's attendance policy was not strictly enforced in 2001 and 2002. (Deposition Transcript of Rodney Lewis ("Lewis") pp. 116-117)

25. Wise was absent 49 times in 2002.  (Lippert Aff., Ex. I)

26. While other employees had exceeded fifteen absences in a year, no employee had been absent as many times as Wise.  (Lewis p. 118)

27. In November 2002, Patriot held a meeting and informed each Sales Employee, including Wise, that the attendance policy would be strictly enforced from that point forward.  (Deposition Transcript of Paul Stensland ("Stensland") p.61)

28. Each Sales Employee was given a copy of the attendance policy, which stated that employees were entitled to no more than fifteen absences per year.  Further, all Sales Employees were required to sign a memorandum that stated "This is the written company policy and it is to be followed" and that the employee read and understood the attendance policy.  (Lippert Aff. ¶ 16; Lippert Aff., Ex. C)

29. Wise received and signed a copy of this memorandum.  (Lippert Aff., Ex. C)

30. Wise was absent nine times between January 1, 2003 and February 15, 2003.  She arrived late for work on eight occasions during that same period. (Lippert Aff., Ex. J)

31. In March 2003, Wise was absent an additional five times and arrived late for work once.  (Lippert Aff., Ex. J)

32. Over the next months, Wise arrived late for work seven times, and she did not report to work on May 12, 2003, bringing her to fifteen absences for the year, the maximum number of absences allowed under Patriot's attendance policy.  (Lippert Aff., Exs. C, J)

33. On May 31, 2003, Wise arrived to work at approximately 2:45 p.m.  (Lippert Aff., Ex. H)

34. Wise did not report to work on June 7, 2003, thus exceeding her fifteen allowed absences for the year.  (Lippert Aff., Ex. J; Lewis p. 126)

4

35. Based on Wise's excessive absenteeism, Lewis decided to terminate Wise's employment. (Lewis pp. 113-114; Stensland p. 70) Stensland telephoned Wise that afternoon and told her that Patriot had terminated her employment due to her excessive absences. (Stensland p. 70).

36. At the time of Wise's termination, Lewis was not aware that Wise had made any complaints of discrimination, either internally or to the Massachusetts Commission Against Discrimination. (Lewis pp. 134-135)

37. Foster was not involved with Wise's termination. (Foster pp.178-179)

38. Foster did not know about Wise's termination until Lippert notified her by email on June 8, 2003, after Wise had been terminated. (Foster pp. 161, 178-179)

39. Foster did not know that Wise had made any complaints of discrimination about Patriot until after Wise's termination. (Foster p. 160)

40. Lippert felt personally threatened by Wise. Wise made her nervous and uncomfortable. (Lippert pp. 172-173)

41. When Patriot tried to enforce company policies, Lacrisha frequently became angry and defensive, and claimed that she was being "picked on." (Lippert Aff., Ex. H)

42. Wise's Charge of Discrimination with the Massachusetts Commission Against Discrimination was served on Patriot on June 18, 2003. (Lippert Aff., Ex. G )

Respectfully submitted,

  /s/ Kimberly A. Klimczuk
Kimberly A. Klimczuk, Esq.
BBO No. 660973
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts  01144
Dated: April 16, 2007           Tel. (413) 737-4753/Fax: (413) 787-1941

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Statement of Material Facts as to Which there is no Genuine Issue to be Tried Regarding Counts I-IV (Wise's Individual Claims for Relief)* was served upon the attorney of record for each other party electronically, on April 16, 2007.

    /s/ Kimberly A. Klimczuk
Kimberly A. Klimczuk, Esq.