UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Wise et al.,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>Patriot Resorts Corp. et al.,<br><br>　　　　　　　Defendants. | Civil Action No.  04-30091-MAP |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON COUNT VI (MASSACONI'S INDIVIDUAL CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF G. L. c. 149, §148A)**

Plaintiff Michael Massaconi ("Massaconi") was hired as a Timeshare Sales Representative at Defendant, Patriot Resorts Corporation ("Patriot") on August 6, 2001.  (Defendant's Statement of Material Facts Regarding Count VI ("Facts") ¶ 8).  On July 19, 2002, Massaconi was promoted to Sales Manager.  (Id.)  Due to poor sales ratios, however, Massaconi, along with others, received Probation and ultimately was demoted from Sales Manager to Sales Representative on October 30, 2004.  (Facts ¶¶ 14, 16, 18).  Massaconi's poor performance as a sales representative continued, however, and he and another employee were terminated on March 5, 2005 due to their very poor sales ratios.  (Facts ¶ 20).

Massaconi maintains that his poor sales ratios were not the cause of his separation from employment with Patriot, but rather, in Count VI of the Second Amended Complaint ("Complaint"), he claims that the Defendants, Patriot, The Berkley Group, Inc. ("Berkley"), Marc J. Landau ("Landau"), J.P. Ottino, III ("Ottino"),

Rebecca A. Foster ("Foster"), and James E. Lambert ("Lambert"), terminated him in violation of Mass. Gen. Laws ch. 149, §148A, for asserting his rights under Massachusetts Wage Act, specifically, Mass. Gen. Laws ch. 149, §§148, 150, and 151. As set forth below, there is no admissible evidence in the record demonstrating that Massaconi was subjected to an adverse employment action as the result of his involvement in protected activity within the meaning of the Wage Act, and, as a result, summary judgment for Defendants on Count VI is appropriate. Additionally, Defendants Berkley, Foster, Landau, Ottino, and Lambert are entitled to summary judgment because they are not proper parties to these claims.

## *LEGAL ARGUMENT*

### A.  *Summary Judgment Standard*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the court must construe the record and all reasonable inferences from it in the light most favorable to the party opposing the motion. *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir.2004). A party who wishes to avoid summary judgment on a claim on which he or it bears the burden of proof at trial must produce enough evidence to get to a jury. *Rogan v. City of*

*Boston,* 267 F.3d 24, 27 (1st Cir.2001). "This obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.* Massaconi's individual claim, which is asserted in Count VI, is ripe for summary judgment.

### B.   *Massaconi Failed to Satisfy Statutory Prerequisites*

Defendants are entitled to summary judgment on Massaconi's retaliation claim because he did not first present that claim to the Office of the Attorney General ("OAG"). Massachusetts law protects employees who pursue their rights under the wages and hours provisions of Chapter 149 from retaliation. Specifically, § 148A provides as follows:

> No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter. Any employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint to the attorney general or any other person, or assists the attorney general in any investigation under this chapter, or has instituted, or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceedings, shall have violated this section....

Mass. Gen. Laws ch. 149, § 148A. Mass. Gen. Laws ch. 149, §150 provides an aggrieved employee with a private right of action to enforce the anti-retaliation provision. The statutory prerequisites to bringing suit include the filing of a complaint with the OAG that includes a claim for retaliation against the employer. *Sterling Research, Inc. v. Pietrobono*, 2005 WL 3116758, *14-15 (D. Mass. 2005). In *Sterling Research*, the District Court granted summary judgment for the defendant-employer on certain wage claims where the plaintiff-employee, who had filed a complaint with the OAG, failed to include those claims in his complaint to OAG. *Id.*

3

at *11-12. In reaching its conclusion to do so, the court pointed out that Section 150 of the Wage Act "implicitly requires that the complaint 'adequately describe the substance of the abuse' . . . . If it did not, the purpose of the statutory requirement—to provide notice of the Attorney General that an offense had occurred and to allow him to decide whether to enforce the statute—would be undermined." *Id.* at *11 (citations omitted). Further, while the court noted that "some level of generality may be tolerated in addressing a complaint under § 150 . . . the statute requires reasonable notice." *Id.* at 12. While the *Sterling Research* plaintiff's Non-Payment of Wage Complaint Form claimed the defendant owed him for medical reimbursement in an amount over $3,300, bonuses and stock; it did not, however, "mention, or even suggest" that he had received late payment of salary commissions, medical insurance reimbursement premiums or had not been paid for certain days. Accordingly, the court granted summary judgment for the employer on these latter claims on the ground that the employee failed to satisfy the statutory prerequisite of providing the OAG with any information as to those claims. *Id.*

Massaconi has come forward with no evidence demonstrating he complained about retaliation in violation of the Wage Act to the OAG. Patriot has no recollection of ever receiving a complaint from the OAG with such a claim. (Facts ¶ 26). Massaconi did not allege in his Second Amended Complaint that he brought his individual retaliation complaint to the OAG. Because Massaconi failed to include any allegation whatsoever in his complaint to the Attorney General that the Defendants discharged or discriminated against him in any manner because he sought his rights under the Wage Act, summary judgment for Defendants on Count

4

VI is appropriate. *Id.*; *Daly v. Norton Co.*, 1999 WL 1204011, *2 (Mass. Super. Nov. 15, 1999) (dismissing claim for unpaid wages for failure to satisfy statutory prerequisites); *Axton-Cross Co. v. Blanchette,* 2 Mass. L. Rptr. 646 (1994) (dismissing wage claim because plaintiff did not allege facts indicating he had followed statutory requirements); *Melley v. Guillette Corp.*, 27 Mass. 1004 (1986) (affirming dismissal of Chapter 151B because plaintiff failed to follow the statutory procedures); *Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 286-87 (1985) (dismissing Chapter 93A claim for plaintiff's failure to alleged and prove the sending of a demand letter, or in the alternative, for an inadequate demand letter); *Daniels v. Contributory Retirement Appeal Bd.*, 418 Mass. 721, 721-22 (1994)(affirming dismissal of administrative appeal because plaintiff failed to exhaust administrative remedies).

### C.     *Defendant Berkley Is Not Liable for the Actions of Its Subsidiary Patriot*

Berkley is not liable for Patriot's actions simply because it is the parent corporation. As noted by this Court in the recent decision, *Williams v. Mass Mutual Life Ins.Co.,* No. 03-11470-MAP, 2007 WL 518357 (D. Mass. Feb. 20, 2007), the First Circuit's decision in *Romano v. U-Haul Int'l*, 233 F.3d 655, 665 (1st Cir. 2000), *cert. denied* 534 U.S. 815 (2001), sets forth three tests for analyzing when a parent company may be liable for the acts of its subsidiary: the integrated-enterprise test, the "sham" test, and the agency test.

Under any test, Berkley was not Massaconi's employer. Firstly, the integrated-enterprise test determines whether two entities, while separate, jointly control the terms and conditions of employment. *Romano,* 233 F.3d at 662 n.5. The

integrated-enterprise test examines four factors (1) interrelation of operations; (2) common management; (3) centralized control of labor relations;[1] and (4) common ownership. These factors are to be applied flexibly looking at the parent's participation in the "total employment process." *Id.* at 664. Secondly, under the agency test, a parent company is liable for its subsidiary's purported wrongdoings only when there is "strong and robust evidence of parental control over the subsidiary, rendering the latter a mere shell." *Mass Mutual*, 2007 WL 518357, *6 (citations and quotations omitted). Thirdly, under the "sham" test, a parent corporation will not be held responsible for its subsidiary's acts unless the separateness of the entities is a "sham." Where there is a *bona fide* parent-subsidiary relationship, with separate corporate structures, facilities, workforces, business records and financial statements, the parent will not be liable for allegedly discriminatory acts of its subsidiary. *See Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24 (1st. Cir. 1980). Summary judgment for Berkley is appropriate regardless of what test is applied.

Patriot exercised complete control over Massaconi's employment process. Massaconi became employed with Patriot and entered into a written employment agreement with Patriot. (Facts ¶ 9). Massaconi has come forward with no evidence that Berkley employees participated in any manner in the decision-making process leading to any adverse employment action Massaconi claims to have suffered. Rather, Massaconi's own testimony establishes that Berkley did not exercise any control over Massaconi's employment. It was William Rauer, who oversees the

---

[1] A parent's general policy statements are not enough to demonstrate its control over labor relations: A parent must control the subsidiary's day-to-day employment decisions. *Romano*, 233 F.3d at 666.

sales operations and sales personnel of Patriot's Vacation Village in the Berkshire's location ("Vacation Village"), who promoted Massaconi in July 2002, put him on probation in July 2004, and terminated him in March 2005. (Facts ¶¶ 11, 14, 20). When Massaconi had concerns about his employment, he brought them to the attention of Rauer, Patriot's Line Director Gordon Leete ("Leete"), Patriot's Project Director Rodney Lewis ("Lewis"), or Patriot's Human Resources Representative and Office Manager Faith Lippert ("Lippert"). (Facts ¶¶ 12, 13, 21). Massaconi never even spoke with Foster, Berkley's President, and he did not contact her with any issues regarding his employment. (Facts ¶ 22). There is no evidence that Massaconi ever met or spoke with Ottino, Lambert, or Landau, all of whom live and work for Berkley in Florida.

### D.     *Summary Judgment for the Individual Defendants Is Appropriate*

There is no evidence in the record demonstrating that Foster, Landau, Ottino or Lambert played any role whatsoever in any employment decision affecting Massaconi and, thus, they should not be held individually liable for any purportedly retaliatory conduct. All four individuals worked and lived in Florida. There is no evidence that Massaconi ever met or spoke with any of these individuals, and Massaconi admitted that he did not bring his concerns to Foster. There is not even a single allegation that any of the four individuals retaliated against Massaconi, nor is there any admissible evidence that any of the four knew that Massaconi had engaged in conduct allegedly protected by §148A.

Further, Landau, Foster, Ottino and Lambert are not liable by virtue of their roles as officers in Patriot and/or Berkeley. Chapter 149, §148 sets forth when

7

wages must be paid by an employer. Section 148 also provides that "[n]o person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty. The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation *within the meaning of this section.*" M.G.L. ch. 149, §148 (emphasis added). Section 148A, however, which prohibits retaliation and/or discrimination against one who seeks his or her rights under the wages or hours provisions of Chapter 149, does not have a similarly inclusive definition assigning personal liability to certain officers of the corporation. When particular language is included in one section of a statute but omitted in another, it is generally presumed that the legislature acted intentionally and purposely in the disparate inclusion or exclusion. *Leclair v. Town of Norwell*, 430 Mass. 328, 336 (1999). Further, at common law, courts reach to get beyond the corporate form to get at its officers only in rare situations. *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619-20 (1968). Statutes in derogation of the common law are strictly construed. *Kerins v. Lima*, 425 Mass. 108, 110 (1997). As the individual Defendants had no knowledge of Massaconi's purportedly protected conduct, did not retaliate against Massaconi and are not liable by virtue of their officer status, summary judgment in their favor on Count VI is warranted.

### E.  *Defendants Ottino and Lambert Are Not Proper Defendants under Any Theory*

Even if the definition of employer under Chapter 149 § 148 applied to §148A, Ottino and Lambert still could not be liable for retaliation. In *Weidemann v. The*

8

*Bradford Group, Inc.*, 444 Mass. 698, 711, 831 N.E.2d 304, 312 (2005), the Supreme Judicial Court concluded that "a manager is someone who controls, directs and participates to a substantial degree in formulating and determining policy of a corporation." *Id.* at 314. Further, "[m]erely holding a managerial position over some branch, division, or office of a corporation does not, by itself, mean that the manager has the 'management' of the 'corporation' as a whole." *Id.* Under the standard enumerated in *Weidemann*, neither Defendant Ottino nor Defendant Lambert are deemed to be "employers" within the Payment of Wages Act.

Defendant Ottino was not the president or treasurer of Patriot or Berkley. (Facts ¶ 6). Ottino at all relevant times was a Vice President – Corporate Acquisitions of Berkley and a Director and Vice President of Patriot. Ottino at all relevant times has resided and worked for Berkley in Florida. (Id.). Further, Plaintiffs have come forward with absolutely no evidence whatsoever that Ottino controlled, directed or participated to a substantial degree in formulating and determining Patriot or Berkley's corporate policy. Similarly, Defendant Lambert at all relevant times was Chairman of the Board and CEO of Berkley, only. (Facts ¶ 7). Lambert at all relevant times has resided in Florida and has worked on a part-time basis providing sales and marketing expertise to Berkley's Board of Directors. (Id.). Plaintiffs have not come forward with any evidence that Lambert was either a manager or agent within the meaning of the Payment of Wages Act. Accordingly, Ottino and Lambert cannot be held individually liable under the Payment of Wages Act and are not proper defendants to this lawsuit. Further, there is absolutely no

evidence that these individuals participated in any allegedly retaliatory conduct. Accordingly, summary judgment should be granted in their favor.

### F.     Defendant(s)[2] Did Not Retaliate Against Massaconi

To prove a Wage Act retaliation case, a plaintiff must establish that he (1) sought his rights under the wages and hours provisions of Chapter 149; (2) the employer discharged or in any other manner discriminated against the employee; and (3) the discharge or discrimination was because such employee made a complaint to the attorney general or the employer.  *See, e.g. Smith v. Winter Place, LLC*, 447 Mass. 363, 366, 851 N.E.2d 417, 420-21 (2006).  The third element requires a causal connection between the protected conduct and the adverse action. *Blackie v. Maine,* 75 F.3d 716, 722 (1st Cir. 1996); *See also Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165 (2000) (noting that the Fair Labor Standards Act may provide guidance as to interpretation of Massachusetts Wage Act's provisions).  If the plaintiff is able to set forth a discriminatory or retaliatory reason, the burden shifts to the defendants to show a legitimate reason for the adverse action.  *See, e.g., Cheng v. IDE Associates, Inc.*, 2000 WL 1029219, *4 (D. Mass. 2000) (applying the *McDonnell Douglas* burden-shifting paradigm to FLSA retaliation claim).  Once the defendants have established a legitimate reason for the adverse action, the plaintiff may prevail only if he can show that the employer's articulated reason is not the real reason but is instead a pretext for illegal retaliation.  *Kearney v. Town of Wareham*, 316 F.3d 18, 25 (1st Cir. 2002).  The undisputed evidence is clear:

---

[2] As discussed in Sections C and D, *supra*, not all Defendants are proper parties to this lawsuit. Summary judgment for Defendants Berkley, Foster, Landau, Ottino and Lambert is appropriate.

10

Patriot did not discharge or in any other manner discriminate against Massaconi because he engaged in statutorily protected activity.

### 1. *Massaconi Was Demoted and Terminated Due to Poor Sales Ratios*

Massaconi was demoted pursuant to Patriot's Uniform Policy for Sales Managers Sales Performance. (Facts ¶ 14, 16). Massaconi admits that his sales numbers were not sufficient at the time he was demoted from Sales Manager to Sales Representative (Facts ¶ 17). In addition, he acknowledges that other Sales Managers were demoted as a result of their poor sales ratios. (Facts ¶ 18). At the time of his termination, only one sales representative, Bonnie Ecklund, had a worse sales ratio than Massaconi, and she was fired on the same day as Massaconi due to her poor sales performance. (Facts ¶¶ 19, 20). Massaconi's own testimony demonstrates that Massaconi's poor sales numbers resulted in his termination. Terminating an employee for poor performance is a legitimate, non-discriminatory reason for separation an employee. *See, e.g., Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16-17 (1st Cir. 1997); *Ianette v. Putnam Investments, Inc.*, 183 F.Supp.2d 415, 426-427 (D. Mass. 2002).

### 2. *Massaconi Cannot Establish that Patriot's Legitimate Reason for His Termination Was a Pretext to Mask Unlawful Retaliation*

Massaconi has the burden of demonstrating that Patriot's reason for terminating his employment, i.e. his poor sales ratios, was a pretext for discrimination for having engaged in statutorily protected activity. "[A] reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742 (1993). A reason is not shown false by

11

merely questioning the employer's credibility.  *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260-261 n. 3 (1st Cir.1994).  Massaconi has put forth no admissible evidence that his termination was because he engaged in protected activity rather than because of his poor sales ratios.  Massaconi's allegations of retaliation are based solely on speculation and one isolated, inadmissible[3] remark made by someone who was not involved in the decision to terminate his employment.  (Facts ¶¶ 24, 25).  Even if admissible, statements by decisionmakers who are not themselves a moving force in the decision to terminate an employee are ordinarily insufficient to prove an employer's discriminatory animus.  *Williams v. Raytheon Co.*, 45 F.Supp.2d 124, 131 (D. Mass 1999), *citing Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 13 (1st Cir. 1998).  *See also Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, n.8 (1st Cir. 1998) (it is appropriate to discount stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself).  In addition, Massaconi offers no admissible evidence that Rauer or Lewis knew that Massaconi was involved in any lawsuit at any time prior to Massaconi's termination.  Moreover, Massaconi cannot identify a similarly-situated employee, i.e., one whose sales ratios were as bad as his were over a similar period of time, who was not demoted or terminated.  On the contrary, Massaconi identifies several individuals who were demoted for poor sales ratios, and he admits that no one at Patriot had sales numbers worse than he and Ecklund.  (Facts ¶¶ 18, 19).  The existence of a retaliatory motive cannot overcome a showing

---

[3] Massaconi alleges that Lewis told him "there was talk" that Patriot was trying to get rid of people who filed a lawsuit against the company.  (Complaint ¶ 67).  Lewis' statement about what other, unidentified people were saying about Patriot's motives is inadmissible hearsay and may not be offered to prove that Patriot was, in fact, trying to get rid of people who filed a lawsuit against the company.

12

Not applicable

that an employee's dismissal resulted from a policy that applied to all employees. *See Champagne v. Servistar Corp.*, 138 F.3d 7, 13 (1st Cir. 1998). *See also DeNovellis v. Shalala*, 135 F.3d 58, 66 (1st Cir. 1998) (even if personal animosity exists, employee is not entitled to relief where the animosity did not cause the employee to be treated differently than similarly-situated co-workers); *Blackie v. State of Maine,* 75 F.3d 716, 724 (1st Cir. 1996) (Wage Act does not "provide a shield against legitimate employer actions."). Since there is no evidence to support Massaconi's contention that his demotion and/or termination were due to retaliation, summary judgment is appropriate on Count VI.

***CONCLUSION***

For all of the foregoing reasons, Defendants respectfully request that the Court grant Summary Judgment in their favor on Count VI of Plaintiffs' Second Amended Complaint.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  |   /s/ Kimberly A. Klimczuk<br>Kimberly A. Klimczuk, Esq.<br>BBO No. 660773<br>Counsel for Defendants<br>Skoler, Abbott & Presser, P.C.<br>One Monarch Place, Suite 2000<br>Springfield, Massachusetts  01144 |
| Dated: April 16, 2007 | Tel. (413) 737-4753/Fax: (413) 787-1941 |

CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the foregoing *Defendants' Memorandum In Support Of Their Motion For Summary Judgment On Count VI (Massaconi's Individual Claim For Relief: Retaliation In Violation Of G. L. c.149, §148A)* was served upon the attorney of record for each other party electronically, on April 16, 2007.

                                                        /s/ Kimberly A. Klimczuk
                                                        Kimberly A. Klimczuk, Esq.