UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBIN, on behalf of themselves and on behalf of others who are similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III REBECCA A FOSTER. and JAMES E. LAMBERT, <br><br> Defendants. | DOCKET NO. 04-cv-30091-MAP |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I.   INTRODUCTION

Michael Massaconi commenced this lawsuit on behalf of a certified class of salespersons at the Vacation Village timeshare resort in the Berkshires because of the defendants' violations of federal and state wage laws. Additionally, Mr. Massaconi brought an individual action against the defendants for retaliating against him after he complained about the defendants' violations of the federal and state wage laws.

The defendants have now moved for summary judgment on the individual retaliation claims raised by Mr. Massaconi. For the reasons set forth below, the defendants are not entitled to judgment against Mr. Massaconi under Fed. R. Civ. P. 56.

## II.     FACTUAL BACKGROUND

Michael Massaconi has submitted with this Memorandum his Response to the defendants' Statement of Material Facts.  His response, including the facts submitted by him, are incorporated into this Memorandum.

## III.    SUMMARY JUDGMENT STANDARD IN DISCRIMINATION CASES

Under the Federal Rules of Civil Procedure, summary judgment is appropriate only when all the relevant pleadings and supporting documents, viewed in a light most favorable to the non-moving party, present no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995). All reasonable inferences which may be drawn from the record before the court are to be indulged in favor of the nonmoving party. *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir. 1988).

The movant bears the initial burden of proving that no genuine issues of material fact exist for trial.  *Sands v. Ridefilm Corp.,* 212 F.3d 657, 661 (1st Cir. 2000).  *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323 -324 (1986). The First Circuit has defined a "genuine issue of material fact" as that which "might affect the outcome of the suit under the governing law." In deciding a motion for summary judgment, "the court must ask 'whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.'" *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir. 1988), *quoting, Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986) (internal quotations omitted).  In other words, "[a]n issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Oliver*, 846 F.2d at 105 (citations omitted).

In general, summary judgment is an inappropriate tool for resolving employment discrimination claims and their analogue, retaliation claims. Retaliation claims, like discrimination cases, often involve issues of motivation and intent which can only be proved through reliance on circumstantial evidence. Such determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the jury. *See e.g., LeBlanc v. Great American Ins. Co*., 6 F.3d 836, 840 (1st Cir. 1993), *cert. denied*, 128 L. Ed. 2d 72, 114 S. Ct. 1398 (1994); *Waltman v. International Paper Co.*, 875 F.2d 468 (5th Cir. 1989). Thus, courts should exercise particular caution before granting summary judgment for employers on such issues of pretext, motive and intent. *Santiago-Ramos v. Centennial P,R, Wireless Corp.*, 217 F. 3d 46, 54 (1st Cir. 2000). The reason for this caution is "because of the availability of seemingly neutral rationales under which an employer can hide its discriminatory intent." *Hodgens v. General Dynamics Corp.*, 144 F.2d 151, 167 (1st Cir. 1998).

## IV.    LEGAL ARGUMENT

### A.    A REASONABLE JURY COULD CONCLUDE THAT THE DEFENDANTS RETALIATED AGAINST MICHAEL MASSACONI FOR HIS COMPLAINTS ABOUT HIS COMPENSATION UNDER MASSACHUSETTS LAW

Under c. 149, § 148A, "no employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provision of this chapter." The statute goes on to say that "any employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint to the attorney general or other person….shall have violated this section…" To prove his case, then, Mr. Massaconi must show that he took some action to seek his rights concerning his wages, and that he was discriminated against because he did so.

      A.      <u>Michael Massaconi Asserted His Rights Under the Wage Act</u>

Mr. Massaconi communicated directly to his superiors Bill Rauer and Rod Lewis at Vacation Village his belief that the defendants were not complying with the state's wage laws, and he constantly questioned Mr. Lewis about problems with his compensation. Second Supplemental Affidavit of Michael Massaconi, ¶¶ 10-11; *see also*, Affidavit of Joel Feldman, Exhibit 1, Deposition of Michael Massaconi p.81-82 and Affidavit of Joel Feldman, Exhibit 2, Deposition of Rod Lewis, pp. 57-58. Mr. Massaconi also complained to his immediate supervisor, the "line director" Gordon Leete, about the failure of the company to pay him the minimum wage. Affidavit of Joel Feldman, Exhibit 3, Deposition of Gordon Leete, pp. 8, 11, 12. Mr. Leete then repeatedly spoke to Mr. Rauer, Mr. Lewis and Faith Lippert about the compensation problems raised by Mr. Massaconi and others. *Id.* at pp. 17, 19.

This kind of activity constitutes action on the part of Mr. Massaconi seeking his rights under the statute. "A complaint made to an employer (or a manager of the employer) by an employee who reasonably believes that the wages he or she has been paid violate such laws readily qualifies as such an "action"." *Smith v. Winter Place LLC*, 447 Mass. 363, 367 (2006). The complaint so clearly qualifies as this sort of "action" the defendants have not contested whether evidence exists on this point.

      B.      <u>The Defendants Discriminated and Discharged Mr. Massaconi Because of His Complaints and the Filing of This Lawsuit</u>

        1.      <u>Direct Evidence Shows that Mr. Massaconi was Disciplined and Terminated Because of This Lawsuit</u>

The defendants apparently view this case through the prism of indirect evidence, which leads them to claim that the "McDonnell Douglas burden-shifting paradigm" should apply. See, Defendants' Memorandum in Support of Their Motion for Summary Judgment on Count VI, p. 10 ("Defendants' Memorandum"). The defendants simply ignore the direct

evidence produced during discovery which shows that the defendants disciplined and terminated Mr. Massaconi because of his wage complaints and this lawsuit.

In 2004 and 2005, the defendants disciplined Mr. Massaconi, demoted him and ultimately terminated him. During the course of the discipline and demotion, Mr. Massaconi went to the project director, Rod Lewis and asserted that the discipline, and failure to end the discipline and provide Mr. Massaconi his job back as a sales manager, was done because of Mr. Massaconi's complaints and this lawsuit (from Affidavit of Joel Feldman, Exhibit 1, Deposition of Michael Massaconi, pp. 81-85).

> Massaconi Answer (p. 81): … I spoke to Mr. Lewis about reprising. And I told him what they were doing to me was discrimination and it was because I filed this lawsuit. And his answer to me was you're correct.
>
> ……………………………………………………………..
>
> Question: He said that they were retaliating against you because of the lawsuit?
>
> Answer: I had told him it was because of reprisal, okay? The way I was being treated. And he looked at me right in my eyes and told me yes, and that was between him and I.
>
> ……………………………………………………………
> Question (p. 83): …did Mr. Rauer tell you he was aware of your lawsuit?
>
> Answer: Yes.
>
> Question: He told you that?
>
> Answer: Yes.
>
> ……………………………………………………………
> Question (p. 85) And did he [Mr. Rauer] tell you I know that you are participating in a lawsuit?
>
> Answer: Yes.
>
> Question: In those words?

    Answer: Yes.

  Mr. Lewis was the project director of Vacation Village, in charge of the operations of the work site. Mr. Lewis directly told Mr. Massaconi that the disciplinary treatment he was indisputably receiving from Vacation Village was discrimination and a reprisal. And Mr. Lewis' admission carries great weight, as it was he who personally approved the termination of Mr. Massaconi from Vacation Village. Affidavit of Joel Feldman, Exhibit 2, Deposition of Rod Lewis, pp. 151-152. The admission constitutes direct evidence of discrimination/reprisal because of an action taken by Mr. Massaconi to assert his rights under c. 149. *Id.* at pp.152-153. Both Mr. Rauer and Mr. Lewis knew of the lawsuit (which was filed on May 11, 2004) prior to Mr. Massaconi's termination in March 2005 and during a period when Mr. Massaconi was seeking his managers position back after being demoted. And in point of fact, Mr. Massaconi's lawsuit was filed before he was disciplined, as the demotions occurred on July 11, 2004 and in September, 2004, according to the Defendants' Statement of Material Facts.

  Mr. Lewis' admission to Mr. Massaconi also comports with the statement of Mr. Lewis to a group of managers that, anyone involved with or receiving money from the lawsuit, was subject to termination. Will Steele, a manager at Vacation Village at the time of the demotion of Mr. Massaconi, attended a meeting at which managers and Mr. Lewis were discussing this lawsuit. Affidavit of Will Steele, ¶ 4. Mr. Lewis then said that anyone who took money from the lawsuit would be terminated because they would not be considered "company people", to which the other managers at the meeting said that Mr. Lewis did not need to be worried about them. Affidavit of Will Steele, ¶ 4.

6

Confirmation that this was the policy of Vacation Village defendants towards participants in the lawsuit comes from *Mr. Lewis himself* (Affidavit of Joel Feldman, Exhibit 2, Deposition of Rod Lewis, p. 152).

> Question (p. 152): … Do you remember telling anyone that the company was trying to get rid of people who were involved with this lawsuit?
>
> Answer: I remember saying that, and it was—that's kind of out of context.
>
> Question: What was the context?
>
> Answer: In my own misguided efforts to keep people from suing the company, because the company is employee-owned, if they sue the company, they sue me.

Mr. Lewis, the project director with the authority to terminate sales persons, told Mr. Massaconi that the company would be getting rid of people involved with the lawsuit in order to stop people from bringing such suits, i.e. to chill their right to obtain redress against the company for violations of the state wage law. Subsequent to Mr. Lewis telling Mr. Massaconi this, after the lawsuit was filed in May 11, 2004, Mr. Massaconi was terminated, after being disciplined twice. *Id.* at p. 152; Defendants' Statement of Material Facts.

This evidence is direct evidence of reprisal, provided through the words of Mr. Lewis, the highest ranking manager based at Vacation Village, and is sufficient to show that Mr. Massaconi's discipline and his ultimate termination were based upon complaints made by Mr. Massaconi through his lawsuit and directly to his supervisors.

2. <u>Mr. Massaconi Has Evidence that the Low Sales Ratios Provided as Grounds for Termination and Discipline Were a Pretext for Retaliation/Discrimination</u>

Even if the McDonnell Douglas burden shifting regime governs Mr. Massaconi's retaliation claim, as the defendants claim (Defendants' Memo. at p. 10), Mr. Massaconi has

provided facts which, if believed, would prove that the grounds for his discipline and termination were pretextual.

The defendants argue that Mr. Massaconi's dismissal "resulted from a policy that applied to all employees". Defendants' Memo at p. 12. According to the defendants, his dismissal was based entirely on his "poor sales numbers", resulting in discipline and termination based upon some uniform policy. Defendants' Memo at p. 11.

But this assertion is entirely disputed by Mr. Massaconi, who has submitted facts contradicting the defendants' position. Ken Flanders, a manager who worked for Vacation Village at the time Mr. Massaconi worked, had sales ratios that required discipline of the type meted out to Mr. Massaconi. Affidavit of Kenneth Flanders, ¶¶ 11-13. Yet on ten separate occasions, with sales ratios which should have led to discipline under the "uniform policy", Mr. Flanders was not disciplined at all. *Id.* Additionally, sales manager Robert Campagna faced no discipline for sales ratios that were well above the 8.9 ratio which called for discipline. Affidavit of Joel Feldman, Exhibit 1, Deposition of Michael Massaconi p. 165. Mr. Campagna continued, without discipline, with ratios in the thirties and forties for months. *Id.* Finally, Michael Campagna, also a manager, had ratios similar to Robert Campagna, again for months, and faced no discipline. Not only were the Campagnas not terminated, as Mr. Massaconi was, but they were not placed on probation. *Id.*

When Mr. Massaconi fell below the sales ratios required by Vacation Village, he lost his T.O. powers, the ability to obtain a 1.5% additional commission for closing a sale as a manager. Second Supplemental Affidavit of Michael Massaconi, ¶ 7. As noted above, Mr. Flanders escaped any such discipline on at least ten occasions. But beyond this, the T.O. power was to be returned to a manager only after sales ratios improved. Mr. Flanders

received his T.O.s back without higher ratios, while Mr. Massaconi did not. Affidavit of Kenneth Flanders, ¶ 16.

Mr. Massaconi was also treated more harshly than the rules would have allowed when his T.O. and his "overrides" were taken away within the first thirty days of his discipline for poor sales ratios. The rules noted that overrides, the additional 1.5% commission a sales manager received if a salesman on his team sold a time share, could only be taken away after a thirty day window passed without improved sales ratios. Second Supplemental Affidavit of Michael Massaconi, ¶¶ 6- 7. However, the defendants took away Mr. Massaconi's overrides immediately, without waiting the requisite thirty days. *Id.* Finally, Mr. Massaconi was not given the two tours a day other managers received to boost their sales ratios. Id. at ¶¶ 8-9.

The discipline policies of the defendants for sales ratios were therefore selectively enforced as Kenneth Flanders put it. Affidavit of Kenneth Flanders, ¶ 20. Mr. Massaconi complained to Gordon Leete and Rod Lewis and Bill Rauer about the fact that he was not being paid according to state law. Affidavit of Joel Feldman, Exhibit 3, Deposition of Gordon Leete, pp. 8, 11, 12; Affidavit of Joel Feldman, Exhibit 1, Deposition of Michael Massaconi, p. 74. He then filed a lawsuit against the company, of which Mr. Rauer and Mr. Lewis were aware. *Id.* at pp. 81-83. After the complaints made to his superiors, and after Mr. Leete brought these complaints to Mr. Rauer, Mr. Lewis and Faith Lippert, Mr. Massaconi was disciplined for his poor sales ratios. But Mr. Flanders and both of the Campagnas were not, despite negative sales ratios on multiple occasions. This means that the defendants could choose to discipline or could refrain from it if a sales manager had inadequate sales ratios— that was the policy of the defendants. And they chose to discipline Mr. Massaconi after he made his complaints about the wage laws.

After the lawsuit was brought against the company, the company would not honor Mr. Massaconi's request to be a manager again. But the company did allow Mr. Flanders to T.O. tables again without any improvement in his sales ratios. Finally, after the lawsuit was brought, and after Mr. Rauer and Mr. Lewis were aware of the existence of the lawsuit, Mr. Massaconi was fired. Mr. Flanders and the Campagnas were not fired, even though the Campagnas went for months with poor ratios.

The "inference" of retaliation raised by this litany is completely corroborated by the comments of Mr. Lewis, who said that the company engaged in reprisals against Mr. Massaconi, Affidavit of Joel Feldman, Exhibit 1, Deposition of Michael Massaconi, pp. 81-82, and told Will Steele and Mr. Massaconi himself that anyone who might benefit from the lawsuit would be fired. Affidavit of Will Steele, ¶ 5; Affidavit of Joel Feldman, Exhibit 2, Deposition of Rod Lewis, pp. 151-153. Thereafter, Mr. Massaconi was terminated.

Mr. Massaconi's evidence is more than sufficient to raise factual disputes for a jury when it will seek to determine whether Mr. Massaconi he faced discrimination and retaliation from the defendants. The defendants' material assertions in their Memorandum are disputed at every turn. The defendants' claim that Mr. Massaconi has put forth no admissible evidence that he was fired because of protected activity—but he has shown that the person approving his termination (Rod Lewis) (1) told Mr. Steele and Mr. Massaconi that anyone associated with the lawsuit would be fired, and (2) told Mr. Massaconi that the discipline taken against him was a reprisal!  See Defendants' Memo at p. 12; Affidavit of Will Steele, ¶ 5; Affidavit of Joel Feldman, Exhibit 2, Deposition of Rod Lewis, pp. 151-153; Affidavit of Joel Feldman, Exhibit 1, Deposition of Michael Massaconi ,pp. 81-82. The defendants claim that the Vacation Village employee who said that sales staff would be fired for participating in the lawsuit was not a decision-maker—but it was Mr. Lewis himself who said this. See

10

Defendants' Memo at p. 12; Affidavit of Will Steele, ¶ 5; Affidavit of Joel Feldman, Exhibit 2, Deposition of Rod Lewis, pp. 151-153; Affidavit of Joel Feldman, Exhibit 1, Deposition of Michael Massaconi, pp. 81-82.

Defendants claim that there is no evidence that Mr. Rauer or Mr. Lewis knew of Mr. Massaconi's lawsuit—but Mr. Massaconi testified that they told him they knew of the filing of the lawsuit and Mr. Massaconi's participation. Defendants' Memo at p. 12; Affidavit of Joel Feldman, Exhibit 1, Deposition of Michael Massaconi, pp. 81-83. Supposedly, as well, there was discipline taken against every sales person with poor sales ratios, but Mr. Massaconi has provided evidence showing that this was not true.

If Mr. Massaconi's evidence is believed by a jury, the jury could quite easily return a verdict in his favor, finding that he had taken action to assert his claims under the state wage law, and that in return, the defendants retaliated and discriminated against him. Because of the disputed evidence, this court should reject the defendants' Motion for Summary Judgment.

**B.  MICHAEL MASSACONI SATISFIED ALL PREREQUISITES UNDER CHAPTER 149 BY ASSERTING HIS CLAIMS WITH THE OFFICE OF THE ATTORNEY GENERAL BEFORE COMMENCING THIS LAWSUIT**

Michael Massaconi provided the Office of the Attorney General in Springfield, Massachusetts with a complaint asserting violations of the state wage and hour laws, and claiming retaliation. Affidavit of Joel Feldman, Exhibit 4. The Office of Attorney General then issued a letter authorizing a civil lawsuit on March 22, 2005, prior to the filing of this lawsuit. Affidavit of Joel Feldman, Exhibit 5.

As a result, Mr. Massaconi has met the statutory prerequisites for filing a retaliation claim under c. 149.

### C.  DEFENDANTS FOSTER AND LANDAU ARE NOT ENTITLED TO SUMMARY JUDGMENT AS INDIVIDUAL DEFENDANTS

Defendants argue that the retaliation portion of M.G.L. c. 149 does not apply to the individual defendants Foster and Landau because section 148A does not define the word "employer".  This argument is based upon misguided statutory construction, going against the maxim that adopting differing interpretations of identical language "is contrary to the basic canon of statutory construction that identical terms within an Act bear the same meaning." *State of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) (*citing Sullivan v. Stroop*, 496 U.S. 478, 484 (1990)).

Here, employer is defined in the first portion of the statute as the "president and treasurer of a corporation and any officers or agents having the management of such corporation . . ." M.G.L. c. 149, § 148.  The anti-retaliation section prohibits an employer for penalizing an employee who is seeking to enforce his or her rights "under the wages and hours provisions of this chapter." M.G.L. c. 149, § 148A.  While defendants do not put forth another definition of employer for this latter section, they advocate for a different meaning of employer in order to exclude the president and treasurer of the corporation for retaliatory acts on the part of the corporation.  This would lead to the absurd result that while an employer, as defined within the meaning of the statute, cannot unlawfully retain wages owed to an employee, that employer is not liable for any possible retaliation against such an employee who is seeking to enforce his or her rights under the statute.[1]  There is simply no ground for imposing on the statute different definitions for the same term.  Those persons who are employers for purposes of paying wages in a timely manner, must also be employers when

---

[1] In *Smith v. Winter Place LLC*, 447 Mass. 363, 367 (2006), the Supreme Judicial Court allowed an anti-retaliation lawsuit to go forward against individual owners of a corporation.  Plaintiffs were allowed to sue the individuals for retaliation and while the court did not specifically address whether the individual defendants were liable, it implicitly permitted suit against them when it did not dismiss the individual defendants from the case.

they seek to retaliate against the same employees for complaining about illegalities concerning payment of wages.

Rebecca Foster is the president of both the Berkley Group and of Patriot Resorts. Similarly, Mark Landau is the Treasurer of both Patriot Resorts and of Berkley Group. The Weekly Payment of Wages Statute applies to employers, including the president and treasurer of the corporation. M.G.L. c. 149, § 148. As president of the corporation, Ms. Foster is an employer within the meaning of the statute. As treasurer of the corporation, Mr. Landau is an employer within the meaning of the statute. Summary judgment for these individual defendants is not appropriate.

> **D.     BERKELY GROUP IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER THE INTEGRATED-ENTERPRISE TEST**

Defendants argue that summary judgment for Berkley Group is appropriate because Berkley is merely Patriot Resort's parent corporation and nothing more, despite the fact that Patriot Resort is a wholly owned subsidiary of Berkley Group. However, defendants fail to show under the integrated-enterprise test how Berkley could avoid liability.

The First Circuit adopted the integrated-enterprise test in *Romano*, examining four factors: 1) interrelation of operations; 2) common management, 3) centralized control of labor relations; and 4) common ownership (*Romano v. U-Haul International*, 233 F. 3d 665, 662 (1st Cir. 2000)), or common financial control. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 135, 1240 (2nd Cir. 1995). While the *Romano* court acknowledged and agreed with the circuits that had adopted the view that "control of labor operations, i.e., control of employment decisions, is the most important of the four factors," the court refused to apply the most stringent reading of this test. *Id.* at 666. Rather, the court followed the more "flexible" approach adopted by the Second Circuit, "which focuses on employment decisions, but only to the extent that the parent exerts 'an amount of participation that is sufficient and

13

necessary to the total employment process, even absent total control or ultimate authority over hiring decisions. *Id.* (citing *Cook*, 69 F.3d at 1240.)

In *Cook*, the court applied the integrated-enterprise test to determine whether a parent corporation was responsible for the actions of its subsidiary. There, the court focused on the second factor, that of centralized control of labor relations. In that case, the court denied summary judgment for the parent of a wholly owned subsidiary. It based its conclusion on the fact that there was substantial evidence of an interrelation of operations between the two companies because the parent ran the subsidiary in a "direct, hands-on fashion, establishing operating practices and management practices" of the subsidiary. *Cook*, 69 F.3d at 1241.

Second, the court concluded that there was a common management structure evidenced by the fact that the president of the subsidiary operated out of one of the parent company's offices. *Id.* Third, the parent maintained control of labor relations at the subsidiary, evidenced by the fact that applications for employment with the subsidiary were processed by the parent, all personnel status reports were approved by the parent, and that the subsidiary cleared all major employment decisions with the parent. *Id.*

Similarly, summary judgment for Berkley must be denied under the integrated-enterprise test. First, there is an interrelation of operations between Patriot Resorts and the Berkley Group because Berkley runs Patriot in a "direct, hands-on fashion, establishing operating practices and management practices" for Patriot. In her deposition, Rebecca Foster acknowledged that she set employment policies and procedures for employees of Vacation Village, including sales techniques, retirement plans, and attendance issues. Affidavit of Joel Feldman, Exhibit 6, Deposition of Rebecca Foster, p.113. Second, there is a common management structure. Rebecca Foster is the president of both Patriot Resorts and of the Berkley Group. See, Defendants' Statement of Material Facts, ¶ 4. Several of her colleagues

14

at the Berkley Group also participate in the management of Patriot Resorts. J.P. Ottino is the vice president of corporate acquisitions of the Berkley Group and he is director and vice president of Patriot Resorts. *Id.* at ¶ 6. Mark J. Landau is the treasurer of both Patriot Resorts and the Berkley Group and was chief financial officer of the Berkley Group. *Id.* at ¶ 5. These individuals are involved in the management of both the parent company, the Berkley Group, and of the wholly owned subsidiary, Patriot Resorts.

       Finally, the Berkley Group maintains control of the labor relations of Patriot Resorts. During all relevant times, Rebecca Foster is the direct supervisor of Faith Lippert, the human resources manager at Vacation Village. Affidavit of Joel Feldman, Exhibit 7, Deposition of Faith Lippert, p. 52. Ms. Lippert is responsible for the administration of sales contracts for time share sales, and the payment of commissions to time share sales persons at Vacation Village. *Id.* at pp. 9-11. Summary Judgment for the Berkley Group should not be granted because there are sufficient facts to show that the Berkley Group is significantly involved in the daily operations of Patriot Resorts, and by extension Vacation Village.

### IV.   CONCLUSION

For the reasons stated above, Michael Massaconi requests that this court deny the defendants' Motion for Summary Judgment on Count VI.  Additionally, the facts showing a dispute under Rule 56 were so obvious from the existing record, that the defendants' motion for summary judgment unreasonably and vexatiously multiplied the proceedings in this case.  As a result, Michael Massaconi respectfully requests that appropriate sanctions, including excess expenses and attorney's fees, be assessed directly against the defendants pursuant to 28 U.S.C. § 1927.

|  |  |
|---|---|
|  | MICHAEL MASSACONI<br>By his attorney, |
| I hereby certify that a<br>true copy of the above<br>document was served upon<br>counsel of record<br>by mail<br><br>_____.<br><br>_____ | /s/ Joel Feldman<br>Joel Feldman<br>BBO # 552963<br>Heisler, Feldman,<br>McCormick & Garrow, P.C.<br>1145 Main Street, Suite 508<br>Springfield MA  01103<br>(413)788-7988<br>(413)788-7996 (fax) |

Dated: 5/18/07

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

/s/Joel Feldman
Joel Feldman

16