UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-CV-30091-MAP

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBIN, on behalf of themselves and on behalf of others who are similarly situated, | : : : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III REBECCA A FOSTER. and JAMES E. LAMBERT, | : : : : : |
| Defendants. | : : |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLASS CLAIM (COUNT VIII)

**I.     INTRODUCTION**

The defendants have moved for summary judgment on the remaining class claim in this case, whether the defendants have failed to pay class members in a timely fashion under M.G.L. c. 149, § 148. The plaintiffs have also moved for summary judgment on this claim.[1]

In their motion, the defendants first argue that they have not failed to pay commissions when "due and payable", the language of § 148, because "due and payable" means whatever the employer dictates to the employee in its employment contract. Defendants Memorandum in Support of Motion for

---

[1] The plaintiffs hereby incorporate all facts and argument made in the Plaintiffs' Memorandum in Support of Partial Summary Judgment on Class Claim of Untimely Payment of Commissions.

Summary Judgment, Document 141, pp. 1-2, 8, 10, 11 ("Defendants' Memo"). Because of this legal position, the defendants then say that they adhered to the statute by complying with their contractual responsibilities to pay commissions after three consecutive timely payments were made by customers to the defendants. Defendants' Memo at pp. 2, 8, 9. The defendants also obeyed the statute, they claim, by charging back commissions pursuant to the contract in every instance. *Id.* at p. 7.

      The facts show a quite different scenario, however. The defendants routinely violated the terms of their own contract by charging back commissions years after the contract permitted them to do so. *See, e.g.*, Plaintiffs' Statement of Material Facts in Support of Motion for Summary Judgment, Document 148, ¶¶ 30-41; Affidavit of Beth Torra, ¶¶ 32-45. The defendants routinely failed to make commission payments where a customer had been making payments for years and the deals had not been canceled or foreclosed. Affidavit of Beth Torra, ¶¶ 8-26; Affidavit of John Juliano. To the extent the defendants argue that the statute at issue permits or requires employers to determine "due and payable" by contract, then every violation of the contract concerning payment of commissions by the defendants must be a violation of the statute.

      The undisputed facts in this case show that the defendants violated c. 149 § 148.

## II.     STATEMENT OF FACTS

The plaintiffs incorporate by reference Plaintiffs' Response to Defendants' Statement of Material Facts Regarding Class Claim, Count VII.  Additionally, the plaintiffs incorporate by reference their Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, Document 148, filed earlier with this court.

## III.    ARGUMENT

### A.    THE DEFENDANTS ACTUAL PAYMENT POLICY VIOLATED THE EMPLOYMENT CONTRACTS OF THE DEFENDANTS AND THEREFORE CHAPTER 149

The defendants charged back salespeople years and years after they were permitted to do so under their employment contracts.  To reiterate, the defendants' contracts permit charge-backs when a financed sale had not resulted in "three timely monthly payments from the date that first payments are due".  Affidavit of Lacrisha Wise, Exhibit 2, ¶ 3E, Document 71.  In a case where a purchaser has not made these first three timely payments, the defendants were permitted to "offset the appropriate amount from the next available commission" immediately after the defendants received notice of the failure to pay these first three payments.  *Id.*   This language, according to the defendants, has the imprimatur of statute, because the Legislature allowed and required employers to set the terms of what "due and payable" means by contract. Defendants' Memo at pp. 1-2, 8, 10, 11.

The record is now indisputably replete with instances of the defendants' violation of this language. First, the *actual* policy of the defendants was to charge back employees whenever a sale was canceled during the life of a mortgage, not just during the first three of four months permitted by the contract language. As Bill Rauer (the supervisor of the highest ranking on-site manager, Rod Lewis) testified, where a customer made three consecutive timely payments, but then made eight untimely payments, the salesperson could be charged back. Affidavit of Joel Feldman, Exhibit 1, Deposition of Bill Rauer, pp. 93-94. The company would also charge back commissions paid when a customer stopped making mortgage payments at any indefinite time during the future. *Id.* at pp. 31-32.

The policy articulated by Bill Rauer, the supervisor of the Lanesboro project manager, violates the contract. There is no support anywhere, statutory or contractual, allowing the defendants to charge back a commission if the purchaser makes his/her first three timely payments. According to the defendants, commissions are "due and payable" to the sales force under c. 149 according to the contract. If the commissions are not paid according to the contract, they have not been paid when they are "due and payable"—this must be the defendants' position. Company policy was that chargebacks may occur at any point during the life of the loan when the company determines that a sale is no longer "good business", well after the contract allows for a chargeback. *Id.* at pp. 31-32. This articulation by a top official of the defendants is enough evidence to show that the defendants violated c. 149 by failing to pay commissions to salespersons when due and payable. The sales persons who were charged back, have yet to be paid

on sales that were consummated according to the contracts, and these sales persons are entitled to damages under c. 149 for all of the money taken from them by illegal chargebacks.

The policy put forth by Bill Rauer is corroborated by the individual evidence of sales persons. Beth Torra was charged back her commissions months and years after a sale of a timeshare. Affidavit of Beth Torra, ¶¶ 27-45. Ms. Torra sold a time share to Drake Lacy in October, 2002, but was charged back her commission in June, 2004, almost two years later, after the deal was "cancelled" in August, 2004. Id. at ¶¶ 32-37. . The contract permitted a chargeback sometime in early 2003 (during the fourth month of the loan); but one and a half years later, Ms. Torra had her commission taken away.

This scenario also occurred with salespersons Massaconi, Steele, McKnight and Lepine, to name a few. Mr. Massaconi was charged back more than two and a half years after he sold a timeshare in 2002 but had the commission taken away in 2004. Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, ¶ 31, Document 148. Salespersons Steele, McKnight and Lepine were charged back *more than three years after their sales*. Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, ¶ ¶ 38 – 40, Document 148.

The contracts only permit chargebacks within the first four months payments are due on a financed sale. The defendants have offered no evidence that they were permitted to chargeback commissions more than three years after a closing, because these chargebacks are simply not permitted by the contract. Any

chargeback done in accordance with the policy articulated by Bill Rauer is a violation of the contract. And again, under the defendants' theory, every violation of the contractual obligations the defendants have undertaken regarding timely payments are a violation of c. 149, as they argue that the statute defines "due and payable" as the contract terms offered by the employer.

The defendants have asserted that "Defendants did not violate the terms of their Contracts with Plaintiffs." Defendants' Memo at p. 10.[2] They also assert that "there is nothing inherently wrong with not paying sales people for cancelled deals." Id. at p. 7, footnote 5. But there is something wrong when an employer blatantly violates its own contractual (and therefore, statutory) limits on when sales persons get paid. The undisputed evidence is that the defendants illegally charged employees back well outside the time limits set by contract and c. 149. As a result, summary judgment should enter on the chargeback portion of the plaintiffs' claims, and should be denied to the defendants.

    B.    **CHAPTER 149 PLACES SOME LIMIT ON THE ABILITY OF THE DEFENDANTS TO DEFINE "DUE AND PAYABLE" FOR ITS EMPLOYEES, A LIMIT VIOLATED BY THE DEFENDANTS**

The defendants take their argument for summary judgment to the extreme outer limit of the parameters of M.G.L. c. 149 § 148: "Nothing in the Act…precludes the parties from contractually establishing when commissions are due and payable….Nothing in the Wage Act could rationally be construed as a

---

[2] The defendants somehow state that "there is no claim that the payments [of commissions] were not made consistent with the terms of the parties' written agreements covering such issues". Defendants' Memo at p. 3. Nothing could be further from the truth. The plaintiffs believe, and have shown above, that the defendants routinely ignored the written agreements of the parties when undertaking chargebacks.

6

limitation on the parties' right to contract such matters…." Defendants' Memo at p. 2.

The defendants' argument is that the addition of commissions into c. 148 in 1943 simply noted that employers must adhere to their contracts. Under this theory, the entire provision concerning commissions, then, added no protection to employees—it merely reiterated that an employer had to pay employees when their contracts required them to do so. The statute, then, simply allowed a statutory right of action for violations of contract—nothing more. The statute, in this view, made no attempt to require any timely payment of commissions on its own; rather the statute confirmed that contracts still govern the timely payment of commissions.

This argument allows an employer to place any stricture they would like to place on when payment must occur. The defendants note that, under their theory, they could have delayed commission payments to salespersons after ten years (the mortgage term) elapsed from the sale and all payments were received. But beyond this, according to defendants' theory, they could have provided that salespersons would be paid only five years after the mortgage has been fully paid. Or that salespersons would be paid all of their commissions only after they had worked for the company for twenty years. The defendants' argument, in sum, is that there is no limitation on their ability to define "due and payable". Defendants' Memo at p. 2.

Notwithstanding this, the defendants do appear in their argument to recognize that the Legislature could never have intended to give its stamp of

approval to any contractual language so far removed from the contingency yielding the commission, namely the sale of the time share. So while they argue there is no limit to "due and payable" as set by contract, they also argue that

> There is nothing inherently unlawful or unfair in denying Commissions when there is a default. Commissions, after all, reflect a sharing of the gain of a sale as per some agreed upon arrangement. When the gains do not materialize because of a default, the salesperson is not entitled to a share of the gain that would have materialized absent the default.

Defendants' Memo at p. 10. The defendants ultimately note that the contract in this case was devised to "protect itself from paying commission…[where]the purchaser fails to pay the full purchase price on which the Commission is based." *Id.* at p. 3.

The defendants, then, claim implicitly and explicitly, that this contract language was created to protect the company in cases where a purchaser does not make payments, in other words defaults and cancels a sale. They ignore the crux of the problem with the language of the defendants, namely that commissions have been withheld routinely under this arrangement simply for late payments. The defendants actually state that "the Plaintiffs have not identified a circumstance where this years-long delay actually occurred [solely because of late payments, rather than non-payment]." *Id.* at p. 6, footnote 4. The footnote goes on to say that the defendants made exceptions for customers who paid their monthly payments but did so late. *Id.*

The evidence in this case shows that these allegations are simply false. Beth Torra, a salesperson of many years at Vacation Village, sold a family called the Browns a time share on August, 2003. Affidavit of Beth Torra, ¶ 8. When

8

she had not been paid on her deal as of April, 2007, *almost four years later*, she inquired of Faith Lippert as to the reasons for the non-payment of her commission. Id. at ¶ 14. The answer from Ms. Lippert was that "these people are bad pays-no timely pymts". Id. at ¶ 16. The same scenario was played out in the sale of a timeshare by Ms. Torra to Starlette Bates—a sale was made on February 27, 2004, and Ms. Torra has yet to be paid on this deal, because in the words of Ms. Lippert, "these people are bad pays-50 days late-Not timely payments."

The Brown and Bates cases show, first, that despite the defendants' protestations, salespersons did wait years to receive commissions on "good deals". *See also*, Affidavit of John Juliano (salesperson has waited two years to be paid on thirty-six sales made in 2005 and 2006). Second, these commissions were unpaid solely because of late payments of the customers, not non-payment. Although they do not admit to this in their Memorandum, Ms. Campagna and Mr. Lewis have previously declared under oath that commissions could be withheld solely because of late payments. Affidavit of Joel Feldman, Exhibit 2, Deposition of Rebecca Foster Campagna, pp. 80, 154; Affidavit of Joel Feldman, Exhibit 3, Deposition of Rod Lewis, p. 112. Ms. Campagna and Mr. Lewis explicitly acknowledged that commission would not be paid in the situation of regular late payments, *even where the company has received all of the money then owed to it*.

The failure to pay commissions years after a sale, simply because a purchaser makes some late payments, shows the true nature of the absurdity of the

9

defendants' position. Late payments have nothing to do with "sharing risks" or dealing with concerns about sales that are not really sales. Refusing to pay commissions because one out of every three payments during a year is late is a punitive measure, having no correlation whatsoever with whether the company will receive its money, or whether the salesperson has performed. The company has received every dollar owed it. It is receiving interest, presumably. It has received its downpayment. It also has the protection of foreclosure and re-sale should a purchaser later fail to make payments. The salesperson has performed her function, and the deal is "good business". But the commissions are detained by the defendants, indefinitely, for months and even years.

> This is the scenario which the Legislature sought to protect against. There is nothing "reasonable" about not withholding commissions because a customer makes late payments on occasion. This is the "unreasonable detention" of wages, described in the cases mentioned in the Plaintiffs' Memorandum in Support of Partial Summary Judgment, Document 150. The Legislature did not create a right to sue an employer for failure to pay commissions in a timely manner, but then yield complete control to the employer to define "due and payable" in any absurd manner it wished to do so. Here, Ms. Torra has waited four years for a commission when the company received regular but late payments from a deal sold by the salesperson. Mr. Juliano has not received payments on many deals for almost two years. Affidavit of John Juliano. Michael Massaconi is still owed approximately $900 worth of commissions from between 2003 and 2005. Supplemental Affidavit of Michael Massaconi, Document 152, ¶ 26. Where late

payments are the sole cause of non-payment of commissions for four years, the salesperson has had commissions "unreasonably detained".

Withholding commissions of employees because of late payments, for months and for years, violates requirement of timely payment of commissions when due and payable. Courts routinely determine the "reasonableness" of many actions and many statutory provisions. There is no reason for this court to refrain from determining the parameters of "due and payable" in this case, and to determine that "due and payable" means that payments must be made in a timeframe that bear some relationship to the act performed by the salesperson. Canceled deals occurring in the first few weeks or months in fact might mean no sale has actually occurred.[3] But late payments on "good deals" means the company gets all its money yet still holds Beth Torra and John Juliano and Michael Massaconi and Peter Corbin hostage for months and years. These facts should lead to a denial of the defendants' motion and allowance of the plaintiffs' motion.

---

[3] The defendants' failure to make payment for years on deals they ultimately cancel two and three years after closing also violate the "due and payable" language for the same reasons noted above. The defendants have received a downpayment and many monthly payments, but then a deal goes sour and the sales person receives nothing from having brought the defendants this income. See, e.g. Affidavit of Beth Torra, Exhibits 4 and 6.

## V. CONCLUSION

For the reasons state above, this court should deny the defendants' motion for summary judgment on this claim, and allow the plaintiffs' motion.

|  |  |
|---|---|
|  | THE PLAINTIFFS<br>By their attorney, |
| I hereby certify that a<br>true copy of the above<br>document was served upon<br>counsel of record<br>by mail<br><br>_____.<br><br>_____ | /s/ Joel Feldman<br>Joel Feldman<br>BBO # 552963<br>Heisler, Feldman,<br>McCormick & Garrow, P.C.<br>1145 Main Street, Suite 508<br>Springfield MA  01103<br>(413)788-7988<br>(413)788-7996 (fax) |

Dated: 5/18/07

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

/s/ Joel Feldman
Joel Feldman