UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-CV-30091-MAP

LACRISHA WISE, MICHAEL
MASSACONI, ROGER MARTIN and
PETER CORBIN, on behalf of
themselves and on behalf of others
who are similarly situated,

             Plaintiffs,

v.

PATRIOT RESORTS CORP.,
THE BERKLEY GROUP, INC.,
MARC J. LANDAU, J.P. OTTINO, III
REBECCA A FOSTER. and JAMES E.
LAMBERT,

             Defendants.

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS REGARDING CLASS CLAIM, COUNT VIII

Pursuant to Local Rule 56.1, the plaintiffs respond to the Defendants' Statement of Material Facts in opposition to Defendants' Motion for Summary Judgment, as described below:[1]

1. Not disputed for purposes of this Motion for Summary Judgment;

2. Not disputed for purposes of this Motion for Summary Judgment;

3. Not disputed for purposes of this Motion for Summary Judgment;

4. Not disputed for purposes of this Motion for Summary Judgment;

5. Not disputed for purposes of this Motion for Summary Judgment;

6. Not disputed for purposes of this Motion for Summary Judgment;

---

[1] The citations to the paragraphs below are to the Defendants' Statement of Material Facts filed in this case on April 16, 2007 as Document 147.

    7.    Not disputed for purposes of this Motion for Summary Judgment;

    8.    Not disputed for purposes of this Motion for Summary Judgment;

    9.    Not disputed for purposes of this Motion for Summary Judgment;

    10.    Disputed, in that the facts noted have no bearing on the Motion for Summary Judgment and should not be considered.

    11.    Not disputed for purposes of this Motion for Summary Judgment;

    12.    Disputed. Although the contracts contain a provision addressing commission payment schedules, the defendants did not adhere to the payment schedules. For example, many class members were charged back commission more than two or three years after the commission was paid, in direct contravention of contract language permitting chargebacks up to the fourth monthly payment due date. See, Supplemental Affidavit of Joel Feldman. Exhibits 1-3, Document 151 filed earlier in this case. Salespersons Willam Steele, Susan McKnight and Mark Lepine, were each charged back in 2004 for commissions paid on deals made in 2001. *Id.* See also, Affidavit of Joel Feldman in Support of Opposition to Motion for Summary Judgment on Class Claim, Exhibit 1, Deposition of Bill Rauer, ¶¶ 29-32, 93-94.

    13.    Not disputed for purposes of this Motion for Summary Judgment;

    14.    Not disputed for purposes of this Motion for Summary Judgment;

    15.    Not disputed for purposes of this Motion for Summary Judgment;

    16.    Disputed. The defendants' citation to the deposition of Rebecca Foster, page 89, provides no support for the proposition that the company's experience showed that three consecutive timely payments had any bearing on whether future payments

would be made.  Rather, the citation is to whether preauthorized checks should be submitted.

17.    Disputed.  The contracts do not provide for the payment of commissions when a PAC is paid from a purchaser, and the evidence cited from Mr. Martin does not support this contention.  Additionally, the defendants' own statements contradict the notion that the three timely payment rule did not apply if PAC was in place.  Rebecca Foster noted that untimely payment because of insufficient funds, even with a PAC in place, meant that a salesperson would not be paid, or would be subject to chargeback.  Deposition of Rebecca Foster, pp. 80-82, Document 140.

18.    Disputed.  The defendants' citation to the deposition of Rebecca Foster, page 89-90, provides no support for the proposition stated, as the three consecutive timely payment rule applied to every deal, as Ms. Foster notes.

19.    Disputed.  It is true that the contract notes when commissions are to be paid, but the company also did not abide by the contract, as noted above in Paragraph 12, for example, and as noted in Paragraphs 32 and 35, below.

20.    Not disputed for purposes of this Motion for Summary Judgment;

21.    Disputed.  Not all commissions were advanced in financed sales, as many of the plaintiffs closed financed sales and were not paid for many, many months.  *See, e.g.*, Supplemental Affidavit of Michael Massaconi, ¶¶ 10-13, Document 152.

22.    Disputed.  The Contract actually notes that a chargeback may only occur if a payment is not made, or is late, *during the first three months payments are due*, and then only from the next available commission, as noted in the Contract cited by defendants at ¶ 2E.

23. Disputed. As noted in the Affidavit of Beth Torra, many times commission payments were withheld because a purchaser paid late for many, many months. In Ms. Torra's case, the commissions were never paid. Affidavit of Beth Torra, ¶¶ 8-26. In addition, chargebacks occurred years after a deal had been closed. Id. at ¶¶ 32-45. See also, Paragraph 12 above.

24. Disputed. The contracts cited by the defendants explicitly make no mention of this possibility, and such a policy violates the contract.

25. Disputed. The amount taken by the defendants was the exact amount of the commission. Affidavit of Beth Torra, ¶¶ 32-45.

26. Not disputed for purposes of this Motion for Summary Judgment, as the contract does contain this language.

27. Not disputed for purposes of this Motion for Summary Judgment, as the contract does contain this language.

28. Disputed. This policy is nowhere contained in any employment contract and would therefore violate the contract.

29. Not disputed for purposes of this Motion for Summary Judgment;

30. Disputed. The defendants stopped indicating whether a deal was cancelled some months after Vacation Village opened, and no reasons were provided for cancellations. Affidavit of Joel Feldman, Exhibit 4, Deposition of Michael Massaconi, p. 77.

31. Disputed. The defendants refused to provide answers concerning conversations between counsel and the defendants, and therefore should be precluded

from making this claim. The defendants cannot claim a privilege to protect the conversations, and then use the existence of the conversation offensively.

<u>FURTHER FACTS WHICH ARE DISPUTED BETWEEN THE PARTIES</u>

The plaintiffs incorporate by reference Document 148, filed in this case, the Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, and further submit the following disputed facts:

32. The defendants' actual policy, applied to their salespersons, was that if someone made three consecutive, timely payments, and then made, for example, eight untimely payments, a salesperson could be charged back, despite the language of the employment contract between the parties which does not permit this. Affidavit of Joel Feldman, Exhibit 1, Deposition of Bill Rauer, pp. 93-94.

33. In fact, if a purchaser consistently made two timely payments, then an untimely payment, and continued this cycle indefinitely, the sales person would not get paid their commission. *Id.* at 29-30.

34. Where a customer did not make three timely consecutive payments, a sales person might have to wait more than a year after their termination to receive a commission, even where all of the money owed has been paid to the company. Affidavit of Joel Feldman, Exhibit 2, Deposition of Rebecca Foster Campagna, pp. 80, 154; Affidavit of Joel Feldman, Exhibit 3,Deposition of Rod Lewis, p. 112.

35. Chargebacks also occurred if a salesperson had been paid for business that was no longer "good business", meaning the customer stopped paying mortgage payments, and the company determined that the sale was no longer a good sale. Affidavit of Joel Feldman Exhibit 1,Deposition of Bill Rauer , pp. 31-32.

36. Salespersons at Vacation Village might not be paid for years, even where a purchaser made all of their payments and the defendants had received all the payments, because of the "three consecutive timely payment" rule of the defendants. Affidavit of Beth Torra, ¶¶ 8-26.

37. In the example of a sale made by Ms. Torra to the Browns, a sale was closed on March 21, 2004, but Ms. Torra had not been paid her commission as of April, 2007, although the deal was not cancelled. *Id.* at ¶¶ 8-13.

38. Ms. Torra was required to go to Faith Lippert for an explanation of the lack of commission payment, because none had been forthcoming, and the reason for the lack of payment was "these people are bad pays-not timely pymts." *Id* at ¶ 16.

39. The Brown commission was paid in the last two weeks, only after this motion was being filed in this court, and despite the lack of timely payments. *Id.* at ¶ 18.

40. The same thing occurred in Ms. Torra's sale of a timeshare to Starlette Bates, a sale which closed on July 27, 2004. *Id.* at ¶20.

41. Three years later, after receiving no commission on the Bates' sale, Ms. Torra was notified by Ms. Lippert, after complaining in writing, that "these people are bad pays-50 days late. Not timely payments." *Id.* at ¶24.

42. In both of these instances, Vacation Village had received their payments, albeit late, and had gotten the benefit of the bargain struck by Ms. Torra, but she had not received a commission almost four years after her sale. *Id.* at ¶26.

43. Ms. Torra also had two commissions charged back years after a sale, without any adjustment for taxes, and without any notice of any failure to pay monthly loan amounts for months. *Id.* at ¶¶ 27-45.

6

44. John Juliano, a salesperson at Vacation Village from February, 2005 until May, 2006, has not been paid on approximately thirty-six sales made to customers of time shares. Affidavit of John Juliano, at ¶¶1, 7.

45. Many of these sales are not listed as "canceled" sales on Mr. Juliano's salesman's ledger, attached as Exhibit 1 to the Affidavit of John Juliano.

46. When Mr. Juliano questioned Vacation Village employees about why he had not been paid on these sales, he was told that the customer did not provide a PAC check, or never made three consecutive timely payments, although he was never given this information without having to complain. Affidavit of John Juliano, at ¶¶24-27.

47. The deals, noted on Exhibit 1 to the Affidavit of John Juliano, go back to 2005, so almost two years have passed since the time shares were sold, but the commissions have yet to be paid.

                                                              THE PLAINTIFFS
                                                              By their attorney,

| | |
|---|---|
| I hereby certify that a true copy of the above document was served upon counsel of record by mail<br><br>_____.<br><br>_____ | /s/ Joel Feldman<br>Joel Feldman<br>BBO # 552963<br>Heisler, Feldman,<br>McCormick & Garrow, P.C.<br>1145 Main Street, Suite 508<br>Springfield MA  01103<br>(413)788-7988<br>(413)788-7996 (fax) |

Dated:<u>5/18/07</u>

CERTIFICATE OF SERVICE

     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

                                                               /s/Joel Feldman
                                                                Joel Feldman