UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-CV-30091-MAP

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBIN, on behalf of themselves and on behalf of others who are similarly situated, | : : : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III REBECCA A FOSTER. and JAMES E. LAMBERT, | : : : : : |
| Defendants. | : : |

AFFIDAVIT OF BETH TORRA

1.      My name is Beth Torra and I have worked at Vacation Village since September, 2002, in a number of different jobs, including as a sales person, selling time shares at the resort known as Vacation Village in the Berkshires ("Vacation Village").

2.      During my employment at Vacation Village, I was paid commissions for sales that I made, according to the payment policies of Vacation village.

3.      According to my contract with Vacation Village, I earned my commission upon the closing of a sale.

4.      A "closing" occurred in the case of financed sales, when a customer had made her/his deposit, the rescission periods had passed, and the company began to have access to the customer's funds and interest.

5. Patriot Resorts had an exception to payment of commissions after a financed sale "closing" occurred—a commission for a salesperson was not considered "earned" until the customer had made three consecutive and timely payments after the closing.

6. This meant that if I made a sale, and the purchaser made late payments for many months, I would not be paid my commission even though Vacation Village was receiving its money.

6. In at least two cases, I was not paid my commission for years after I sold a timeshare to a purchaser.

7. For example, I sold a time share to purchasers named Joseph and Julia Brown on August 31, 2003.

8. Vacation Village gave this deal contract number 73541. A copy of my salesman ledger report, from August, 2003 through April, 2007, with the Brown deal listed, is attached as Exhibit 1 to this Affidavit.

9. The deal was "closed" according to Vacation Village on March 21, 2004. See Exhibit 1.

10. I had expected to get paid on this deal some time in 2004, and when I was not paid, I called the Browns, who told me that they had made all payments due, but that they had been making untimely payments.

11. I waited and waited to receive the $319 due to me as my commission on the Brown sale, but as of April of 2007, almost four years after the sale of the time share, and three years after the "closing", I still had not received my commission.

2

12.     Finally, I checked the Registry of Deeds in Berkshire County to see if the timeshare had been sold or foreclosed, and according to the records for "grantor" and "grantee" which I reviewed, the Browns still owned the time share.  A copy of the abstract of the Registry record that I reviewed is attached as Exhibit 2 to this Affidavit.

13.     I was very upset that I had waited so long for this commission, so on April 8, 2007, I gave Faith Lippert, the Office Manager and Human Resource Representative of Patriot Resorts at Vacation Village, a completed form which showed that I had closed this deal on March 21, 2004, but that I had never been paid.  A copy of the form I gave Ms. Lippert is attached as Exhibit 3 to this Affidavit.

14.     Ms. Lippert then responded to me in writing on the form and returned it to me.  See, Exhibit 3.

15.     Ms. Lippert wrote that "….these people are bad pays-no timely pymts," which was the only explanation I received from Vacation Village about why I had not received a commission on a closed deal for three years.

16.     The Brown deal, then, had not been cancelled by Vacation Village, because when a deal was cancelled and I had asked about my commission, Ms. Lippert would note on the form the following notation: "CxL'D".  See, e.g., a copy of the form I used to request information on a time share sold to Vincent Brantley, attached as Exhibit 4 to this Affidavit..

17.     I was not paid on the Brown deal until this week, nearly four years after I sold them the timeshare, and just a few weeks after the plaintiffs in this case filed their motion for summary judgment which says that Vacation Village did not pay commissions in a timely way.

18. I do not understand why Vacation Village had the use of the downpayment and monthly payments made by the Browns, but still would not pay me my commission for nearly four years.

19. To show that this is not just one example, the same thing happened on the sale of a timeshare to Starlette Bates, given contract number 74925.

20. As Exhibit 1 shows, I sold Ms. Bates a timeshare on February 27, 2004, and the deal was "closed" under Vacation Village rules on July 27, 2004.  See, Exhibit 1.

21. I have never been paid on this sale, more than three years after I sold the time share and almost three years after the deal was closed.

22. As with the Browns, I complained in writing to Faith Lippert about this commission on April 8, 2007, as I had not been paid three years after the sale.  A copy of the form is attached to this Affidavit as Exhibit 5.

23. Ms. Lippert wrote me back that "these people are bad pays-50 days late-Not timely payments."

24. Again, this meant that the sale to Ms. Bates was still "good business" as Vacation Village calls it, since Ms. Lippert's response to me about deals that were cancelled was "CXL'D", as noted on a form I submitted for a time share sold to Lorraine Jackson.  A copy of the form regarding the commission earned for Ms. Jackson is attached to this Affidavit as Exhibit 6.

25. Despite the fact that Ms. Bates still owns her time share, and has made almost every payment, and despite the fact that Vacation Village received its downpayment and has had use of the monthly payments, I have never received my $287 commission on this deal, sold over three years ago.

26. Vacation Village has also garnished my commissions during my employment, through a process they called a "commission charge back".

27. A "charge back" could occur, according to the employment contract used by the defendants, when a buyer did not make "three timely monthly payments from the date the first payments [were] due," and the mortgage/notes of the buyer were considered "non-performing".

28. Patriot Resorts would then pay themselves back from future commissions owed to me.

29. The company promised that they would make the reimbursements "immediately after the Company receive[d] notice" of the lack of these first three timely payments by a purchaser, according to the contract.

30. Despite this promise, I was charged back a commission that I had received and paid taxes on, years after the closing.

31. For example, I was involved in the sale of a timeshare to Drake Lacy, listed as contract 71823, which was sold on October 26, 2002.

32. I was paid a $50 commission for my part in the sale.

33. I paid taxes on this amount, and I assumed that the money was mine, because the defendants gave me no notice that the buyer had not made timely payments during the first three months of loan to buy the time share.

34. But in June, 2004, I had $50 deducted from my sales commission check, almost two years after the sale of the timeshare to Drake Lacy.

35. I was notified then that the timeshare deal was "cancelled" on August 27, 2004.

36. The facts show that Drake Lacy must have made some payments, because the cancellation only occurred many, many months after the sale, and I do not believe that the defendants had the right to take this money back so many months after the sale.

37. I also made a sale to a purchaser named Allick, who bought a timeshare in May of 2004, and the deal was closed on November, 2004. See, Exhibit 1, contract number 75516.

38. I received $319.20 as my commission for that closing in 2004.

39. In May of 2005, I was charged back $200 and I was then further charged back $119.20 in June, 2005, six months after the closing.

40. I went and complained about this to Faith Lippert, who said that this chargeback was done in error.

41. Exhibit 1 shows that the Allick deal was never cancelled.

42. If I had not complained about the chargeback, I would never have received my commission check, as Ms. Lippert only paid me the second time because I complained.

43. I had paid tax on the $319.20 when it was paid to me in 2004, but the defendants took exactly this amount out from my paycheck in 2005, without any adjustment for taxes, and I then paid taxes again on the same commission.

44. I believe that the late payments of commissions and the chargebacks were illegal, and the defendants still owe me the commissions for the Bates and Lacy deals.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS DAY

DATE: 5/10/07                    /s/ Beth Torra
                                 BETH TORRA

CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

/s/ Joel Feldman
Joel Feldman