UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBIN, on behalf of themselves and on behalf of others who are similarly situated, | DOCKET NO. 04-CV-30091-MAP |
| Plaintiffs, | |
| vs. | |
| PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III REBECCA A FOSTER. and JAMES E. LAMBERT, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT V
(MARTIN'S INDIVIDUAL CLAIM FOR RELIEF:
RETALIATION IN VOLATION OF M.G.L. CH. 149 § 148A)**

**I. INTRODUCTION**

In this class and individual matter, in Count V plaintiff Roger Martin has brought this individual action for equitable relief and compensatory and punitive damages against defendants Patriot Resorts Corp, the Berkley Group, Inc., Mark J. Landau, J.P. Ottino, III, Rebecca A. Foster, and James E. Lambert (collectively "the defendants) for retaliation based upon his complaints about defendants' failure to pay him and specifically to make timely payments of his earned commissions under the state wage and hour statute.

1

Roger Martin was hired by the defendants in August of 2001 to sell time shares for the resort Vacation Village in the Berkshires. Plaintiff's SODF, ¶ 1. Patriot Resorts owns Vacation Village, and Patriot Resorts is a wholly owned subsidiary of the Berkley Group. Plaintiff's SODF, ¶ 2.

Mr. Martin proved to be a successful timeshare salesman. Plaintiff's SODF, ¶ 16. He was a top seller, and he received the company's "Million Dollar Ring" for selling a million dollars worth of timeshares. Plaintiff's SODF, ¶ 16. He was frustrated by the defendants' failure to make timely payment of his earned commissions, and their failure to pay minimum wage and overtime, and he complained to his supervisors. Plaintiff's SODF, ¶¶ 17-19. He was fired for insubordination in 2003, and, at that time contacted the Office of the Attorney General regarding untimely payments of commissions and he received a letter from the office authorizing him to bring a private suit against defendants. Plaintiff's SODF, ¶¶ 20-21.

Six months after he was first terminated, Mr. Martin was rehired because defendants represented to him that he was a valuable member of the team, and that they would "love to have him back." Plaintiff's SODF, ¶ 22. Hoping things would change for the better, Mr. Martin returned to work for defendants, but encountered the same problems. Plaintiff's SODF, ¶ 24. Mr. Martin once again complained to his supervisors and other managers about not being paid on a regular basis for sales that he had booked and closed. Plaintiff's SODF, ¶ 26.

On September 21, 2004, Mr. Martin approached Mr. Stensland regarding the

2

continued untimely payments of his commission and the utter failure of the defendants to pay him minimum wage and overtime payments. Plaintiff's SODF, ¶ 28. At the end of the conversation where Mr. Martin asserted his rights to be paid under the state wage payment statute, Mr. Stensland told Mr. Martin to go home. Plaintiff's SODF, ¶ 28. Mr. Martin received a voicemail a few hours later informing him that he was fired by defendants.

Defendants have moved for summary judgment on Mr. Martin's individual retaliation clam. For the reasons set forth below, defendants are not entitled to an award of summary judgment.

## II.   FACTUAL BACKGROUND

The plaintiff has prepared a Statement of Material Facts as to which there Exists a Genuine Dispute to be Tried (hereafter "Plaintiff's SODF") which has been submitted in support of the opposition to the defendant's Motion for Summary Judgment, and the plaintiff incorporates those facts into this Memorandum of Law by reference.

## III.   SUMMARY JUDMENT STANDARD ON RETALIATION CASES

Under the Federal Rules of Civil Procedure, summary judgment is appropriate only when all the relevant pleadings and supporting documents, viewed in a light most favorable to the non-moving party, present no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995). All reasonable inferences which may be drawn from the record before the court are to be indulged in favor of the

3

nonmoving party. Oliver v. Digital Equipment Corp., 846 F.2d 103, 105 (1st Cir. 1988).

The movant bears the initial burden of proving that no genuine issues of material fact exist for trial. Sands v. Ridefilm Corp., 212 F.3d 657, 661 (1st Cir. 2000). See, Celotex Corp. v. Catrett, 477 U.S. 317, 323 -324 (1986). The First Circuit has defined a "genuine issue of material fact" as that which "might affect the outcome of the suit under the governing law." In deciding a motion for summary judgment, "the court must ask 'whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.'" Lipsett v. University of Puerto Rico, 864 F.2d 881, 894 (1st Cir. 1988), *quoting,* Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 252, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986) (internal quotations omitted). In other words, "[a]n issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Oliver, 846 F.2d at 105 (citations omitted).

In general, summary judgment is an inappropriate tool for resolving claims of employment discrimination. Discrimination cases often involve issues of motivation and intent which can only be proved through reliance on circumstantial evidence. Such determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the jury. See e.g., LeBlanc v. Great American Ins. Co., 6 F.3d 836, 840 (1st Cir. 1993), *cert. denied*, 128 L. Ed. 2d 72, 114 S. Ct. 1398 (1994); Waltman v. International Paper Co., 875 F.2d 468 (5th Cir. 1989). Thus, courts should exercise particular caution before granting summary judgment for employers on such issues of pretext, motive and intent. Santiago-Ramos v.

4

Centennial P,R, Wireless Corp., 217 F. 3d 46, 54 (1st Cir. 2000). The reason for this caution is "because of the availability of seemingly neutral rationales under which an employer can hide its discriminatory intent." Hodgens v. General Dynamics Corp., 144 F.2d 151, 167 (1st Cir. 1998).

IV.    **LEGAL ARGUMENT**

    A.    A Reasonable Jury Could Conclude from the Evidence that Roger Martin was Subjected to Retaliation After Complaining About Violations of the Massachusetts Wage Statute

The wage statute retaliation claim presumably follows the well known burden shifting paradigm used in other matters of inferential proof.  A plaintiff asserting a claim of retaliation must make out a *prima facie* case demonstrating that: (1) he engaged in a protected activity, known to the employer; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment actions. Ramos v. Roche Products, Inc., 936 F.2d 43, 48 (1st Cir. 1991), *cert. denied*, Rossy v. Roche Products, Inc., 502 U.S. 941, 116 L. Ed. 2d 330, 112 S. Ct. 379.  The First Circuit has described this initial stage as placing a "relatively light burden" on the plaintiff. Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995).[1]

---

[1] Massachusetts law applies the same burden shifting standard in retaliation as federal claims generally and

With respect to the third element ," [a] showing of [an adverse employment action] soon after the employee engages in [protected] activity. . . is indirect proof of a causal connection between the [adverse employment action] and the activity because it is strongly suggestive of retaliation." Oliver v. Digital Equipment Corp., 846 F.2d 103, 110 (1st Cir. 1988).

Retaliatory intent may also be shown, in conjunction with the plaintiff's *prima facie* case, by sufficient proof to rebut the employer's proffered reason for the adverse employment action which is alleged to be retaliatory. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2109 (2000); see also, Raniola, 243 F.3d at 625.

In order to sufficiently rebut defendants' "legitimate, non-retaliatory reason" for his dismissal, the plaintiff must show that this reason was not the real reason but in fact the real reason was retaliatory. The plaintiff can make such a showing by offering proof of another motive for the adverse action. *See* Connell v. Bank of Boston, 924 F.2d 1169, 1182 (1st Cir. 1991) (interpreting a case to mean that the plaintiff's *prima facie* case plus proof of pretext in employer's articulated reason for discrimination sufficient to avoid summary judgment).

---

specifically for retaliation for wage violations. *See* Samantha Smith and others vs. Winter Place, LLC and others, 447 Mass. 363, 369 fn 4 (2006).

6

1. Roger Martin Engaged in Activity Protected under M.G.L. ch. 149, § 148A

Roger Martin repeatedly engaged in conduct which is protected under the Commonwealth laws regarding timely payments of compensation to employees. Plaintiff's SODF, ¶ 26.

Mr. Martin was fired initially for asserting his rights under the wage statute but was rehired to work for defendants six moths later. He returned, hoping things would improve and that he would, at last, be timely paid his commissions. He soon discovered that the compensation practices of defendants had not changed since he had been employed there previously. Plaintiff's SODF, ¶ 25. He was looking to receive regular compensation in the form of commissions for the selling of timeshares. He also sought minimum wage and overtime payments as he was required to be at work on a regular basis and, at times over 40 hours per week. Plaintiff's SODF, ¶ 25. He made his concerns known to his supervisors. Plaintiff's SODF, ¶ 26.

Mr. Martin complained about the untimely payment of commissions and overtime payments to his line directors, Gordon Leete and Paul Stensland, as well as to Bill Rauer, the project director at Vacation Village. Plaintiff's SODF, ¶ 26. He also complained to Rodney Lewis, Mr. Rauer's replacement. Id. He approached Faith Lippert about untimely payment of wages. Id.

Mr. Martin reasonably believed that the untimely payment of commissions was illegal according to the laws. Plaintiff's SODF, ¶ 25. He reasonably believed he was not

7

receiving his earned commission payments within the timeframe set forth in the wage statute. Plaintiff's SODF, ¶ 25. He was not being paid minimum wage and overtime which he reasonably believed he was entitled to under that statute. Plaintiff's SODF, ¶ 25. He believed this was illegal, based upon his reading of the law, and he attempted to resolve this issue by talking to his supervisors and other managers at Vacation Village. Plaintiff's SODF, ¶ 26. Such activity, complaining to supervisors about non-payment of earned wages, is protected in Massachusetts, as a means by which employees are authorized to enforce their rights. Smith, 447 Mass. at 367.

Defendants claim that Mr. Martin had "temper-control" issues, and that he "complained about everything his employer did." Defendants also dispute that Mr. Martin was in good faith asserting his rights under the Wage Act but was rather just someone who had a hostile and threatening attitude toward his coworkers and superiors. Such claims are insufficient to defeat the fact that Mr. Martin's activities were protected

Mr. Martin was frustrated by the defendants' failure to make timely payments. Plaintiff's SODF, ¶ 25. He reasonably believed that such actions were illegal. Plaintiff's SODF, ¶ 25. Whether or not his delivery was palatable to defendants, a reasonable jury could nevertheless conclude that he was asserting his rights in good faith. Mr. Martin clearly raised the issue of untimely payment with Mr. Stensland. Plaintiff's SODF, ¶ 28. He asserted his right to be paid timely for deals he had written, and a jury could certainly find that such actions were more than mere "abstract grumbling." As a result, he was sent home and then fired within hours. Plaintiff's SODF, ¶ 29. A jury could find that

Mr. Martin was seeking to enforce rights he reasonably believed he was entitled to.

  2.  Defendants took an adverse action against Mr. Martin when he was fired in September 2004

While defendants claim that Mr. Martin was not fired but that he quit, Mr. Martin presents record evidence that he was fired by Mr. Rauer on that date.  Plaintiff's SODF, ¶ 28.  Defendants argue that Mr. Martin elected to quit his employment at Vacation Village because he no longer wanted to work there, but it is Mr. Martin's testimony that shortly after he was complaining to his supervisor about not getting paid, he was fired.  Id.

On September 21, 2004, Mr. Martin was upset about not being paid on commissions he had earned.  Plaintiff's SODF, ¶ 28.  He approached his supervisor, Paul Stensland, and explained to him that he was upset about not getting paid and that he wanted to get paid his commissions for selling timeshares.  Id.  Mr. Stensland told him to go home, which Mr. Martin did.  Id.  Later that afternoon, Mr. Martin received a phone call informing him that he had been fired by Bill Rauer.  Plaintiff's SODF, ¶ 29.  Although defendants told him it was ostensibly for refusing to take a tour, this is patently false.  Mr. Martin had not been offered a tour prior to or during his conversation with Mr. Stensland, rather he was sent home by Mr. Stensland.  Plaintiff's SODF, ¶ 28.

There is clearly a material dispute.  Viewing the evidence in the light most favorable to the non-moving party, Mr. Martin's statement that he was fired should be credited.  At bottom, this dispute of fact is material to the outcome of the case and should be a presented to the finder of fact at trial, and summary judgment should be denied.

      3.      But for Mr. Martin's assertion of his rights under the Wage Statute, he would not have been fired by defendants in September of 2004

Here, a reasonable finder of fact could conclude that but for Mr. Martin's approaching Mr. Stensland regarding the untimely payment of wages, Mr. Martin would not have been terminated from employment at Vacation Village. Temporal proximity between the protected activity and the adverse action is sufficient to infer retaliation. <u>Oliver</u>, 846 F.2d at 110. Mr. Martin was subjected to adverse employment action shortly after he engaged in protected activity. Plaintiff's SODF, ¶¶ 28-29. Specifically, Mr. Martin was terminated the same day he complained to his supervisor Mr. Stensland that he was not being paid for the work he was doing. Plaintiff's SODF, ¶¶ 28-29. Mr. Martin's complaints were based upon his good faith belief that he was not being paid. Plaintiff's SODF, ¶ 25. Hours after he made those complaints, he was informed that he was fired. Plaintiff's SODF, ¶¶ 28-29. Such temporal proximity is indirect proof of causation, and satisfies Mr. Martin's burden and his claim should survive at this juncture.

      4.      Defendants assertion that Mr. Martin voluntarily quit is pretext for retaliation

Defendants argue that Mr. Martin was not fired but that he resigned his employment with defendants. Their statement contravenes Mr. Martin's testimony that he was fired on September 21, 2004, and is merely a pretextual to obscure the fact that Mr. Martin was fired because he made complaints about not being paid for the work he had done for defendants.

Furthermore, despite the fact that defendants contest Mr. Martin's testimony that

he was fired, defendants seem to argue that if Martin were fired, it would have been for legitimate reasons, namely that he did not take a tour on the day he was fired. Mr. Martin disputes the fact that he had a tour that he refused to take. While he was talking to Mr. Stensland, he had not been asked to take a tour, instead he was sent home by Mr. Stensland at that time. Plaintiff's SODF, ¶ 28. Here, Mr. Martin provides sufficient proof to avoid summary judgment on defendants' purported legitimate reason for his dismissal. Furthermore, based on Mr. Martin's contention that he was fired and that there was no tour offered to him, it is appropriate to pose the question to a finder of fact. The "availability of seemingly neutral rationales under which an employer can hide its discriminatory intent." Hodgens, 144 F.2d at 167. As such, summary judgment for defendants on the issue of whether defendants retaliated against Mr. Martin is inappropriate because there is a genuine issue of material fact as to whether defendants fired Mr. Martin and if so, whether the firing was motivated by unlawful intent.

B. Defendant's Argument that there is a Statutory Prerequisite to Filing a Civil Action in Wage and Hour Cases is not supported by Existing Law

Defendants argue that they are entitled to summary judgment on Mr. Martin's retaliation claim because he did not first present that claim to the Office of the Attorney General (hereinafter the "OAG"). Defendant's basis for this assertion is not supported by existing law.

Mr. Martin met the condition precedent for filing a suit against defendants and has complied with all of the prerequisites for filing this suit. He filed a complaint with the

11

OAG and was given an authorization letter to initiate a private suit against the defendants. Plaintiff's SODF, ¶ 20. In that complaint, he was seeking to enforce the Massachusetts Wage and Hour laws. Plaintiff's SODF, ¶ 20. Mr. Martin also made his concerns known to his employer. Plaintiff's SODF, ¶¶ 17-19. During his second term of employment with Vacation Village, he sought to enforce his rights to be paid according to the law. Plaintiff's SODF, ¶ 26. As a result of making such complaints, Mr. Martin was fired. Plaintiff's SODF, ¶ 29. Namely, he received a right to sue letter from the OAG for his claims regarding the Wage statute. Plaintiff's SODF, ¶ 20. Even if the Court were somehow to find that Mr. Martin needed to file another complaint with the attorney general Mr. Martin is not out of time to do so. Such requirement could be met as Mr. Martin could file before September 2007 and still timely file his retaliation claim within the three year limitations period prescribed by the statute.

    C.    <u>Summary Judgment for Individual Defendants Foster and Landau is not Appropriate</u>[2]

Defendants argue that the retaliation portion of the Massachusetts Weekly Payment of Wages law does not apply to the individual defendants Foster and Landau

---

[2] Plaintiff does not dispute defendants' assertions that Mr. Ottino and Mr. Lambert should be dismissed pursuant to the Massachusetts Weekly Payment of Wages laws.

because section 148A does not define employer. This argument is based upon misguided statutory construction. It is axiomatic that adopting differing interpretations of identical language "is contrary to the basic canon of statutory construction that identical terms within an Act bear the same meaning." State of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 479 (1992) (citing Sullivan v. Stroop, 496 U.S. 478, 484 (1990)).

Here, employer is defined in the first portion of the statute as the "president and treasurer of a corporation and any officers or agents having the management of such corporation . . ." M.G.L. ch. 149, § 148. The anti-retaliation section prohibits an employer for penalizing an employee who is seeking to enforce his or her rights "under the wages and hours provisions of this chapter." M.G.L. ch. 149, § 148A. The defendants advocate for a different meaning of employer under M.G.L. c. 148A than the one 148 in an attempt to insulate the president and treasurer of the corporation from liability for retaliatory acts on the part of the corporation. This would lead to the absurd result that while an employer, as defined within the meaning of the statute, cannot unlawfully retain wages owed to an employee, an employer who does so and then retaliates against an employee who is attempting to enforce his or her rights would not be

liable for any possible retaliation against such an employee.[3]  This result certainly could not have been contemplated by the Legislature.

Rebecca Foster is the president of both the Berkley Group and of Patriot Resorts. Plaintiff's SODF, ¶ 3.  Similarly, Mark Landau is the Treasurer of both Patriot Resorts and of Berkley Group.  Plaintiff's SODF, ¶ 5.  The Weekly Payment of Wages Statute applies to employers, including the president and treasurer of the corporation.  M.G.L. ch. 149, § 148.  As president of the corporation, Ms. Foster is an employer within the meaning of the statute.  As treasurer of the corporation, Mr. Landau is an employer within the meaning of the statute.  Summary judgment for these individual defendants is not appropriate.

      D.     <u>Summary Judgment for Berkley on Martin's Retaliation Claim is not Appropriate</u>

Defendants argue that summary judgment for the Berkley Group is appropriate because Berkley is merely Patriot Resort's parent corporation and nothing more, despite the fact that Patriot Resort is a wholly owned subsidiary of Berkley Group.  However,

---

[3] Furthermore, in <u>Smith</u>, the Supreme Judicial Court allowed a lawsuit to go forward against Winter Place, LLC and others, including Paul Licari and Lydia Shire, principals of Locke-Ober Company, the restaurant where plaintiffs worked.  <u>Smith</u>, 447 Mass. at 363.  Plaintiffs were allowed to sue defendants for retaliation and while the court did not specifically address whether the individual defendants were liable, it implicitly permitted suit against them when it did not dismiss the individual defendants from the case.

defendants fail to show under the integrated-enterprise test how Berkley could avoid liability.

The First Circuit adopted the integrated-enterprise test in <u>Romano</u>, to determine whether a parent corporation is liable for the acts of a wholly owned subsidiary by examining four factors: 1. interrelation of operations; 2. common management, 3. centralized control of labor relations; and 4. common ownership (<u>Romano v. U-Haul International</u>, 233 F. 3d 665, 662 (1st Cir. 2000)), or common financial control.  <u>Cook v. Arrowsmith Shelburne, Inc.</u>, 69 F.3d 135, 1240 (2nd Cir. 1995).  While the <u>Romano</u> court acknowledged and agreed with the circuits that had adopted the view that "control of labor operations, i.e., control of employment decisions, is the most important of the four factors," the court refused to apply the most stringent reading of this test. <u>Id</u>. at 666. Rather, the court followed the more "flexible" approach adopted by the Second Circuit, "which focuses on employment decisions, but only to the extent that the parent exerts 'an amount of participation that is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions.'" <u>Id</u>. (citing <u>Cook</u>, 69 F.3d at 1240.)

In <u>Cook</u>, the court applied the integrated-enterprise test to determine whether a parent corporation was responsible for the actions of its subsidiary.  There, the court focused on the second factor, that of centralized control of labor relations.  In that case, the court denied summary judgment for the parent of a wholly owned subsidiary.  It based its conclusion on  the fact that there was substantial evidence of an interrelation of

15

operations between the two companies because the parent ran the subsidiary in a "direct, hands-on fashion, establishing operating practices and management practices" of the subsidiary.  Cook, 69 F.3d at 1241.

Similarly, summary judgment for Berkley must be denied under the integrated-enterprise test because there are sufficient facts to show that the Berkley Group is liable for the acts of the wholly owned subsidiary, Patriot Resorts.  First, there is an interrelation of operations between Patriot Resorts and the Berkley Group because Berkley runs Patriot in a "direct, hands-on fashion, establishing operating practices and management practices" for Patriot.  In her deposition, Rebecca Foster acknowledged that she set employment policies and procedures for employees of Vacation Village, including sales techniques, retirement plans, and attendance issues.  Plaintiff's SODF, ¶ 8.

Second, the Cook Court concluded that there was a common management structure evidenced by the fact that the president of the subsidiary operated out of one of the parent company's offices.  Cook, 69 F.3d at 1241.  There is common management structure between Patriot and Berkley.  Rebecca Foster is the president of both Patriot Resorts and of the Berkley Group.  Several of her colleagues at the Berkley Group also participate in the management of Patriot Resorts.  J.P. Ottino is the vice president of corporate acquisitions of the Berkley Group and he is director and vice president of Patriot Resorts.  Plaintiff's SODF, ¶ 6.  Mark J. Landau is the treasurer of both Patriot Resorts and the Berkley Group and was chief financial officer of the Berkley Group.  Plaintiff's SODF, ¶ 5.  These individuals are involved in the management of both the

16

parent company, the Berkley Group, and of the wholly owned subsidiary, Patriot Resorts. Plaintiff's SODF, ¶ 2.

In Cook, the parent maintained control of labor relations at the subsidiary, evidenced by the fact that applications for employment with the subsidiary were processed by the parent, all personnel status reports were approved by the parent, and that the subsidiary cleared all major employment decisions with the parent. Cook, 69 F.3d at 1241. Likewise, the Berkley Group maintains control of much of the labor relations of Patriot Resorts. During all relevant times, Rebecca Foster was the direct supervisor Faith Lippert, the human resources manager at Vacation Village. Plaintiff's SODF, ¶ 4. Ms. Lippert is responsible for the administration of sales contracts for time share sales, and the payment of commissions to time share sales persons at Vacation Village. Id. Furthermore, Ms. Lippert kept Ms. Foster apprised of personnel matter and discussed personnel related concerns with Ms. Lippert. Plaintiff's SODF, ¶ 7. Ms. Foster promulgated policy guidelines for the sales personnel at Patriot Resorts that included attendance concerns and disciplinary actions. Plaintiff's SODF, ¶ 8.

As such, the two companies were not separate entities, and defendants' claims that Berkley was "simply . . . [Patriot Resorts'] parent corporation" are not credible when examining the integration between the two corporations.  These facts support a denial of summary judgment for the Berkley Group because they show that there is a reasonable likelihood that the integrated-enterprise test has been satisfied and as such, the Berkley Group is much more than simply the parent of Patriot Resorts.

## V. CONCLUSION

For all the reasons set forth above, the Defendant's Motion for Summary Judgment should be denied.

                                                  PLAINTIFF ROGER MARTIN
                                                  By:

                                                   /s/Suzanne Garrow_____
                                                  His attorney
                                                  Suzanne Garrow BBO# 636548
                                                  Heisler, Feldman, McCormick
                                                  & Garrow, PC
                                                  1145 Main Street, Ste. 508
                                                  Springfield, MA  01103
                                                  sgarrow@comcast.net
                                                  Phone (413) 788-7988

Dated:  May 18, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

                                               /s/ Suzanne Garrow_____
                                              Suzanne Garrow