UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LACRISHA WISE, MICHAEL : 
MASSACONI, ROGER MARTIN and : 
PETER CORBIN, on behalf of : 
themselves and on behalf of others : 
who are similarly situated, :
: DOCKET NO. 04-CV-30091-MAP
            Plaintiffs, :
v. :
:
PATRIOT RESORTS CORP., :
THE BERKLEY GROUP, INC., :
MARC J. LANDAU, J.P. OTTINO, III :
REBECCA A. FOSTER. and JAMES E. :
LAMBERT, :
            Defendants. :

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLASS CLAIM OF UNTIMELY PAYMENT OF COMMISSIONS**

I. Introduction

Defendants, Patriot Resorts Corp., The Berkley Group, Inc., Marc J. Landau, J.P. Ottino, III, Rebecca A. Foster and James E. Lambert, submit this Opposition to Plaintiffs' Motion for Partial Summary Judgment on Class Claim of Untimely Payment of Commissions, filed April 16, 2007. Plaintiffs' Motion should be denied because Defendants did not violate the Wage Act because they promptly paid Plaintiffs when their commissions became due and payable under the express, written terms of contracts they each voluntarily entered into with their employer. Furthermore, Plaintiffs' claim that Defendants illegally "charged back" Plaintiffs' commissions is improper, as Plaintiffs sole argument is that Defendants charged back commissions in violation of their employee contracts. However, there is no breach of contract claim in this lawsuit

and certainly no certified class of similarly-situated persons with alleged breach of contract claims.  Further, the Wage Act does not prohibit recoupment of commissions advanced or paid to employees under the terms of an express agreement.  Finally, not all Defendants are proper Defendants to this claim.  Accordingly, Plaintiffs' Motion for Partial Summary Judgment should be denied.

## II.  Opposition to Plaintiffs' Statement of Facts[1]

Defendants deny the allegation in Paragraph 8 of Plaintiffs' Statement of Material Facts in Support Plaintiffs' Motion for Summary Judgment.  ("Plaintiffs' Statement")  The express, written terms of Defendants' contracts with Plaintiffs clearly stated that commissions were not considered earned "until the purchaser…made three (3) timely and consecutive monthly payments in accordance with the terms of the purchase money note and mortgage."  (Defendants' Statement of Material Facts as to Which There is No Genuine Issue to be Tried Regarding Count VIII, Class Claim for Relief in Violation of M.G.L. ch. 149, §148 ("Facts") ¶ 15, filed with Defendants' Motion for Summary Judgment on Count VIII)[2]

---

[1] Defendants dispute many facts the Plaintiffs set forth in their Statement of Facts and supporting memorandum.  Particularly in dispute are those facts suggesting that Plaintiffs received commission payments in breach of their contracts' terms that provided when commissions would be due and payable.  Also in dispute are Plaintiffs' claims that Defendants did not adhere to the contracts' terms regarding charge-back of commissions.  In fact, the documents Plaintiffs cite relative to these allegations do not even support the conclusions Plaintiffs draw from them.  For purposes of this Opposition, however, Defendants maintain that such facts are not pertinent to the motion currently before the Court.  This is not a lawsuit that alleges a breach of contract claim or that has been certified as a breach of contract class action.  Accordingly, whether Defendants breached the terms of their contracts because, for example, they took too long *according to the terms of the contract*, to pay a particular Plaintiff on a particular timeshare sale, is not a genuine issue that needs to be decided by a jury to determine whether Defendants breached the Wage Act.  Defendants intend to file a separate Motion to Strike such facts.

[2] Rather than submit an additional document containing the facts upon which Defendants rely in opposing this Motion, Defendants refer the court to its Statement of Material Facts as to Which there is No Genuine Issue to Be Tried Regarding Count VIII, Class Claim for Relief in Violation of M.G.L. ch. 149, §148, which has been designated by the Court as Document no. 146.

Defendants deny the allegations in Paragraphs 9-12 of Plaintiff's Statement. With respect to financed sales for which Plaintiffs had obtained a Pre-authorized Checking withdrawal authorization ("PAC") from the purchaser, commissions were *advanced* to Plaintiffs as if the purchaser had paid cash for the sale. In addition, Defendants made exceptions to their commissions policy for certain situations where a customer repeatedly paid but paid late. (Facts ¶¶ 17, 23)

In addition, Defendants state the following material facts:

1. Plaintiffs voluntarily entered into written employment agreements with their employer, Patriot Resorts Corporation ("Patriot"). (Facts ¶ 12)

2. These written employment agreements expressly set forth that, in the case of financed sales, commissions would be definitely determined and due and payable to Plaintiffs only after the purchaser "made three (3) timely and consecutive monthly payments in accordance with the terms of the purchase money note and mortgage." (Facts ¶ 15)

3. If Plaintiffs obtained from the purchaser a Pre-authorized Checking withdrawal authorization ("PAC"), Defendants advanced Plaintiffs' commissions as if the purchaser had paid cash for the sale. (Facts ¶ 17)

4. Commissions on PAC sales were advanced to Plaintiffs often well in advance of Patriot receiving any payment whatsoever from the purchaser.[3] (Affidavit of Marc J. Landau ("Landau. Aff.") ¶ 5)

5. In the case of Cash Sales, commissions were earned upon the closing of the sale. (Facts ¶ 15)

---

[3] The first payment on a sale typically was not due from the purchaser until 45-60 days after the date purchaser signed the timeshares agreement. (Landau Aff. ¶5.)

6. Under the terms of the written employment agreements, the closing of a cash sale occurred when the following factors were met: (1) Patriot receives all proper documentation; (2) the full purchase price is paid; (3) all funds have cleared; (4) all statutory rescission periods have expired without cancellation; and (5) Patriot, under applicable law, has unrestricted use of the purchaser's funds. (Facts ¶14)

7. Patriot employees are paid weekly. Commissions that become due and payable or due to be advanced during a pay week are included on a pay ledger for that same week. The weekly pay period at Patriot ends on Sunday, and employees at Patriot are paid the Tuesday of the following week. Accordingly, upon receiving three timely and consecutive monthly payments from a purchaser, the timeshare salesperson responsible for completing the sale received his or her commissions on the Tuesday of the week following the end of the pay period in which the third timely and consecutively monthly payment was received by Patriot. (Facts ¶ 29)

8. The written agreements Plaintiffs entered into with Patriot also provided that where Plaintiffs were advanced a commission, Patriot could "charge back" those commissions from future earnings if the purchaser failed to make three timely and consecutive monthly payments. (Facts ¶ 22)

9. In the case of a charge back, the entire commission would not be charged back. Only a proportional amount would be charged back. (Facts ¶ 25)

10. Once a purchaser made three timely and consecutive monthly payments, no charge backs could occur, even if a purchaser defaulted on the sale and never made another payment to Patriot.[4] (Landau Aff. ¶ 7).

11. Once Patriot's Commissions Department became aware that a purchaser had missed a payment, Patriot immediately initiated the process of recouping commissions from the salesperson who made the sale. (Landau Aff. ¶10)

12. Whenever a commission was charged back against future earnings, Patriot informed Plaintiffs, via documentation distributed with their paychecks, which sales contract's commission was being charged back. (Landau Aff. ¶ 9)

13. If Patriot was owed a charge back on a sale closed by a salesperson no longer employed with Patriot, Patriot did not recoup the commission from that salesperson, unless the salesperson still was owed commissions on subsequent sales from which the commission could be charged back. (Landau Aff. ¶ 11)

14. If a purchaser initially was in default, but then made three timely and consecutive monthly payments before Patriot's Commissions Department became aware of the default, no charge back would occur. (Landau Aff. ¶ 12)

---

[4] One exception to this rule would be if the purchaser defaulted because of some misrepresentation made by the salesperson to the purchaser, but such instances were very rare, and the salesperson would be notified if this happened. (Landau Aff. ¶¶ 7-8)

15. In excess of 95% of sales closed by Plaintiffs were PAC sales or cash sales. (Landau Aff. ¶ 13)

16. Plaintiffs, including the representative Plaintiffs in this lawsuit, earned substantial incomes in great excess of minimum wage. As examples, Plaintiff Martin grossed $48,012.53 (2002); Plaintiff Corbin grossed $40,234.42 (2003) and Plaintiff Massaconi grossed $60,890 (2003). (Facts ¶ 10)

17. Prior to beginning employment with Patriot, some of the Plaintiffs had worked as Timeshare Sales Representatives at other resorts where they also had been paid on a commission-only basis. (Facts ¶ 11)

18. Patriot is a wholly-owned subsidiary of Defendant The Berkley Group, Inc. ("Berkley"), a foreign corporation headquartered in Fort Lauderdale, Florida. In addition to Patriot, Berkley has several other wholly-owned subsidiaries in various states. (Facts ¶ 3).

19. Defendant J. P. Ottino, III ("Ottino") at all relevant times was a Vice President – Corporate Acquisitions of Berkley and a Director and Vice President of Patriot. Ottino at all relevant times has resided and worked for Berkley in Florida. (Facts ¶ 6)

20. Defendant James E. Lambert ("Lambert") at all relevant times was Chairman of the Board and CEO of Berkley, only. Lambert at all relevant times has resided in Florida and has worked on a part-time basis providing sales and marketing expertise to Berkley's Board of Directors. (Facts ¶ 7)

### III. Argument

The essence of Plaintiffs' Motion is two-fold: Firstly, Plaintiffs' contend that parties to an express, written contract are not permitted under Massachusetts law to determine when commissions will be due and payable to an employee. This argument is made in the face of *numerous* cases that acknowledge the exact *opposite:* i.e., that parties to a contract can agree if and when commissions will be due and payable.

Secondly, Plaintiffs contend that Defendants were not legally entitled to recover commissions advanced or paid to them even though the contracts these (often very experienced) salespeople entered into with Defendants expressly provided for such recoupment. Further, in an apparent attempt to confuse matters, Plaintiffs set forth numerous facts suggesting that Defendants breached the contracts by not paying them commissions on time or by not "promptly" recouping commissions, and, thus, that somehow results in a violation of Chapter 149. Plaintiffs identify absolutely no support for this contention.

A.  <u>Defendants' Commissions Practices Did Not Violate Mass. Gen. L. ch. 149.</u>

Mass. Gen. Laws ch. 149, §148 (the "Wage Act") governs the timely payment of wages. The paragraph of §148 that is relevant to commissions states that it applies "so far as apt" to commissions that are definitely determined and have become due and payable." *Wiedmann v. The Bradford Group, Inc.*, 444 Mass. 698, 704, 831 N.E.2d 304, 309 (1995).

Plaintiffs allege that Defendants violated the Wage Act because the contingencies that Defendants and Plaintiffs agreed would determine when

7

commissions become due and payable sometimes resulted in situations where commissions would not become due and payable until several months after the completion of a sale. However, nothing in the Wage Act sets forth any requirements with respect to when commissions must become due and payable or, more relevantly, precludes the parties from contractually establishing when commissions are due and payable. In an arena where substantial commissions are being paid on sales which may not be completed for years, if ever, it is altogether appropriate and legal for the parties to contractually determine such matters in advance of entering into the employment relationship. Notably, Plaintiffs do not cite any statute or case law in support of the proposition that parties to such a relationship cannot contractually determine when commissions become due and payable. To the contrary, numerous cases have recognized the parties' ability to contract as to if and when commissions are due and payable. Nothing in the Wage Act could rationally be construed as a limitation on the parties' right to contract such matters and enter into binding contractual agreements setting forth when payments relating to commission sales are due and when they are payable.

### 1. Mass. Gen. L. ch. 149 §148's Applicability to Commission Payments is Limited.

The Wage Act is not all encompassing when it comes to its applicability to commissions. The Wage Act provides that employees earning wages must be paid within a certain number of days of the end of a pay period. The Act also applies "so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable…." Mass. Gen. Laws ch. 149, §148. The Wage Act was intended to

prevent unreasonable detention of wages. *Boston Police Patrolmen's Ass'n v. Boston*, 435 Mass. 718, 720, 761 N.E.2d 479 (2002). Its goal is to protect casual wage earners who might otherwise be vulnerable to employer intimidation. *Cumpata v. Blue Cross Blue Shield of Ma.*, 113 F. Supp. 2d 164, 167 (D. Mass. 2000) (citation omitted). It was not intended, and cannot be construed, to prohibit a voluntary contractual agreement regarding how the parties will share the risks, *vis a vis* the payment of commission, of a sale "gone bad."

In construing the Wage Act, courts have limited commissions that fall within its scope to those which are a significant part of the weekly compensation of a person who would ordinarily be paid weekly, such as retail salespeople. *Commonwealth v. Savage*, 31 Mass. App. Ct. 714, 716 (1991); *Beaule v. M.S. Inserts and Fasteners Corp.*, 17 Mass. L. Rptr. 623 (2004). Irregular and substantial commissions have not been afforded the protection of the Wage Act. *Cumpata*, 113 F. Supp. 2d at 168; *Dennis v. Jager, Smith & Stetler, P.C.*, 2000 WL 782946, *1 (Mass. Super. Apr. 10, 2000). Although Plaintiffs would have the Court believe that they were forced to go without pay for months or years waiting for their commissions to become due and payable, this simply is not the case. First of all, at least 95% sales are PAC sales, which means Plaintiffs receive the majority of their commissions within 9-16 days after the closing of a sale. (Defendants' Statement of Additional Material Facts (Add. Facts) Facts ¶¶ 3-5, 7). Second, Plaintiffs are not the "laborers or casual wage earners" who might otherwise be vulnerable to employer intimidation or a delay in life-sustaining wages. *Cumpata*, 113 F. Supp. 2d at 167. To the contrary, Plaintiffs were commissioned salespeople who earned substantial incomes from selling timeshare units. (Add. Facts ¶ 16) Many

Plaintiffs had sold timeshare units for other employers prior to beginning employment with Patriot. (Add. Facts ¶ 17) Being paid on a commission-only basis was not a novel concept to them as they had been paid in that manner by other employers. (Id.) Plaintiffs voluntarily entered into employment contracts ("Contracts") with Defendants and understood the terms of those Contracts, which clearly explained when commissions would be definitely determined and due and payable to them as wages or an advance on wages. (Add. Facts ¶¶ 1-6) Accordingly, Plaintiffs are not the casual wage earners vulnerable to employer intimidation contemplated under the Wage Act.

      2.    <u>Plaintiffs' Commissions Did Not Become Due and Payable Until the Satisfaction of the Contingencies Set Forth in the Contracts.</u>

As noted above, commissions only come within the purview of the Act when they are "definitely determined" and have become "due and payable." Mass. Gen. Laws ch. 149, §148; *Cumpata,* 113 F. Supp. 2d at 167. Thus, commissions that are based on a number of contingencies are not "definitely determined" or "due and payable" and do not fall within the Act unless the contingencies have been satisfied. *Cumpata*, 113 F. Supp. 2d at 125 (finding that commissions at issue were not covered by the Wage Act in part due to their contingent nature); *Locke v. Sales Consultants of Boston, Ma.*, No. CA984081 2001 WL 716911 (Mass. Super. April 13, 2001) (holding that commissions paid quarterly and triggered by numerous contingencies are not covered by the Wage Act).

According to the Contracts, Commissions were "definitely determined" subject to numerous contingencies set forth in the Contracts. In the case of financed sales, commissions were earned when the purchaser made three timely and consecutive monthly payments in accordance with the terms of a purchase money note and

10

mortgage, and where Plaintiffs obtained a PAC from the purchaser, commissions were advanced to Plaintiffs as if the purchaser had paid cash for the sale. (Add. Facts ¶¶ 2-3) Plaintiffs argue that the fact that these contingencies sometimes resulted in the payment of commissions months or, in rare cases, years after a sale renders Defendants' commissions practices *per se* unlawful. Plaintiffs suggest that the only valid contingency Defendants could place on commissions is the sale of a timeshare. They argue, in effect, that Defendants were not allowed to place other contingencies on Plaintiffs' commissions, such as the timeliness of payments by purchasers. However, Plaintiffs cite absolutely no legal support for this argument. On the contrary, courts frequently have recognized that such contingencies may affect when commissions become due and payable, or whether they become due and payable at all. *See Klint v. J & J Associates,* No. 97-0251*,* 1998 WL 1181125, *3 n.4 (Mass. Super. Sept. 3, 1998); *Cumpata*, 113 F. Supp. 2d at 168; *Berenson v. Monadnock Assoc., Inc.*, No. 045503E, 2006 WL 2003573 at *1 (Mass. Super. Apr. 10, 2006) (recognizing contingency that allowed for compensation to be deferred indefinitely); *Sterling Research, Inc. v. Pietrobono*, No. 02-40150-FDS, 2005 WL 3116758, *12-13 (D. Mass. Nov. 21, 2005)(recognizing contingency that allowed for nonpayment of commissions where individual employed with employer for a certain amount of time and granting summary judgment for employer where employee failed to set forth sufficient facts in support of his claim that commissions were contingent only upon sale); *Richards v. Datatec Systems, Inc.*, No. 040509BLS2, 2005 WL 1156162, *1-2 (Mass. Super. Mar. 31, 2005)(recognizing potential contingencies beyond the mere closing of a sale, such as receipt of full payment for a purchase).

Plaintiffs state in their Motion that commissions "are owed to salespersons with [sic] a relatively short time after the event yielding the commission has occurred." However, Plaintiffs insist, without any legal basis whatsoever, that the "event yielding the commission" is the mere sale of a timeshare, despite the fact that the express, written terms of Plaintiffs' Contracts with Defendants provide that the event yielding the commission is the <u>closing</u> of a sale, which cannot occur until Patriot receives three timely and consecutive payments from the purchaser. Plaintiffs have suggested that Defendants' three consecutive payment provision is somehow unfair to them because it is theoretically possible that a purchaser could take years to make three consecutive, timely monthly payments and they would be unfairly delayed in receiving commissions. Despite their contention, there is nothing inherently wrong with such an arrangement. In fact, as a matter of law, Defendants could have included in the Contracts' language that the Plaintiffs would get *no* commissions on financed sales or no commissions on financed sales until the timeshare interest was paid for *completely*. *See, e.g., Klint,* 1998 WL 1181125 at *3, n.4 (recognizing contingencies in commission structures may result in *no* commission being owed and stating, "By definition under Klint's employment agreement, Klint was not entitled to commissions on [customer] sales for which [the employer] itself had not yet received its payment from [the customer]. The phase-out of the [customer] sales agreement, and ongoing disputes about what [the customer] does or does not owe for sales made either under that agreement or subsequent to its formal cancellation would appear to cloud (if not eliminate) much of Klint's own commission claim.")

The Contracts agreed to by Plaintiffs expressly provided when commissions were due and payable, and thus no reasonable jury could find that they were due and payable at some time *other* than the time frame set forth in the Contracts. *Desantis v. Commonwealth Energy Sys.*, 20 Mass. L. Rptr. 460 (2005) (terms of offer letter, acceptance letter and employer's actual practices supported conclusion commissions due and payable when "booked").[5]

### 3. Defendants Paid Plaintiffs' Commissions Promptly When They Became Due and Payable

Once a commission under the terms of the Contract became due and payable, Defendants promptly paid that commission. Defendants' work week ran from Monday through Sunday, and Plaintiffs were paid weekly. (Add. Facts ¶ 7) Commissions that became due and payable or due to be advanced during a pay week were included on a pay ledger for that same week ending Sunday. (Id.) On the Tuesday of the following week, Plaintiffs were paid or advanced their commissions. (Id.) Thus, Plaintiffs generally were paid (or advanced) commissions between 9-16 days after commissions became due and payable. This practice constitutes "prompt" payment consistent with the intent of the Wage Act.[6] Indeed, the Wage Act recognizes that payment of wages

---

[5] Again, to the extent Plaintiffs are claiming that the Defendants' breached the contracts' terms by not paying when commissions were due according under the express contractual language, this argument should not be entertained as this is not a class action stemming from a breach of contract claim.
[6] Only once a commission is "definitely determined" and has become "due and payable," must it be paid "promptly" and even then not necessarily within a specific number of days. *Klint v. J & J Assoc., Inc.*, 1998 WL 1181125, *3 (Mass. Super. Sept. 3, 1998). As logically reasoned by the *Klint* court:
> The reference to applying §148 to commissions "so far as apt" appears to refer to some flexibility of application in the specific time frames that are set forth for "wages." The requirements for prompt payment of wages include both a specific frequency of wage payments and a requirement that they be paid within a certain number of days of a particular pay period. Some of these calculations make no sense in the context of commissions, which would not normally be paid on such a frequent basis and would not normally be due within a few days of the end of a "pay period." What is apparently called for in the case of commissions is prompt payment once they are calculated, due and owing, not necessarily payment within a specific number of days.

may be made in weekly, bi-weekly or even monthly increments.  *See* Mass. Gen. Laws ch. 149, §148*.*

>    B.    Defendants' "Charge Back" Practices Do Not Violate Mass. Gen. L. ch. 149.

Plaintiffs offer no explanation or legal support for their contention that Defendants' charge back practices are in violation of Chapter 149 § 148.[7]  Plaintiffs' issue with respect to Defendants' charge back practices appears to be that Defendants allowed Plaintiffs to keep monies longer than Plaintiffs were entitled to those funds.  The Wage Act provides for the timely payment of wages.  There is nothing in the Act that prohibits employers from giving employees extra time to reimburse the employer for monies owed to the employer.  Indeed, it is hard to understand what damages Plaintiffs have incurred by enjoying the use of monies they claim should have been taken back from them much earlier.[8]  If anything, Defendants' charge back practices work to the *benefit* of Plaintiffs, because the delay in charging back commissions frequently results in Defendants never recouping these funds even when they are entitled to them.  For example, if a purchaser defaults on a sale, and an employee ceases to be employed with Patriot before Defendants charge back the commission earned on that sale,

---

[7] Plaintiffs have repeatedly referred to the contractually provided-for charge back as a "garnishment" of their wages.  Defendants note that Plaintiffs' class cause of action contends a violation of the Payment of Wages Statute, Mass. Gen. Laws ch. 149, §148 by not paying commissions in accordance with that statute's provisions.  This is *not* a class action based on illegal garnishment practices in violation of any of Massachusetts laws that apply to garnishment of employee wages.  *See, e.g.*, Mass. Gen. Laws ch. 32, § 19; Ch. 235, §34, Ch. 235, § 34A, Ch. 246, §24.  Thus, the Court should disregard any inference that wages were improperly garnished in deciding the Plaintiffs' Motion.

[8] Although Plaintiffs suggest that this created a hardship on some Plaintiffs who already had paid taxes on these monies, these tax payments are offset due to the fact that the commissions are charged back against Plaintiffs' future gross earnings, thus reducing Plaintiffs' tax liability by the amount paid in the previous year.  Furthermore, any tax implications of Patriot's charge back practices are entirely irrelevant with respect to the issue of whether Defendants violated the Wage Act.

14

Defendants do not recoup the commission from the individual if there are no outstanding commissions from which to recoup the funds. (Add. Facts ¶13 )

Plaintiffs' main contention appears to be that Defendants did not adhere to the language of its employee contracts with respect to the timing of charge backs. However, this is not a class action breach of contract lawsuit. Plaintiffs did not assert such a breach of contract count in their most recent Complaint, nor did they seek certification of a class of employees purporting to have breach of contract claims. Not surprisingly, Defendants did not conduct discovery on purported breaches of contract. Furthermore, Plaintiffs' conclusory and unsupported allegations that the Contract language states "on its face" that Defendants reserved the right to charge back commissions only in the first three months of a loan and that Defendants had immediate notice of whether a loan was paid late during this period are completely and patently false. (*See* Facts ¶ 12, Exhibit 1, Attachment A.)

The Contract language stated only that "reimbursement shall be made immediately after the Company receives notice" that a sale is in default. Nowhere does the language suggest that this will happen within the first three months of a contract. In fact, the deadline for a purchaser's first payment typically was not until 45-60 days from the contract date of the sale. (Add. Facts ¶ 4, note 3) Therefore, since the first payment wasn't even due until roughly two months after the contract date, it would have been impossible in many cases to determine whether a purchaser had failed to make three timely, monthly payments in the first three months of a contract. (Add Facts ¶4, n.3, ¶ 8.)

In addition, as soon as Patriot's Commissions Department was notified that a purchaser had failed to make three timely, monthly payments, it initiated the charge back process. (Add Facts ¶ 11)  To the extent that there was any delay in this process, this delay benefited Plaintiffs, because if a purchaser initially was in default, but then made three timely and consecutive monthly payments before Patriot became aware of the default, no charge back would occur.[9] (Add Facts ¶ 14)

In essence, Plaintiffs suggest that Patriot had immediate knowledge that it was entitled to reimbursement of commissions from salespeople but decided not to pursue these monies, instead allowing Plaintiffs the use of Patriot's money for months and years that Patriot could have been using those monies for its own purposes.  Not only is this suggestion nonsensical, but it fails to establish that this practice caused any harm to the Plaintiffs or constituted a failure to pay wages.

Finally, and most importantly, Plaintiff has not suggested any manner in which an alleged breach(es) of contract gives rise to a finding that Chapter 149 has been violated.  Accordingly, Plaintiffs' Motion for Partial Summary Judgment with respect to Defendants' contractual charge back provision must be denied.

    C.    <u>Summary Judgment Against Individual Defendants J.P. Ottino, and James E. Lambert Should Be Denied because they are not Proper Parties to a Chapter 149, § 148 Claim.</u>

The Wage Act expressly provides that the "president and treasurer of a corporation and any officers or agents having the management of such corporation" shall be deemed to be the employers of the employees of the corporation within the meaning of this section." Mass. Gen. Laws ch. 149, § 148. In *Weidemann v. The*

---

[9] As stated previously, Defendants deny Plaintiffs' allegations with respect to substantial delays in charge backs.

16

*Bradford Group, Inc.*, 444 Mass. 698, 711, 831 N.E.2d 304, 312 (2005), the SJC for the first time defined who was to be included as "officers or agents having the management of such corporation." The *Weidemann* court, applying the common meaning of the terms at issue, concluded that "a manager is someone who controls, directs and participates to a substantial degree in formulating and determining policy of a corporation." *Id.* at 314. Further, "[m]erely holding a managerial position over some branch, division, or office of a corporation does not, by itself, mean that the manager has the 'management' of the 'corporation' as a whole." *Id.* Under the standard enumerated in *Weidemann*, neither Defendant Ottino nor Defendant Lambert are deemed to be "employers" within the Payment of Wages Act.

Defendant Ottino was not the president or treasurer of Patriot or Berkley. (Add. Facts ¶ 19) Ottino at all relevant times was a Vice President – Corporate Acquisitions of Berkley and a Director and Vice President of Patriot. Ottino at all relevant times has resided and worked for Berkley in Florida. (Id.) Further, Plaintiffs have come forward with absolutely no evidence whatsoever that Ottino controlled, directed or participated to a substantial degree in formulating and determining Patriot or Berkley's corporate policy regarding the Contract that is at issue in this lawsuit. Similarly, Defendant Lambert at all relevant times was Chairman of the Board and CEO of Berkley, only. (Facts ¶ 20) Lambert at all relevant times has resided in Florida and has worked on a part-time basis providing sales and marketing expertise to Berkley's Board of Directors. (Id.) Plaintiffs have not come forward with any evidence that Lambert either was a manager or agent within the meaning of the Payment of Wages Act. Accordingly, Ottino and Lambert cannot be held individually liable under the Payment of Wages Act and are not proper

17

defendants to this lawsuit. Plaintiffs' Motion for Summary Judgment must be denied with respect to these Defendants.

## IV.    Conclusion

For the foregoing reasons, Defendants request that Plaintiffs' Motion for Partial Summary Judgment on Class Claim of Untimely Payment of Wages be denied.

Respectfully submitted,

/s/ Kimberly A. Klimczuk, Esq.
Kimberly A. Klimczuk, Esq.
BBO No. 660973
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts  01144
Tel. (413) 737-4753/Fax: (413) 787-1941

Dated:  May 18, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment on Class Claim of Untimely Payment of Commissions* was served upon the attorney of record for each other party via electronic filing on May 18, 2007.

/s/ Kimberly A. Klimczuk, Esq.
Kimberly A. Klimczuk, Esq.