# EXHIBIT 1
# ATTACHMENT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBIN, on behalf of themselves and on behalf of others who are similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III REBECCA A FOSTER. and JAMES E. LAMBERT,<br>  Defendants. | DOCKET NO. 04-CV-30091-MAP |

## AFFIDAVIT OF MARC J. LANDAU

I, Marc J. Landau, being duly sworn, state as follows:

1. I am over 18 years old and believe in the obligation of an oath. I have personal knowledge of the facts set forth in this affidavit.

2. Since Patriot Resorts Corporation ("Patriot") opened in 2001, I have been the Treasurer of both Patriot and The Berkley Group and the Chief Financial Officer of The Berkley Group. I currently remain in those positions.

3. Patriot owns and sells timeshare interests at Vacation Village in the Berkshires, which is located in Hancock, Massachusetts ("Vacation Village").

4. Pursuant to Patriot's employment agreements, if a salesperson obtained from the purchaser of a timeshare a Pre-authorized Checking withdrawal authorization ("PAC"), Patriot advanced the salesperson's commission as if the purchaser has paid cash for the sale.

5. The first payment on a financed sale typically was not due from the purchaser until 45-60 days after the date the purchaser signed the timeshare sales agreement. Therefore, commissions on PAC sales often

were advanced to salespeople well in advance of Patriot receiving any mortgage payment whatsoever from the purchaser.

6. Patriot's employment agreements also provided that where salespeople were advanced a commission, Patriot could "charge back" those commissions from future earnings if the purchaser failed to make three timely and consecutive monthly payments.

7. Once a purchaser made three timely and consecutive monthly payments, no charge backs on the commission from that sale could occur, even if a purchaser defaulted on the sale and never made another single payment to Patriot. The only exception to this rule was if the purchaser defaulted due to a misrepresentation made by a salesperson.

8. If a purchaser defaulted due to a misrepresentation made by a salesperson, Patriot informed the salesperson that this was the reason for the charge back.

9. Whenever a commission was charged back against future earnings, Patriot informed salespeople, via documentation distributed with their paycheck.

10. Once Patriot's Commission Dept. became aware that a purchaser had not made three timely and consecutive payments, Patriot initiated the process of recouping commissions from the salesperson who made the sale.

11. If Patriot was owed a charge back on a sale closed by a salesperson no longer employed with Patriot, Patriot did not recoup the commission from that salesperson, unless the salesperson still was owed commissions on subsequent sales from which the commission could be charged back.

12. If a purchaser was initially in default, but then made three timely and consecutive monthly payments before Patriot Commission Dept. became aware of the default, no charge back would occur.

13. Since January 1 2005, in excess of 95% of closed sales are PAC sales or cash sales.

Signed under the pains and penalties of perjury this 18th day of May, 2007.

_____
Marc J. Landau

Sworn and Subscribed to before me this 18th day of May, 2007.

_____
Notary Public
My Commission Expires:

Gloria Kaufman
Commission # DD333374
Expires August 31, 2008
Bonded Troy Fain - Insurance, Inc. 800-385-7019

2