UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBIN, on behalf of themselves and on behalf of others who are similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III REBECCA A FOSTER. and JAMES E. LAMBERT, <br><br> Defendants. | DOCKET NO. 04-CV-30091-MAP |

**PLAINTIFF MARTIN'S CORRECTED STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS A GENUINE DISPUTE TO BE TRIED PURSUANT TO LOCAL RULE 56.1[1]**

A.   Background

1.   Plaintiff Roger Martin began working for Patriot Resorts as a sales representative selling time shares for the defendants on or around August 6, 2001. Garrow Aff. Ex. 1.

2.   Vacation Village is owned by Patriot Resorts, a wholly owned subsidiary of the Berkley Group, a Florida based company.

3.   Rebecca Foster is the president of Patriot Resorts and of the Berkley Group.  Garrow Aff. Ex. 3 (Lippert Dep. of May 17, 2005 8:18-19, 9:1-3).

---

[1] Several additional pages to Exhibits that have already been filed with the Court are attached to this document, as Attachment 1. The correct exhibit numbers to which these documents correspond are noted within the Attachment.

1

4.      Faith Lippert the human resources director at Vacation Village in the Berkshires. Garrow Aff. Ex. 3 (Lippert Dep. of November 20, 2003 52:16-18). Ms. Lippert reports to Rebecca Foster, who is her supervisor. Garrow Aff. Ex. 4 (Lippert Dep. of May 17, 2005 52:6-8). Ms. Lippert is responsible for administration of the sales contracts for time share sales (Garrow Aff. Ex. 3 (Lippert Dep. of November 20, 2003 9:23-24)), including escrow accounts (Garrow Aff. Ex. 3 (Lippert Dep. of November 20, 2003 10:16)), and the payment of commissions to time share sales persons at Vacation Village (Garrow Aff. Ex. 3 (Lippert Dep. of November 20, 2003 11:7-8)).

5.      Mark J. Landau is treasurer of both Patriot Resorts and the Berkley Group, and was Chief Financial Officer of the Berkley Group.

6.      J.P. Ottino is was the vice president of corporate acquisitions of the Berkley Group and director and vice president of Patriot Resorts.

7.      Rebecca Foster was involved in employment decisions throughout Mr. Martin's employment at Vacation Village. For example, Ms. Foster consulted with Ms. Lippert regarding LaCrisha Wise's personnel issues. Garrow Aff. Ex. 5 (Foster Dep.162:18-24, 163:1).

8.      The Berkley Group created a document called the "Ten Steps to Success," for use by employees of Vacation Village. Garrow Aff. Ex. 4 (Lippert Dep. May 17, 2005 57:16-18), Garrow Aff. Ex. 10. Ms. Foster also created and distributed office policies for all sales personnel regarding attendance and retirement plans. Garrow Aff. Ex. 5 (Foster Dep. 113:6-14), Garrow Aff, Ex. 11, 12. These plans provided for disciplinary action, as well. Id. Ms. Foster was involved in ensuring that employees signed in so that they could qualify for the Employee Stock Ownership Plan. Garrow

Aff. Ex. 5 (Foster Dep. 113:24-114:1-15), Garrow Aff. Exs. 9, 13, 16. Individuals eligible for the Employee Stock Ownership Plan included employees at Vacation Village in the Berkshires. Garrow Aff. Ex. 9. The Berkley Group was also involved in distributing awards to sales employees at Vacation Village. Garrow Aff. Ex. 14 (Lewis Dep. of November 20, 2003 60:14-17), Garrow Aff. Ex. 15.

9. Mr. Rauer is a project director at Tower Resort Realty. Garrow Aff. Ex. 5 (Rauer Dep. 6:19-20). His direct supervisor is Bruce Polansky, senior project director and senior vice president of the Berkley Group. Garrow Aff. Ex. 5 (Rauer Dep. 8:19-24). Mr. Rauer has held this position since approximately 2001, and at the time of his deposition in 2005, he was still the project director. Garrow Aff. Ex. 5 (Rauer Dep. 10:5-8). As project director, Mr. Rauer was responsible for overseeing all sales personnel at Vacation Village, and had ultimate authority over these individuals. Garrow Aff. Ex. 5 (Rauer Dep. 8:2-4). He was responsible for firing timeshare sales personnel. Garrow Aff. Ex. 5 (Rauer Dep. 88:12-13), Garrow Aff. Ex. 14 (Lewis Dep. of November 20, 2003 53:20-22). He

10. Mr. Lewis was the project director for Vacation Village beginning in 2002, and at the time of his deposition in 2005, he was still the project director. In that capacity he oversaw the day-to-day sales programs at Vacation Village, including the supervision of sales director Paul Stensland. Garrow Aff. Ex. 6 (Lewis Dep. 11:6-8, 7:1-8, 9:4-14). Mr. Lewis's supervisor is Mr. Rauer. (Garrow Aff. Ex. 6 (Lewis. Dep. 7:24-8:1).

11. Mr. Martin previously was employed by Bentley Brook, a time share company. Garrow Aff. Ex. 7 (Martin Dep. 44:24).

12. When Mr. Martin was working at Bentley Brook, he met Bruce Polansky, J.P. Ottino, and another individual from Vacation Village, to discuss possible employment at the Vacation Village Resort, selling time shares. Garrow Aff. Ex. 7 (Martin Dep. 48: 22-24, 49:1-8).

13. During this meeting with Mr. Polansky, Mr. Ottino, and another individual, he was informed of the company's compensation structure, which promised $300.00 a week for ten weeks, and ten percent commission. Garrow Aff. Ex. 7 (Martin Dep. 49:7-8).

14. Mr. Martin was presented with a contract reflecting this compensation structure on August, 6, 2001, the first day of his employment, which he signed that day. Garrow Aff. Ex. 7 (Martin Dep. 53:8-10).

15. Mr. Martin was on Gordon Leete's sales team at the beginning of his career at Vacation Village, and for about half of the time he was employed there. Garrow Aff. Ex. 7 (Martin Dep. 80:7-9). Mr. Martin was on Paul Stensland's sales team for the latter half of the time he was employed at Vacation Village. Garrow Aff. Ex. 7 (Martin Dep. 80:10-11).

16. During the first year of his employment with Vacation Village, Mr. Martin was given an award for being a top seller on his sales team (Garrow Aff. Ex. 1 (Martin Aff. ¶ 11) and he received a "Million Dollar Ring" for selling a million dollars worth of time shares for the company. Garrow Aff. Ex. 7 (Martin Dep. 199:9-11, Martin Dep. 200:22-23). The ring was given to Mr. Martin by the Berkley Group. Garrow Aff. Ex. 147 (Lewis Dep. 60:14-17), Garrow Aff. Ex. 15.

17.  Frequently, Mr. Martin would not receive compensation for all of the commissions he was owed.  Garrow Aff. Ex. 1 (Marin Aff. ¶ 12).  He also did not get paid minimum wage and overtime for the hours he worked.  Id.

18.  Mr. Martin did not feel he was receiving all of the compensation that was owed to him.  Garrow Aff. Ex. 1 (Martin Aff. ¶ 8).  He complained to Gordon Leete, Paul Stensland, Bill Rauer, Rodney Lewis, and Faith Lippert about these concerns.  Garrow Aff. Ex. 1 (Martin Aff. ¶ 12).

19.  At the end of 2002 or at the beginning of 2003, a group of individuals from the sales department sent a letter to Rebecca Foster, voicing their concerns about non-payment.  Garrow Aff. Ex. 1 (Martin Aff. ¶ 10).

20.  After continuing to receive paychecks that did not reflect what he had earned in commissions and minimum wage and overtime, he contacted the Office of the Attorney General's Fair Labor and Business Practices Division to complain about not receiving timely commission payments, and about not receiving minimum wage and overtime from Vacation Village.  Garrow Aff. Ex. 1 (Martin Aff. ¶ 12).  He received an authorization to sue letter from the Office of the Attorney General on June 25, 2003.  Garrow Aff. Ex. 1 (Martin Aff. ¶ 12).

21.  Mr. Martin was terminated from employment with Vacation Village on May 13, 2003 because he was complaining about not receiving timely payments of commissions and minimum wage and overtime payments.  Garrow Aff. Ex. 1 (Martin Aff. ¶ 1, 12).

22.  Approximately six months after being terminated from Vacation Village, Mr. Martin approached William Rauer and inquired as to whether he could be rehired at

the company. Garrow Aff. Ex. 1 (Martin Aff. ¶ 14). During that conversation, Mr. Rauer told Mr. Martin that they would "love to have him back." Garrow Aff. Ex. 7 (Martin Dep. 196:15-16). Mr. Rauer acknowledged that Mr. Martin was a good employee and that the company wanted him to return. Garrow Aff. Ex. 5 (Rauer Dep. 89:14-17). Mr. Martin also explained to Mr. Rauer that he was unhappy about non-payment of commissions he had earned, as well as non-payment of wages. Garrow Aff. Ex. 5 (Rauer Dep. 86:15-24, 87:1).

23.     Mr. Martin returned to work as a time share salesperson at Vacation Village approximately six months later. Garrow Aff. Ex. 1 (Martin Aff. ¶ 16).

24.     Upon his return, Mr. Martin discovered that no changes had been made in terms of timely payments of commissions and payment of minimum wage and overtime. Garrow Aff. Ex. 1 (Martin Aff. ¶ 17).

B.     Complaints Regarding Compensation

25.     After working for Vacation Village again, Mr. Martin realized that he was not going to be able to rely on the promises made by the defendants regarding his compensation. Garrow Aff. Ex. 7 (Martin Dep. 217:22-24, 218:1-4). Mr. Martin believed that defendant's failure to pay him on his commissions earned, and on minimum wage and overtime payments was illegal. Garrow Aff. Ex. 1 (Martin Aff. ¶ 17).

26.     He attempted to discuss his concerns with his supervisor, Paul Stensland. In addition, he spoke with Bill Rauer, Rodney Lewis, Faith Lippert, and Gordon Leete about not getting timely paid and not getting minimum wage and overtime payments. Garrow Aff. Ex. 1 (Martin Aff. ¶ 18).

27.	In addition, Mr. Martin voiced his concerns at morning sales meetings. Garrow Aff. Ex. 1 (Martin Aff. ¶ 19), Garrow Aff. Ex. 8 (Massaconi Aff. ¶ 3).

C.	Mr. Martin's Termination

28.	On September 21, 2004, Mr. Martin was upset about what he believed to be untimely compensation of commissions he had earned. Garrow Aff. Ex. 1 (Martin Aff. ¶ 20). Mr. Martin approached Paul Stensland in the "pit" where the timeshare sales employees are placed until they receive a tour. Garrow Aff. Ex. 7 (Martin Dep. 219: 15-23). Mr. Martin explained to Mr. Stensland that he was upset about not being paid for commissions he had earned and that he wasn't comfortable selling a product that he was not getting paid to sell. Garrow Aff. Ex. 1 (Martin Aff. ¶ 20). Mr. Stensland instructed him to go home.

29.	That day, Mr. Martin received a voicemail from Paul Stensland, saying he was fired by Bill Rauer for "passing up a tour." Garrow Aff. Ex. 7 (Martin Dep. 219:2-4, 221: 15-16). Mr. Martin called Mr. Stensland back, and was told that he was fired but that he should come in the next day and speak to Mr. Rauer. Garrow Aff. Ex. 7 (Martin Dep. 222:11-12). Understanding that he had already been fired when Mr. Martin went to the office the next day, he was met by Mr. Stensland, who told him that he was going to have to "beg for his job." Garrow Aff. Ex. 7 (Martin Dep. 222:20-22). After returning to work for the defendants with the hope that he would be timely paid money he earned and then working nine months of not being paid minimum wage, overtime and commissions earned in violation of Mr. Martin's understanding of the wage statute, this was not something Mr. Martin was prepared to do. Garrow Aff. Ex. 7 (Martin Dep. 222:22-24).

30.	Mr. Martin was not offered a tour at the time that he had his conversation

7

with Mr. Stensland. Garrow Aff. Ex. 7 (Martin Dep. 220:16-19). He did not have a tour slip in his hand and he was not aware that he was on the list for taking tours that day. Garrow Aff. Ex. 7 (Martin Dep. 220:16-24). Rather, Mr. Stensland simply told him to go home. Garrow Aff. Ex. 1 (Martin Aff. ¶ 21).

                        PLAINTIFF ROGER MARTIN
                        By:


                        /s/Suzanne Garrow
                        His attorney
                        Suzanne Garrow BBO# 636548
                        Heisler, Feldman, McCormick
                        & Garrow, PC
                        1145 Main Street, Ste. 508
                        Springfield, MA  01103
                        sgarrow@comcast.net
                        Phone (413) 788-7988

Dated:  May 22, 2007


## CERTIFICATE OF SERVICE

     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

                        /s/ Suzanne Garrow
                        Suzanne Garrow