UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO.  04-cv-30091-MAP

|  |  |  |
|---|---|---|
| : | | |
| LACRISHA WISE, MICHAEL | : | |
| MASSACONI, ROGER MARTIN and | : | |
| PETER CORBIN, on behalf of | : | |
| themselves and on behalf of others | : | |
| who are similarly situated, | : | |
| | : | |
| Plaintiffs, | : | PLAINTIFFS' REPLY |
| | : | MEMORANDUM IN SUPPORT |
| v. | : | OF MOTION FOR PARTIAL |
| | : | SUMMARY JUDGMENT |
| PATRIOT RESORTS CORP., | : | ON CLASS CLAIM |
| BERKLEY GROUP, INC., | : | OF UNTIMELY PAYMENT OF |
| MARC J. LANDAU, J.P. OTTINO, III | : | COMMISSIONS |
| REBECCA A FOSTER. and JAMES E. | : | |
| LAMBERT, | : | |
| Defendants. | : | |
| : | | |

## I.    INTRODUCTION

The defendants, owners of a time share resort in the Berkshires, have opposed the plaintiffs' motion for summary judgment on their claim of untimely payment, because they say the plaintiff class, a group of salespersons who sold time shares, are merely alleging a "breach of contract claim", and that no class of persons has been certified in this case who allege this claim.

The defendants fundamentally misunderstand their own argument.  By claiming that the "due and payable" language in M.G.L. c. 149 § 148 authorizes employment contracts which set the parameters for when a commission must be paid, the defendants have necessarily stated that a "breach of contract" claim is a violation of the statute's prohibition against untimely payments.  The evidence shows that the defendants violated

their contracts, and therefore made payments well after they were "due and payable" as required by the Wage Act, M.G.L. c. 149 § 148.

## II.    ARGUMENT

### A.    BY VIOLATING THEIR OWN CONTRACTS CONCERNING CHARGEBACKS, THE DEFENDANTS HAVE VIOLATED M.G.L. C. 149

The defendants argue repeatedly in their Opposition to the plaintiffs' Motion for Partial Summary Judgment that whether the defendants have abided by their own contracts concerning timely payment of commissions is "not pertinent to the motion currently before the Court." Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment on Class Claim of Untimely Payment of Commissions ("Opposition") at p. 2, footnote 1.

However, the defendants' central argument in the briefs they have filed in this court during the summary judgment briefing process is the following: Under M.G.L. c. 149, it is up to the employer and employee "to contract as to if and when commissions are due and payable." Opposition at p. 8. The defendants go further to state that there is nothing in the statute at issue that "could rationally be construed as a limitation on the parties' right to contract such matters." *Id.*

To summarize, M.G.L. c. 149 § 148 states that it applies to the payment of commissions when they are "definitely determined" and "due and payable". The defendants argue quite openly that due and payable means what the defendants have put into their contracts with the class members in this case. But the statute prohibits a failure to pay when commissions are due and payable. If the contracts define due and payable, and the defendants' failure to pay commissions when they are due and payable violates

the statute, a "breach of contract" for failing to pay timely commissions is also a breach of the statutory obligation to pay timely commissions. There is nothing that precludes the plaintiffs from asserting their statutory claim for failing to pay commissions in a timely manner.

Remarkably, the defendants appear to be arguing that they get to decide when a commission is due and payable and that this decision has been blessed by the Massachusetts legislature in c. 149. But when they do not pay according to the contract terms, they have only breached their contract. One is simply left to wonder when the statute is violated, if ever, under the defendants' interpretation of the law.

This lack of logic means simply that the defendants are wrong when they argue that a failure to abide by their own contract terms somehow upholds the statutory language. The defendants here claim that they have decided that due and payable means a salesperson gets paid after three consecutive timely payments by a purchaser. They claim that due and payable also means that a salesman's pay can be taken back from the salesman if the purchaser fails to make the first three payments in a timely manner. But they then say that if the commissions are not actually paid when due and payable under the contract, they have not violated their chapter 149 duty to make timely payments of commissions.

The defendants have violated the law. They took commissions away from class members when prohibited by contract and therefore statute.[1] The court should find that if

---

[1] The defendants argue that their illegal chargeback practices worked to the benefit of the plaintiffs, allowing them to keep commissions longer than they were allowed by contract. That is not the plaintiffs' argument. The defendants were *prohibited* by contract from charging back commissions after the fourth month of payments on the mortgage. Any chargeback after that was not a late chargeback but an illegal, unauthorized chargeback. The commission was owned by the salesperson, and taking it back was not tardy, but illegal.

the evidence shows a failure to follow their own contracts, the defendants have violated c. 149.

**B.**    <u>**THE DEFENDANTS HAVE NOT CITED A CASE WHICH STANDS FOR THE PROPOSITION THAT THERE IS NO LIMIT ON THE DEFENDANTS' ABILITY TO DEFINE "DUE AND PAYABLE" UNDER M.G.L. C. 149**</u>

The defendants assert in the Opposition that "numerous cases have recognized the parties' ability to contract as to if and when commissions are due and payable." Opposition at p. 8. However, they cite not a single case for this proposition. Instead, they cite a series of unreported Massachusetts Superior Court cases with Westlaw citations for the proposition that "contingencies may affect when commissions are due and payable or whether they become due and payable at all." *Id.*

None of these cases stand for the proposition that under M.G.L. c. 149 § 148, an employer may define the statutory term "due and payable", without any limitation, to determine when commissions must be paid. None of the cases have anything at all to do with the situation presented in this case. In *Klint v. J& J Associates*, the salespersons commissions depended entirely on the company's commissions earned—he earned commissions on deals in which he was completely uninvolved. *Klint v. J & J Associates*, No. 97-0251, 1998 WL 118125 * 3, n. 4 (Mass. Super. Sept 3, 1998). And the court explicitly found that the commissions were not definitely determined. Klint received a salary plus some portion of the money received by the company, almost a profit sharing arrangement. The plaintiff class received no salary and commissions on its own sales. The *Klint* decision has no bearing on the limits of "due and payable" as a result.

In *Cumpata v. Blue Cross Blue Shield of Massachusetts*, Judge Young determined that the compensation package for the employee was not even covered under the Wage Act. To use this case as support for the proposition that Judge Young blessed the defendants' argument here has no credence. *Cumpata v. Blue Cross Blue Shield of Massachusetts*, 113 F. Supp. 2d 164 (D. Mass. 2000). The *Berenson* case suffers from the same problem—the employee was not covered under the Wage Act. The defendants have not made that argument in this case, and again, the case therefore has no bearing on the issues in this case. *Berenson v. Monadnock Associates*, No. 045503E, 2006 WL 2003573 at *1 (Mass. Super. Apr. 10, 2006). A third case in this litany, *Richards*, suffers from this defect, that the employee is not covered under the Wage Act, and the fact that the commissions were not able to be determined. *Richards v. Datatec Systems, Inc.* No. 040509BLS2, 2005 WL 1156162, *1-2 (Mass. Super. Mar. 31, 2005).

The *Sterling Research* case cited deals with the failure of a salesman to sell the product which was required of him to earn a commission and his failure to stay employed on the date of the payment received by his company. These issues again have no bearing on this case, especially where the employee was being paid bonuses rather than a straight commission in addition to a salary. The employee in the case was also an equity holder in the company. *Sterling Research, Inc. v. Pietrobono*, No. 02-40150-FDS, 2005 WL 3116758, *12-13, D. Mass. Nov. 21, 2005)

The defendants cite this series of cases for the proposition that courts have routinely blessed employer arrangements concerning when a commission is "due and payable", regardless of the extreme limitations that may be put on them. But the defendants, in fact, have not cited a single case where a court has determined that a "due

and payable" arrangement like the one here is legitimate. The defendants have not cited a single case that shows that the Massachusetts legislature left the definition of "due and payable" in the hands of employers, and without limitation.

This court should rule on what the legislature intended when it affirmatively inserted the commission amendment in the Wage Act in 1943. The plaintiffs have asserted what this meant in its brief in chief, but beyond this, this court should rule that the legislature did not intend to create a second "breach of contract" claim when it inserted the due and payable language in the statute. It meant to speed up commission payments, not to sanctify extreme limitation on payments, such as when salesperson Beth Torra waited four years for payment because a purchaser made all payments but made them late. *See*, Affidavit of Beth Torra filed with Plaintiffs' Opposition. The court should determine that "due and payable" has reasonable limits and does not permit unreasonable detention of commissions.

C.    **THE DEFENDANTS CHARGEBACK PRACTICES VIOLATED THEIR CONTRACT AND C. 149**

The defendants have submitted no facts at all which contradict the individualized, specific facts alleged by many class members including class members Massaconi, Symonds, Torra, Juliano, Corbin, Steele, McKnight and others. The affidavits and documents exhibited by the plaintiffs show that the defendants charged back commissions well after they were permitted to do so by contract. The contract states, as noted in earlier Memoranda, that a chargeback could occur in the next available commission if a purchaser did not make three consecutive timely payments in the first three months of the mortgage term. These class members were charged back by the defendants one, two and three years after a sale was made.

6

The defendants have provided no facts contradicting the affidavits and documents submitted by the plaintiffs as part of summary judgment briefs.  Instead, the defendants now rely on the Affidavit of Marc J. Landau, who says that (1) once a purchaser makes three consecutive timely payments, no charge back could ever occur and (2) once Patriot's Commission Department became aware of a failure to make these payments, recoupment of commissions would begin.  Affidavit of Marc J. Landau, at ¶¶ 7, 10. Notably, Mr. Landau does not purport to oppose the individual facts of the class members; rather, he provides what the theoretical policy of Patriot was supposed to be during the time covered by this lawsuit.  He does not dispute the applied policy of the defendants as experienced by the class.

But Mr. Landau's affidavit contradicts earlier deposition testimony of the defendants and should therefore be ignored.  *Colantuoni v. Calcagni & Sons, Inc*. 33 F. 3d 1, 5 (1st Cir. 1994)(Later affidavit contradicting earlier deposition testimony as part of motion for summary judgment does not create material facts to deny summary judgment). During the course of discovery, the defendants' senior management stated quite clearly that their actual, implemented policy included the ability to charge back a salesperson even after three timely payments were made, in violation of the contracts.  As Bill Rauer (the Florida supervisor of the highest ranking on-site Vacation Village manager, Rod Lewis) testified, where a customer made three consecutive timely payments, but then made eight untimely payments, the salesperson could be charged back.  Affidavit of Joel Feldman, Exhibit 1, Deposition of Bill Rauer, pp. 93-94, filed with Plaintiffs' Opposition. Mr. Rauer noted that this was a chargeback situation, despite the fact that the contract said it was not.  He also specifically testified that whenever a good sale was no longer

good business, when the company stopped getting its mortgage payments, "a person

would get a chargeback," without any end date. *Id.* at pp. 31-32.

His claim was reiterated by Faith Lippert, the human resource manager at

Vacation Village, who is supervised directly by Rebecca Foster Campagna and was

charged with making commission payments to the class. She testified that if a purchaser

did not make three consecutive timely payments at any time during the life of a contract,

the company could chargeback the commission. Affidavit of Joel Feldman in Support of

Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment on

Class Claim of Untimely Payment of Commissions, Exhibit 1, Deposition of Faith

Lippert, pp. 26-27. This actual policy could occur at any time when the purchaser

defaulted in this manner. *Id.*

Regardless of Mr. Landau's eleventh hour recognition that Mr. Rauer and Ms.

Lippert's testimony show contract violations (and therefore statutory ones), his testimony

now must be ignored, and the court should credit the testimony of the managers that are

in the record, and were placed in the record in 2005. *Colantuoni v. Calcagni & Sons, Inc.*

33 F. 3d 1, 5 (1st Cir. 1994); *See also, e.g., Bank of Illinois v. Allied Signal Safety*

*Restraint Systems*, 75 F. 3d. 1162, 1168-69 (7th Cir. 1996)(party cannot create "sham"

issues of fact with affidavits which contradict earlier deposition testimony). That record

shows salespersons who were charged back years later after a sale, and a corporate policy

articulated by the supervisor of the project director of Vacation Village (Mr. Rauer), and

the corporate representative on-site (Ms. Lippert) that allowed chargebacks well after the

three consecutive timely payments had been received.

The defendants make a last attempt to show that the plaintiffs have failed to prove that the chargebacks listed on salesman ledgers show actual chargebacks recovered by the defendants.[2]  They claim that no chargebacks were actually taken on the dates listed in the salesman ledger sheets.

This new chargeback claim is completely undercut by the President of defendant Patriot Resorts, Rebecca Foster Campagna.  She testified in 2005 that the "chargeback date" listed in the columns of a salesman ledger sheet was the date that the chargeback was actually taken back from a salesman.  Affidavit of Joel Feldman in Support of Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment on Class Claim of Untimely Payment of Commissions, Exhibit 1, Deposition of Rebecca Foster Campagna, p. 101.  The defendants have provided no evidence to show that the chargebacks alleged by the class members were somehow not actually taken, and Ms. Campagna, the "overseer" of the manager of the Commissions Department, says that the dates listed are the dates chargebacks were taken by the company from the paychecks of salespersons.  *Id.* at pp. 101, 117.[3]  This contrasts with the multiple, and now uncontradicted, first party statements and documents of the plaintiffs provided to this court in support of the plaintiffs' motion.

---

[2] The defendants filed a number of motions to strike portions of documents submitted by the plaintiffs with their briefs. The plaintiffs intend on responding to these motions within the time allotted to them by the rules, but the defendants claim in the motions that the "chargeback date" on the salesman ledger sheets is not actually the date of a chargeback.

[3] The defendants also claim in their motions that the plaintiffs cannot show that the defendants were on notice of mortgage defaults.  But Mr. Rauer and Ms. Lippert both testified that the mortgage department part of the company received the mortgage payments from purchasers. Mr. Rauer testified that "if the company was not getting paid their mortgage payments", a chargeback could be taken.  Affidavit of Joel Feldman, Exhibit 1, Deposition of Bill Rauer, pp. 31-32, filed with Plaintiffs' Opposition. Ms. Lippert testified that "Fort Lauderdale", corporate headquarters of the defendants, would know what happened to money being collected under the contracts.  Affidavit of Joel Feldman in Support of Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment on Class Claim of Untimely Payment of Commissions, Exhibit 1, Deposition of Faith Lippert, pp. 26-27.

The defendants state in their Opposition to plaintiffs' Motion for Summary Judgment that 95% of sales were "PAC sales" and meant that payments were made to salespersons.  Opposition at p. 9.  But that means 5% of sales were not PAC sales and were subject to the defendants' policies of charging back commissions years late and making payments of commissions years late.  The defendants argue that the plaintiffs believe that they had use of money to which they were not entitled for years, based upon the failure of the defendants to chargeback commissions under the contract.  This is not the plaintiffs' argument.  The defendants charged back commissions, under the Rauer-Lippert theory, years into a loan after they had no right to do so.  They may have charged back commissions when they had earlier knowledge but failed to do so, as well, but all of these chargebacks were illegal.  The plaintiffs request that, under M.G.L. c. 149, this court find illegal the chargebacks and commission payments not made when they were due and payable.

### III.    CONCLUSION

For the reasons stated above, the plaintiffs request that judgment enter for the

plaintiff class on their class claim under M.G.L. c. 149.

THE PLAINTIFFS
By their attorneys,

_/s/ Joel Feldman_____
Joel Feldman
BBO # 552963
Suzanne Garrow
BBO# 636548
Heisler, Feldman,
   McCormick & Garrow, P.C.
1145 Main Street, Suite 508
Springfield MA  01103
(413)788-7988
(413)788-7996 (fax)

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic File
(NEF).

/s/ Joel Feldman
Joel Feldman