Case 3:04-cv-30091-MAP   Document 182   Filed 05/29/2007   Page 1 of 8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBIN, on behalf of themselves and on behalf of others who are similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III REBECCA A. FOSTER. and JAMES E. LAMBERT,<br>            Defendants. | DOCKET NO. 04-CV-30091-MAP |

### DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLASS CLAIM (COUNT VII)

Defendants, Patriot Resorts Corp., The Berkley Group, Inc., Marc J. Landau, J.P. Ottino, III, Rebecca A. Foster and James E. Lambert, submit this Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Class Claim (Count VIII), filed May 18, 2007.

    I.    <u>Plaintiffs' Completely Misrepresent Defendants' "ChargeBack" Policies and Documents</u>

Plaintiffs state that "the *actual* policy of the defendants was to charge back employees whenever a sale was canceled during the life of a mortgage..." (emphasis in original) and "The company would also charge back commissions paid when a customer stopped making mortgage payments at any indefinite time during the future." (*See* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Class

Case 3:04-cv-30091-MAP   Document 182   Filed 05/29/2007   Page 2 of 8

Claim (Count VIII) ("Opposition").) However, both of these statements are completely false. In fact, once a purchaser of a timeshare made three timely and consecutive monthly payments, the commission earned on that sale <u>could not be – and was not – charged back from a salesperson</u>, even if the purchaser completely defaulted on the sales contract and/or never made another single payment to Patriot[1]. (See Defendants' Statement of Additional Material Facts ("Facts") ¶ 10, filed with Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment on Class Claim of Untimely Payment of Commissions on May 18, 2007.)

Plaintiffs claim that Bill Rauer's testimony supports their representation of Defendants' charge back policies; however, Mr. Rauer is not qualified to testify on this matter. Mr. Rauer is not employed with the Defendants. (See Affidavit of Kimberly A. Klimczuk ("Klimczuk Aff."), Exhibit 1, Deposition of Bill Rauer ("Rauer Dep."), pp.6-7.) Mr. Rauer supervises sales personnel at Vacation Village in the Berkshires, and it is clear from his testimony that he is not directly responsible for Defendants' payment policies and that he is not familiar with the precise details of the policy. *Id.* at pp. 7-8, 27-28, 31-32.[2] Even the testimony cited by Plaintiffs indicates that Mr. Rauer is not clear on Defendants' commissions policies:

---

[1] The exception to this was if the default was due to a misrepresentation made to the purchaser by the salesperson, but such instances were very rare. Facts ¶ 10, n.4

[2] A: Are you asking me what if – or what happened when there was NSF after the PAC was in; is that really your question?
  Q: Sure, that's my question.
  A: Because if that's your question, I don't know the answer to it.
Rauer Dep. pp. 27-28
  Q: I'm asking what the exact parameters of that policy are.
  A: I don't have the answers to that.
  ...
  Q: I understand that. I'm trying to figure out how the company determines whether it's a good sale or not.
  A: You'll have to ask someone else that, because I don't have the answer.
Rauer Dep. pp. 31-32

2

Case 3:04-cv-30091-MAP    Document 182    Filed 05/29/2007    Page 3 of 8

> Q: Here's the question: Would Vacation Village ever implement a chargeback to a salesperson in any instance where there was a PAC check or three timely payments were, in fact, made?
>
> A: Only – *I don't believe* that that has happened; but if three timely payments are made, for example, and then the next eight payments are not timely within that first year, *I believe* that's a possible chargeback situation.
>
> ...
>
> Q: What is the basis for your belief?
>
> A: Oh, *I think* that has happened. It's so rare *I'm not even certain, but I think* within that first year if there is consistently not good payments made, then *I believe* that there's a chargeback.

Rauer Dep. pp. 93-94. (emphasis added)

Plaintiffs cite this clearly uncertain testimony in support of their claims, even though it directly contradicts the testimony of Rebecca Foster, President of Patriot Resorts. (*See* Klimczuk Aff., Exhibit 2, Deposition of Rebecca Foster ("Foster Dep."), pp. 76, 86):

> Q: What are chargebacks – commission charge-backs?
>
> A: If a sale is made and the customer *does not fulfill the minimum number of payments* required for – according to the salesman's contracts, then the company has the right to take back that commission..."
>
> ...
>
> Q. Are there any other times when charge-backs might occur other than what you've explained to me so far?
>
> A: Any time a customer stops paying their payment at Patriot Resorts *prior to the three payments being made* for whatever reason...then the salesperson would be charged back.

Foster Dep. pp. 76, 85-86 (emphasis added). Accordingly, any arguments in Plaintiffs' Opposition relating to the inherent unfairness of a policy that allows commissions to be charged back at any point during the life of a loan should be completely disregarded,

3

Case 3:04-cv-30091-MAP    Document 182    Filed 05/29/2007    Page 4 of 8

because Defendants did not charge back commissions once a purchaser made three timely, consecutive monthly payments. In addition, even if Patriot is entitled to a chargeback on a commission, Patriot's company policy is that it does not charge back commissions that were advanced more than a year prior to the prospective chargeback date. (See Affidavit of Lauren Powell ("Powell Aff.") ¶ 8.) Accordingly, Plaintiffs' claims that Defendants routinely are initiating chargebacks years after the advancement of commissions are completely false and unsupported by any admissible evidence.

Plaintiffs also offer Salesman Commission Reports in support of their arguments with respect to the chargeback of commissions; however, the Reports referenced by Plaintiffs consistently fail to indicate the information Plaintiffs claim they do. For example, Plaintiffs claim that Plaintiff Massaconi was charged back $872 on November 22, 2004 for a timeshare sold on February 22, 2002. Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment ¶ 31. However, this is completely false. The evidence Plaintiffs cite in support of this allegation is the Detailed Salesman Commission Report for Massaconi, dated November 16, 2004 to November 22, 2004, but this document does not indicate a single commission chargeback. Indeed, Mr. Massaconi did not receive a single chargeback on any commissions on November 22, 2004. (See Exhibit A to Powell Aff.)

As another example, Plaintiffs claim that on December 20, 2004, Defendants charged back Mark J. Lepine over $2,000 worth of commissions on sales which were made between December 6, 2001 and June 9, 2002. (Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, ¶ 40.) However, Patriot has only charged back $1,603.26 worth of commissions in Mr. Lepine's *entire career with Patriot*.

4

Case 3:04-cv-30091-MAP    Document 182    Filed 05/29/2007    Page 5 of 8

(Powell Aff. ¶ 10; Exhibit C to Powell Aff.) Further, not a single one of these chargebacks occurred on December 20, 2004, the date Plaintiffs claim over $2,000 was charged back. (See Exhibit C to Powell Aff.)

Plaintiffs also claim that William Steele was charged back $890 on a commission from a time share sold on September 23, 2001. (Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, ¶ 38.) In fact, Patriot did not recover any commissions whatsoever from Mr. Steele on any timeshares he sold prior to June 1, 2002. (See Exhibit B to Powell Aff.[3])

Plaintiffs presumably have interpreted the negative numbers on the Salesman Commission Reports to indicate the chargeback of a commission; however, this is a complete misinterpretation of Defendants' company documents. (See Powell Aff. ¶¶ 4-7) The Salesman Commission Reports reflect the status of a salesperson's sales. (Powell Aff. ¶ 4) Any time a sale is canceled, Patriot's automated reports generate negative numbers on the report. (Id. at ¶ 5) However, Patriot does not use this information to initiate chargebacks. A negative amount on a Commission Report indicates only that a sale has been canceled – in no way does it indicate that a chargeback has occurred or will occur. (Id. at ¶ 6) In fact, such negative amounts will appear on Commission Reports even after a salesman's commission is earned (i.e., three timely, consecutive payments have been received from the purchaser), rendering it immune from chargeback. (Id. at ¶ 7) Accordingly, Plaintiffs cannot point to any admissible evidence that demonstrates a practice of charging back commissions in an untimely manner.

---

[3] Plaintiffs other claims of "late" chargebacks are similarly refuted; however, for purposes of this reply, Defendants will not address each and every allegation Plaintiffs have made based on their misinterpretation of Defendants' company documents.

5

Case 3:04-cv-30091-MAP   Document 182   Filed 05/29/2007   Page 6 of 8

II.   Alleged Breaches of Defendants' Employment Contracts Are Not Relevant to Claims Under Mass. Gen. L. ch. 149

Regardless of the timing of Defendants' chargebacks, this issue is completely irrelevant to Plaintiffs' claims under Mass. Gen. L. ch. 149. Plaintiffs argue that to the extent Defendants' employment contracts determined when commissions were "due and payable," every violation of the contract concerning the payment of commissions must be a violation of the statute. However, Plaintiffs ignore the key point that the commissions charged back from sales people *were never earned*, and therefore, they never had become due and payable under the contracts or under Mass. Gen. L. ch. 149.

Mass. Gen. L. ch. 149, §148 (the "Wage Act") governs the timely payment of wages. The paragraph of §148 that is relevant to commissions states that it applies "so far as apt" to commissions that are definitely determined and have become due and payable." *Wiedmann v. The Bradford Group, Inc.*, 444 Mass. 698, 704, 831 N.E.2d 304, 309 (1995). Under Defendants' employment contracts, commissions became due and payable only after Patriot received three timely and consecutive monthly payments from the purchaser. (Defendants' Statement of Material Facts as to Which There is No Genuine Issue to be Tried Regarding Count VIII, Class Claim for Relief in Violation of M.G.L. ch. 149, §148 ("Stmt.") ¶ 15) When a salesperson received a PAC authorization from a purchaser, Patriot *advanced* the commission to the salesperson, even though the commission was not yet earned; i.e., even though Patriot had not yet received three timely monthly payments. (Stmt ¶ 21) Charge backs occurred only on *advanced* commissions – if the purchaser failed to make three timely monthly payments, then Patriot was entitled to charge back the advanced commission, *because that commission*

6

*was never earned.* Accordingly, since the Wage Act applies only to commissions that have become due and payable, and chargebacks apply only to commissions that have not yet become due and payable, any provisions concerning Defendants' chargeback practices are not governed by the Wage Act.

Since the commissions charged back do not fall within the purview of the Wage Act, it is not appropriate for the Court to consider Plaintiffs' arguments with respect to the chargeback of commissions in violation of Defendants' contracts. These claims allege breaches of contract, and there is no breach of contract claim in this lawsuit, nor any certified class of similarly-situated persons with alleged breach of contract claims.

III.   The Terms of Defendants' Employment Contracts Do Not Violate Mass. Gen. L. ch. 149.

Despite Plaintiffs incredulity regarding Defendants' commissions practices, Plaintiffs offer no legal support whatsoever for their argument that these practices are unlawful. On the other hand, courts frequently have recognized that employers may determine by contract when commissions become due and payable, even where this results in significant delays in the payment of commissions. *See Klint v. J & J Associates,* No. 97-0251, 1998 WL 1181125, *3 n.4 (Mass. Super. Sept. 3, 1998); *Cumpata,* 113 F. Supp. 2d at 168; *Berenson v. Monadnock Assoc., Inc.,* No. 045503E, 2006 WL 2003573 at *1 (Mass. Super. Apr. 10, 2006) (recognizing contingency that allowed for compensation to be deferred indefinitely); *Sterling Research, Inc. v. Pietrobono,* No. 02-40150-FDS, 2005 WL 3116758, *12-13 (D. Mass. Nov. 21, 2005)(recognizing contingency that allowed for nonpayment of commissions where individual employed with employer for a certain amount of time and granting summary judgment for employer where employee failed to set forth sufficient facts in support of

7

his claim that commissions were contingent only upon sale); *Richards v. Datatec Systems, Inc.*, No. 040509BLS2, 2005 WL 1156162, *1-2 (Mass. Super. Mar. 31, 2005)(recognizing potential contingencies beyond the mere closing of a sale, such as receipt of full payment for a purchase). There is no statutory or case law to suggest that Defendants' policy is unlawful, and therefore Defendants' Motion for Summary Judgment on Class Claim (Count VII) should be allowed.

### IV.  Conclusion

For the foregoing reasons, Defendants request that this Court allow Defendants' Motion for Summary Judgment on Class Claim (Count VIII).

Respectfully submitted,

/s/ Kimberly A. Klimczuk, Esq.
Kimberly A. Klimczuk, Esq.
BBO No. 660973
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144
Dated: May 29, 2007                Tel. (413) 737-4753/Fax: (413) 787-1941

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Class Claim (Count VII)* was served upon the attorney of record for each other party via electronic filing on May 29, 2007.

/s/ Kimberly A. Klimczuk, Esq.
Kimberly A. Klimczuk, Esq.