UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LACRISHA WISE, MICHAEL MASSACONI, ROGER MARTIN and PETER CORBIN, on behalf of themselves and on behalf of others who are similarly situated, | :<br>:<br>:<br>:<br>:<br>: |
| Plaintiffs, | : DOCKET NO. 04-CV-30091-MAP |
| v. | : |
| PATRIOT RESORTS CORP., THE BERKLEY GROUP, INC., MARC J. LANDAU, J.P. OTTINO, III REBECCA A FOSTER. and JAMES E. LAMBERT, | :<br>:<br>:<br>:<br>: |
| Defendants. | : |

### DEFENDANTS' MOTION TO STRIKE CERTAIN PARAGRAPHS OF MARTIN'S MAY 18, 2007 AFFIDAVIT SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants, Patriot Resorts Corporation, The Berkley Group, Inc., Marc J. Landau, J.P. Ottino, III, Rebecca A. Foster and James E. Lambert, hereby request that the Court strike and not consider certain paragraphs of Roger Martin's Affidavit submitted in opposition to Defendants' Motion for Summary Judgment on his individual claims and disregard such statements in Plaintiffs' Opposition.

Specifically, all statements in Martin's Affidavit that directly contradict his sworn deposition testimony should be stricken. A litigant may not defeat summary judgment by submitting an affidavit that, without plausible explanation, contradicts

his own prior deposition testimony.  Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir.1994).  If he tries to do so, the contradictory matter in the affidavit must be stricken.  Murphy v. Ford Motor Co.  170 F.R.D. 82, 85 (D. Mass. 1997).  The paragraphs that should be stricken are as follows:

> *Paragraph 10:  At the end of 2002 or at the beginning of 2003, a group of us from the sales department sent [sic] letter to Rebecca Foster, the president of Vacation Village and the Berkley Group.  In that letter we voiced our concerns about non-payment and late payments on commissions.*

This Paragraph directly contradicts Martin's testimony at pages 157-59, where he stated that he had not made any attempts to complain to anyone at corporate in Florida, where Ms. Foster is located, about his concerns:

> Q.   Did you ever make any complaints to anyone who was located in Florida about your employment?
>
> A.   Absolutely not.  . . .
>
> Q.   I guess I'm just going to ask you to focus on yourself.  When did you attempt to contact Florida?
>
> A.   I never tried to contact Florida.  When we were told that if we wanted to go above, we had to handle it in-house.  We had to go through our line director first, and then our project director, and then if it was not resolved then, you should go to Florida.
>
> Q.   And you never did that?
>
> A.   We never got the opportunity, absolutely not.

Also, at pp. 184 Martin testified that he had never spoken with anyone in Florida about his employment: Q.  Did you ever talk to anyone in Florida related to your employment?  . . . . A.  No.  And, he specifically stated he had never attempted to contact Foster with any of his concerns:

> Q.  Did you ever attempt to contact her with any of your concerns?

    A. Didn't know how. No.

    Q. You didn't know she existed?

    A. I didn't know how to contact her.

(Martin Deposition, Ex. 1, pp. 157-59, 180-81, 184)

    *Paragraph 12 (in part):  At the end of 2002 or the beginning 2003, I contacted the Office of the Attorney General regarding my wage concerns.*

    Again, this affidavit "fact" contradicts what Martin stated at his deposition: namely that he contacted the Office of the Attorney General in 2003 or 2004. There was absolutely no mention of him having contacted the OAG's office in 2002. (Martin 165)  This paragraph, too, should be stricken.

    *Paragraph 15.  Mr. Rauer said I could return to Vacation Village as long as I "kept my mouth shut" about my payment concerns.*

    Although Martin now claims Rauer told him he could come back to work if he didn't raise any payment concerns, this is not what Martin testified to at his deposition.  Rather, at his deposition, he testified only that Rauer told him he could come back to work if he had <u>no more outbursts</u>. (Martin 196).  Indeed, Martin's inability to control his temper was what had resulted in his termination.  Martin *never* testified that Rauer told him he would be rehired as long as he did not raise payment concerns.  This new "fact" should not be considered:

    *Paragraph 20:  On September 21, 2004, I was upset about the timely payment of wages and I felt that I was not being fairly compensated for the work that I was doing.  I explained to Paul Stensland that I was upset because I was not getting paid for the work I had done, and I told him I didn't feel comfortable selling a product that I wasn't getting paid to sell.  Mr. Stensland told me to just go home.*

Contrary to his new, self-serving testimony found at Paragraph 20 in his affidavit, Martin did not explain to Paul Stensland that he was upset *because he was not getting paid for the work he had done* or that he was *not comfortable selling a product that he was not getting paid to sell*. Rather, he testified only that he did not have a positive mental attitude and that he told Stensland he "didn't feel right" about selling. (Martin 218-19)

<u>21. Later that afternoon, I received a phone call saying that I had been fired by Bill Rauer for passing up a tour, but I had not been given a tour slip, nor had I been instructed to take a tour.</u>

Martin's deposition testimony concerning his second departure from Patriot's employment is entirely different than what is set forth in paragraph 21 of his affidavit. Martin testified during his deposition, under oath, that he received a voicemail from "Todd" telling him to call Paul. He then called Paul, who simply told him he had to come in and meet with Bill the following day. He also claimed, during his deposition, that he in fact came in the next day and was met by Paul Stensland who told him only that he would have to beg for his job. During his deposition, Martin made absolutely <u>no</u> mention of being told on the phone that Rauer had already terminated his employment. (Martin 221-222) Further, such statement would be nonsensical: Why would Stensland arrange a meeting between Rauer and Martin if Rauer had already fired Martin? Martin's contradictory, self-serving testimony should be stricken.

                                              DEFENDANTS
                                              By their Attorneys,

                                              /s/ Marylou Fabbo
                                              Marylou Fabbo, Esq.
                                              BBO#566613

                                              /s/ Kimberly Klimczuk
                                              BBO#660973
                                              Skoler, Abbott & Presser, P.C.
                                              One Monarch Place, Suite 2000
                                              Springfield, Massachusetts 01144
Date: May 31, 2007                    Tel.: (413) 737-4753/Fax: (413) 787-1941


## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of *Defendants' Motion to Strike Certain Paragraphs of Martin's Affidavit Submitted in Opposition to Defendants' Motion for Summary Judgment on Martins' Individual Claims* was served upon the attorney of record for each other party via electronic filing on May 31, 2007.

                                              /s/ Marylou Fabbo
                                              Marylou Fabbo, Esq.